VIRGINIA:

IN THE
CIRCUIT COURT FOR THE COUNTY OF WASHINGTON

| | |
|---|---|
| WILLIAM D. CARMACK | ) |
|     Plaintiff | ) |
| v. | ) Case No. |
| COMMONWEALTH OF VIRGINIA, | ) |
|   Serve: Mark R. Herring, Attorney General | ) |
| COMMONWEALTH OF VIRGINIA, SOUTHWEST VIRGINIA HIGHER EDUCATION CENTER | ) |
|   Serve: Mark R. Herring, Attorney General | ) |
| DAVID N. MATLOCK, Director of the Southwest Virginia Higher Education Center, in His Individual and Official Capacities | ) |
|   Serve: One Partnership Circle<br>       Abingdon, VA 24210 | ) |
|     Defendants. | ) |

## COMPLAINT

Plaintiff William D. Carmack ("Carmack") moves for judgment against Defendants Commonwealth of Virginia; Commonwealth of Virginia, Southwest Virginia Higher Education Center; and David N. Matlock, Director of the Southwest Virginia Higher Education Center, in his individual and official capacities, and as grounds therefore states as follows:

### INTRODUCTION

1. This is a suit for violation of the Virginia Fraud and Abuse Whistle Blower Protection Act, Va. Code § 2.2-3009, *et seq.* (1950), as amended; a state common law wrongful discharge claim pursuant to *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797

(1985); and a claim for rights protected by the First Amendment to the Constitution of the United States, pursuant to 42 U.S.C. § 1983.

## THE PARTIES

2. William D. Carmack is a citizen and resident of and is employed in Abingdon in the County of Washington, Virginia.

3. The Commonwealth of Virginia is a state and the Southwest Virginia Higher Education Center (the "Center") is a statutory agency of the Commonwealth. *See* Va. Code § 23-231.2, *et seq.* (1950), as amended. According to its website (www.vaswcenter.edu, visited May 10, 2018), the Center was established in 1992 as the first multi-college and university institution in the Commonwealth and partners with public and private colleges and universities to provide degree programs, certificates and professional development courses.

4. David N. Matlock ("Matlock") was employed by defendants as the Executive Director of the Center in Washington, Virginia and at all times material hereto acted in his official capacity as such, or in his individual capacity, or both.

## FACTS

5. Carmack was hired by the institutional defendants and began working as the Chief Financial Officer of the Center on or about August 1, 2012. He served as the Interim Director of the Center when Dr. Rachel Fowlkes retired as Executive Director about June 2015 until Matlock started work as the Executive Director about October 2015.

6. Over time plaintiff discovered that Matlock was wasting and misusing agency funds and resources. Examples include the following:

    a. On or about February 13, 2017, Matlock submitted an invoice for payment through the Agency's foundation for an expense that was neither approved by

2

the foundation nor a budgeted item. The invoice was for $1,250 to reimburse Matlock's son, Jason Matlock, the principal at Virginia Middle School in Bristol, Virginia, for taking a group of middle school students to James Madison University for a robotics competition. When questioned about this, Matlock stated that he had offered this to all schools in southwest Virginia. On information and belief, this is not true, and Matlock produced no evidence that he had in fact extended the offer to all of the schools in southwest Virginia, and it is improbable that only his son accepted the offer. Matlock's favored expenditure for his son violated state policy and constitutes fraud and abuse of state funds.

b. When plaintiff learned that a husband and wife computer team were "working" in a questionable manner from home and were seldom in the Agency building (the husband was a contract Agency vendor and the wife was a full-time Agency employee with benefits), that the couple received approximately $50,000 from a Tobacco Commission grant awarded to the Agency foundation and another $50,000 to perform work for the Agency despite the fact that they did little or no work for the Agency, that the couple were close personal friends of Agency information technology director Jeff Webb, and that Webb had approved 111 hours of overtime pay for the wife between July and November 2016, plaintiff complained about suspected fraud and abuse to Webb and Matlock. Approximately one week later on December 7, 2016, Matlock told plaintiff that he did not want the couple to report to plaintiff (even though they were supposed to have "worked" for him), that he

3

    did not want plaintiff to "approve" their timesheets, and that plaintiff should back off or the couple might quit.

c. Despite repeated request, Matlock failed to submit invoices in a timely manner for payment. Agency policy requires that all invoices are to be submitted for payment by the 15th day of the month in which they are received.

d. On or about September 7, 2016, Matlock announced that he had hired one of his long-time friends, Joe Mitchell, to work as maintenance supervisor. Matlock hired Mitchell as a "wage" employee without being interviewed by a selection committee as required by Agency policy then added him as a full-time employee in July 2017. When plaintiff cautioned Matlock about pre-selecting employees for hiring in contravention of Agency policy, Matlock told plaintiff not to worry because state senator Bill Carrico "had his back."

e. Shortly after he began work, Matlock excluded the finance department from financial decisions making it impossible for plaintiff, as CFO, to do his job. Matlock and others began to purchase non-budgeted items without the department of finances' knowledge and failed to submit invoices to the finance department in a timely manner for payment. Matlock engaged in other financial improprieties such as excluding the CFO from attending planning meetings related to the Senior Expo. Matlock also held a community golf tournament under the name of the Higher Education Center Foundation and involved no one from the finance department in the event. Monies received at the door of the event were collected by or at the direction of

Matlock. No invoices or receipts offset the income and expenses of the event. Matlock refused numerous requests from the finance department to be included in the planning meetings with respect to these events and the accounting of receipts and expenditures associated with these events. Matlock began to conduct Agency business in secret and removed the door with a window from his office and replaced it with a solid wood door with no window and placed additional locks on his door so that he could control access to his office. Matlock instructed several Agency employees to have no conversation with the CFO.

f. Upon the retirement of former Agency director Dr. Rachel Fowlkes, the Agency foundation commissioned a local artist to create a mobile that was placed in the main entrance of the facility along with a plaque honoring Dr. Fowlkes for her contributions to the Agency. The cost of the artwork was approximately $9,900. In December 2016 Matlock instructed maintenance manager Joe Mitchell to remove the artwork. Despite repeated request from members of the Board and other employees to return the mobile, it has remained "missing."

g. In December 2015, upon the retirement on human resource manager Joyce Brooks, Matlock moved information technology employee Adam Tolbert (then the chairman of the 9th District Republican party) to human resources and gave him complete access to confidential employee information such as social security numbers and other personal identifiers as well as salaries on

performance reviews. Tolbert's access to confidential employee information violated state and Agency privacy policy.

7. In February 2017, plaintiff met with the ombudsman of the University of Virginia (UVA provides human resources and other oversight to the Agency) to share his concerns about the foregoing. The ombudsman referred plaintiff to the Commonwealth's Department of Human Resources Management (DHRM). DHRM suggested that plaintiff share his complaints with the Commonwealth's Office of Inspector General (OIG). Both DHRM and OIG assured plaintiff that he could not be terminated for making a complaint and that his employment was protected by the "Whistle Blower Act."

8. Plaintiff thereafter lodged a complaint with the Office of the Inspector General including but not limited to a letter to the OIG on or about July 31, 2017. Carmack disclosed the above-referenced suspected wrongdoings and abuses in good faith and upon a reasonable belief that the information was accurate.

9. Thereafter the OIG sent a letter to the Commonwealth's Secretary of Education with the subject line "Hotline Case # 16077 Report" stating that it had conducted "an investigation based on a complaint [made by plaintiff] to the State Fraud, Waste and Abuse Hotline (Hotline) regarding the Southwest Virginia Education Center (Center)" and directing the Agency to "provide a response to the recommendations made in this report, indicating the corrective action(s) you plan to take within 30 days of the issuance" of the report.

10. The institution and individual defendants knew that plaintiff had lodged the above-referenced complaints, and in particular that plaintiff had complained to the OIG.

11. On January 4, 2018, Matlock called plaintiff into his office and terminated his employment.

12. Carmack was not discharged for misconduct or any violation of criminal law.

## Count I
## Fraud and Abuse Whistle Blower Protection Act

13. Carmack hereby incorporates and re-alleges the foregoing paragraphs as if fully set forth herein.

14. The Virginia Fraud and Abuse Whistle Blower Protection Act, Va. Code § 2.2-3009 (1950) provides that no employer may discharge, threaten, or otherwise discriminate or retaliate against a whistle blower whether acting on his own or through a person acting on his behalf or under his direction.

15. Plaintiff complained of suspected fraud and abuse to Matlock, the University of Virginia, the Commonwealth's Department of Human Resources Management, the Commonwealth's Office of Inspector General and other persons as permitted by law.

16. Defendants retaliated against plaintiff and terminated his employment in violation of the Act.

17. As a direct and proximate result, plaintiff has suffered and will continue to suffer pecuniary loss, loss of employment, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

## Count II
## First Amendment of the Constitution of the United States

18. Carmack hereby incorporates and re-alleges the foregoing paragraphs as if fully set forth herein.

19. The matters about which Carmack complained were matters of public concern.

20. Carmack's speech did not undermine or interfere with an effective work environment at the Agency.

21. Carmack's complaints and speech are protected activities pursuant to the First Amendment of the United States Constitution and 42 U.S.C. § 1983.

22. Defendants retaliated against Carmack on account of his complaints and speech in violation of the First Amendment and 42 U.S.C. § 1983.

23. Defendants actions against Carmack constitute retaliation against Carmack on account of his complaints and speech in violation of the First Amendment and 42 U.S.C. § 1983.

24. Defendants acted under color of state law.

25. Defendants' actions deprived Carmack of a federally protected right.

26. As a direct and proximate result, Carmack has suffered and will continue to suffer pecuniary loss, loss of employment, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

27. At all times material hereto, defendants engaged in retaliation against Carmack for exercising his constitutional rights, with malice or reckless indifference to his constitutionally-protected rights, and knew or should have known that their actions violated federal law, so as to support an award of liquidated and/or punitive damages.

## Count III
### State Common Law Wrongful Discharge Claim

28. Carmack hereby incorporates and re-alleges the foregoing paragraphs as if fully set forth herein.

29. The public policy of the Commonwealth with respect to free speech is set forth in Article I, section 12 of the Constitution of Virginia which provides in pertinent part "[t]hat the freedoms of speech and of the press are among the great bulwarks of liberty, and can never be restrained except by despotic governments [and that] any citizen may freely speak, write and publish sentiments on all subjects," and the First Amendment to the Constitution of the United

States, and Virginia Code § 2.2-3000 (1950), as amended, which provides that "[i]t shall be the policy of the Commonwealth that employees of state government be freely able to report instances of wrongdoing or abuse committed by their employing agency, other state agencies, or independent contractors of state agencies."

30. As alleged herein, defendants retaliated against plaintiff and terminated his employment in violation of the public policy of the Commonwealth.

31. As a direct and proximate result, Carmack has suffered and will continue to suffer pecuniary loss, loss of employment, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

32. At all times material hereto, defendants acted with malice or reckless indifference of the law so as to support an award of liquidated and/or punitive damages.

WHEREFORE, Plaintiff Robert D. Carmack prays for judgment against defendants, jointly and severally, and for all available remedies, including a civil penalty of not less than $500 nor more than $2,500, to be paid into the Fraud and Abuse Whistle Blower Reward Fund, injunctive relief, including prospective injunctive relief and reinstatement; back pay and front pay and other compensatory damages in the amount of $2,000,000; full reinstatement of fringe benefits and seniority rights; liquidated/punitive damages in the amount of $1,000,000; pre-judgment interest; costs and attorney's fees; and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

ROBERT D. CARMACK

s/ Terry N. Grimes
Of Counsel

Terry N. Grimes, Esq. (VSB No. 24127)
Brittany M. Haddox, Esq. (VSB No. 86416)
GRIMES AND HADDOX, P.C.
Franklin Commons
320 Elm Avenue, SW
Roanoke, Virginia 24016
540-982-3711
540-345-6572 *facsimile*
Email: *tgrimes@terryngrimes.com*
Email: *bhaddox@terryngrimes.com*
      Counsel for Robert D. Carmack