CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
NOV 06 2018
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

WILLIAMS D. CARMACK,       )
                           )
         Plaintiff,        )   Case No. 1:18-cv-00031
                           )
v.                         )
                           )
COMMONWEALTH OF VIRGINIA,  )   By: Hon. Michael F. Urbanski
et al.,                    )   Chief United States District Judge
                           )
         Defendants.       )

## MEMORANDUM OPINION

Plaintiff William D. Carmack filed his Complaint in the Circuit Court for the County of Washington in Abingdon, Virginia on May 30, 2018, alleging three claims related to his termination on January 4, 2018, as the Chief Financial Officer ("CFO") of the Southwest Virginia Higher Education Center. Count I alleges a violation of Virginia's Fraud and Abuse Whistle Blower Protection Act ("the Act"), Count II sets forth a cause of action for retaliation in violation of First Amendment protections afforded speech pursuant to 42 U.S.C. § 1983, and Count III alleges a state common law wrongful termination claim (Bowman claim) - against three defendants: (1) the Commonwealth of Virginia, (2) the Commonwealth of Virginia: Southwest Virginia Higher Education Center ("SWVHEC") (collectively "institutional defendants"), and (3) David N. Matlock, Executive Director of the SWVHEC, in his individual and official capacities. ECF Nos. 1-2. On July 9, 2018, defendants removed this case to the United States District Court for the Western District of Virginia pursuant to 28 U.S.C. § 1331. ECF Nos. 1-3.

1

The matter before the court is defendants' motion to dismiss all three counts under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF Nos. 8-9. With respect to Count I, defendants first allege that Carmack is not proper "whistleblower" as defined by the Act, and second, that he has failed to adequately plead a causal nexus between the filing of his complaint with the Office of the State Inspector General ("OSIG") and his termination from the SWVHEC. With respect to Count II, defendants concede that the record at this time is inadequate to conclude as a matter of law that Carmack's OSIG complaint is unprotected by the First Amendment. ECF No. 17, at 8. The court concurs, and therefore denies the motion as to Count II. Finally, defendants allege that Carmack has not pled an adequate statutory basis to state a Bowman claim in Count III and that the availability of alternative remedies precludes Carmack from bringing such a claim in the first place. On September 28, 2018, the court held a hearing regarding the motion to dismiss. On October 17, 2017, the court granted Carmack's voluntary motion to dismiss Count III without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure as to defendants Commonwealth of Virginia and the SWVHEC. ECF No. 13. Upon review of the record and for the reasons set forth herein, the court **DENIES in part and GRANTS in part** defendants' motion to dismiss. The court will provide Carmack with **LEAVE TO AMEND** his complaint pursuant to the court's opinion. Any amended complaint must be filed with 14 days of this opinion.

I.

Carmack was hired by and worked for the SWVHEC as its Chief Financial Officer ("CFO") on August 1, 2012, with responsibility for oversight of the center's financial affairs.

The SWVHEC, located Abingdon, Virginia, is a multi-college and university institution in Virginia that partners with public and private colleges and universities to provide degree programs, certificates, and professional development courses. Carmack briefly served as its Interim Director from June 2015, when the previous Executive Director, Dr. Rachel Fowlkes, retired, to October 2015, when defendant David Matlock took over as Executive Director. For two years and three months, Carmack reported to Matlock. ECF No. 6, at 17.

Carmack alleges that during his time as the CFO, he discovered that Matlock and others were "wasting and misusing" SWVHEC funds and resources and engaging in other financial improprieties. Id. Carmack specifically alleges the following:

> (1) On February 13, 2017, Matlock submitted an invoice for payment of $1,250 to reimburse his son, Jason Matlock, a middle school principal, for travel by his students to a robotics competition at James Madison University. Carmack alleges this expense was neither approved by the SWVHEC foundation nor a budgeted item. When asked about the invoice, Matlock allegedly told Carmack that he offered this reimbursement to all schools in southwest Virginia. Carmack believes this is not true, claiming that it was improbable that only Jason Matlock accepted the offer. Id. at 18.
>
> (2) Matlock told Carmack to "back off" of a husband and wife "computer team" with control over a $50,000 grant awarded by the Virginia Tobacco Commission and another $50,000 to perform work for the SWVHEC who were "working in a questionable manner from home" and collecting overtime pay in a way that Carmack suspected was fraudulent. Carmack complained to Matlock and Jeff Webb, SWVHEC's information technology director, about the suspected fraud. Specifically, Carmack complained about 111 hours of overtime Webb approved for the wife between July and November 2016. In response, Matlock allegedly told Carmack that he no longer wanted the couple to report to or file their timesheets with him, despite the fact that that they were "supposed to have 'worked' for him." Id. at 18-19.

(3) Matlock failed, after repeated requests, to submit invoices in a timely manner for payment per SWVHEC policy. Id. at 19.

(4) Matlock allegedly hired a longtime friend, Joe Mitchell, on or about September 7, 2016, to work as a maintenance supervisor without first scheduling Mitchell for an interview by a selection committee as required by SWVHEC policy. When Carmack cautioned Matlock about pre-selecting employees for hiring in contravention of SWVHEC policy, Matlock allegedly told him not to worry about it because a state senator "had his back." Id. at 19.

(5) Shortly after Matlock took over as Executive Director in October 2015, he excluded the finance department from financial decisions, thereby making it impossible for Carmack, as CFO, to do his job. Matlock and others allegedly began to purchase non-budgeted items without the finance department's knowledge and failed to submit invoices in a timely manner. Matlock also allegedly organized a community golf tournament under the name of the Higher Education Center Foundation, but failed to account for receipts and expenditures associated with this and other events. Matlock also allegedly instructed SWVHEC employees not to speak with Carmack and began to conduct SWVHEC business in "secret." Id. at 19-20.

(6) In December 2016, Matlock allegedly had an art installation, produced at a cost of $9,900 and dedicated to retired Executive Director, Dr. Fowlkes, removed. Carmack claims that despite repeated requests from members of SWVHEC's board of trustees and other employees to return the artwork, it remains missing. Id. at 20.

(7) Lastly, Carmack alleges that Matlock's reassignment of an information technology employee, Adam Tolbert, to human resources in December 2015, and decision to grant him access to confidential employee information, including social security numbers, salary information, and performance reviews, was improper and violated SWVHEC policy. Id. at 20-21.

Matlock concedes that he and Carmack disagreed about the "boundaries" of Carmack's position as CFO specifically and the role of financial department generally. ECF No. 9, at 1. Matlock alleges that Carmack took it upon him to "probe" his financial

4

decisions. Id. In February 2017, Carmack met with the ombudsman of the University of Virginia, which provides human resources and other oversight to the SWVHEC, to share his concerns about the foregoing. ECF No. 6, at 21. The ombudsman allegedly referred Carmack to the Commonwealth's Department of Human Resources Management ("DHRM"), which in turn suggested he contact the Commonwealth's Office of State Inspector General ("OSIG"). Id. Carmack alleges both the DHRM and OSIG assured him that he could not be terminated for making a complaint because he was protected by the "Whistle Blower Act." Id. Carmack claims to have relied on these assurances when he lodged his complaint with OSIG on or about July 31, 2017, disclosing the suspected wrongdoing and abuses alleged above. Id. Thereafter, on an unspecified date, the OSIG reportedly sent a letter to the Commonwealth's Secretary of Education stating that it had investigated a complaint and directing the SWVHEC to provide a response to its report and to explain the "corrective action(s)" it planned to take within 30 days. Id. Specifically, the complaint provides, verbatim, that the OSIG sent a letter with the "subject line 'Hotline Case # 16077' stating that it had conducted an investigation based on a complaint [made by plaintiff] to the State Fraud, Waste, and Abuse Hotline (Hotline)" regarding the SWVHEC. Id. Carmack alleges that Matlock and the institutional defendants knew he lodged the complaint with the OSIG. Id. On January 4, 2018, approximately five months after the OSIG complaint was filed, Matlock terminated Carmack without a specific allegation of misconduct. Id. at 21-22.

5

## II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. The purpose of a motion to dismiss is to test the legal sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, plaintiff must plead sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). A complaint is "facially plausible" when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). When ruling on a motion to dismiss, the court must also "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). In

considering a motion to dismiss, the court is "generally limited to a review of the allegations of the complaint itself." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016). If, after accepting all well-pleaded allegations in plaintiff's favor, it appears that plaintiff cannot prove any set of facts in support of his claim entitling him to relief, a motion to dismiss under Rule 12(b)(6) should be granted. Edwards, 178 F.3d at 244.

### III.

Counts I and III of the complaint allege causes of action under Virginia law. In Count I, Carmack alleges that Matlock and the institutional defendants retaliated against him for his complaint of suspected wrongdoing to the OSIG in violation of Virginia's Fraud and Abuse Whistle Blower Protection Act, Va. Code § 2.2–3009, et seq. Generally, the Act prohibits certain governmental actions against a "whistle blower." Va. Code § 2.2–3011. This policy is embodied in § 2.2–3009 of the Act, which states: "[i]t shall be the policy of the Commonwealth that employees of state government be freely able to report instances of wrongdoing or abuse committed by their employing agency, other state agencies, or independent contractors of state agencies." Id. at § 2.2–3009. In particular, "[n]o employer may discharge, threaten, or otherwise discriminate or retaliate against a whistle blower whether acting on his own or through a person acting on his behalf or under his direction." Id. at § 2.2–3011(A). The defendants move to dismiss Count I as to all parties contending that Carmack is (1) not a whistleblower within the meaning of the Act, and that the (2) five month gap between the filing of his complaint with the OSIG and termination belies any causal nexus between the two events. The court will first address defendants' claim that Carmack is not "whistleblower" protected the Act, and then address the issue of causation.

7

"In adjudicating non-federal questions, a federal court must apply the law of the state." United States v. Little, 52 F.3d 495, 498 (4th Cir. 1995) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Thus, where, as here, a federal court is hearing a state law claim over which it is exercising supplemental jurisdiction pursuant to 28 U.S. Code § 1367, the court is bound by the state supreme court's interpretation of state law. See id.; see also West v. Am. Tel. & Tel. Co., 311 U.S. 223, 236 (1940) (explaining that the highest court of state is the final arbiter of what is state "law," and its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited, or restricted). In the absence of such judicial construction, federal courts must carefully predict how the state's highest court would construe the provision or resolve the issue. See McClung v. Dr. Allan L. Bergano, D.D.S., P.C. v. City of Virginia Beach, 241 F. Supp. 3d 690, 707 (E.D. Va. 2017). In forecasting the interpretation of the state's highest court, the Fourth Circuit has held that district courts may consider, among other things: "canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions." Wells v. Liddy, 186 F.3d 505, 528 (4th Cir. 1999) (citing Liberty Mut. Ins. Co. v. Triangle Indus., 957 F.2d 1153, 1156 (4th Cir. 1992)). "The court must also employ common sense and guided logic." Atl. Mach. & Equip., Inc. v. Tigercat Indus., Inc., 419 F. Supp. 2d 856, 859 (E.D. Va. 2006). Lastly, federal courts should attribute some, but not controlling, weight to the state's lower courts' interpretations of the state statute in question. C.I.R. v. Estate of Bosch, 387 U.S. 456, 465 (1967). In short, a federal court interpreting a state statute when the state's highest court has

not addressed the issue should consider all of the authority that the state supreme court would. Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 512 (4th Cir. 1999).

The Supreme Court of Virginia has held that the principal rule of statutory construction is the effectuation of legislative intent and "that intent is to be determined by the words in the statute." Virginia Soc. for Human Life, Inc. v. Caldwell, 256 Va. 151, 156, 500 S.E.2d 814, 816 (1998). It is only proper to limit the plain meaning of the statute if such a construction will preserve a statute's constitutionality. Id., 256 Va. 151, 157, 500 S.E.2d 814, 816 (1998). "[I]f statutory language is not ambiguous but has a usual and plain meaning, rules of construction do not apply and resort to legislative history is both unnecessary and improper." Marsh v. City of Richmond, 234 Va. 4, 11, 360 S.E.2d 163, 167 (1987). Where the words used in the statute are not sufficiently explicit, courts may determine the intent of the legislature from the "occasion and necessity of the statute being passed, from a comparison of its several parts and of other acts in pari materia, and sometimes from extraneous circumstances which may throw light on the subject." City of Richmond v. Sutherland, 114 Va. 688, 77 S.E. 470, 471 (1913). In the absence of state jurisprudence dictating the interpretation of the language of a statute, courts should construe the words according to their ordinary meaning, given the context of the statute. Atl. Mach. & Equip., Inc. v. Tigercat Indus., Inc., 419 F. Supp. 2d 856, 860 (E.D. Va. 2006). With respect to Count I, defendants' first aver that Carmack's complaint to the OSIG does not qualify him as a whistleblower within the meaning of the Act. Here, the defendants' argument is twofold. First, they contend that because it was Carmack's "principal task to internally remedy the problem without undermining SWVHEC," his complaint was not a "report" under § 2.2–

3010 of the Act requiring that a whistleblower "make ... a good faith report of ... the wrongdoing or abuse." ECF No. 9, at 4. Second, defendants claim that the Act required Carmack to "first notify his supervisor, or [the SWVHEC's board of trustees]," i.e., report the wrongdoing internally, before lodging his complaint with an outside agency like the OSIG, and that because he did not do so, Carmack cannot invoke the Act's protections. ECF No. 9, at 4. The court will address both arguments in turn.

### A.

Defendants correctly note that the Supreme Court of Virginia has yet to interpret the Act authoritatively. The court would add that its own survey revealed little in the way of lower state court jurisprudence involving the Act or addressing ambiguities therein which might serve as persuasive authority in this case. It is unsurprising then that defendants' arguments rely heavily on federal cases interpreting foreign whistleblower statutes, including statutes in Minnesota, Ohio, and Maryland. In support of their first assertion that Carmack's complaint does not constitute a "report" within the meaning of § 2.2–3010 of the Act, defendants rely on Freeman v. Ace Telephone Association, a federal case interpreting the Minnesota Whistleblower Act. 404 F. Supp. 2d 1127, 1139 (D. Minn. 2005), aff'd sub nom. Freeman v. Ace Tel. Ass'n., 467 F.3d 695 (8th Cir. 2006). The Minnesota statute, employing language similar to that found in the Act, prohibits retaliation against an employee who "in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or any governmental body or law enforcement official." Minn. Stat. § 181.932 subd. 1(a). The court in Freeman held that a "report that is presented as part of an employee's job duties is not a report under the [Minnesota

Whistleblower] Act." 404 F. Supp. 2d 1127, 1139-41 (D. Minn. 2005) (citing Erickson v. City of Orr, No. A05-481, 2005 WL 2277395, at *7 (Minn. Ct. App. Sept. 20, 2005) (unpublished). In holding that a co-chief executive officer who reported mileage reimbursement irregularities to his employer's board of directors was not protected by the Minnesota Whistleblower Act, the district court in Freeman relied on numerous Minnesota state court decisions specifically excluding from the definition of "report" any report an employee is responsible for making as part of their "job duties." 404 F. Supp. 2d at 1138-41. Defendants contend that because Carmack's complaint to the OSIG was similarly part of his duties as CFO, he is no more able to invoke the Act here than the plaintiff in Freeman. The court disagrees. Freeman was decided on summary judgment, and Carmack correctly notes that whether his duties included reporting suspected wrongdoing to the OSIG is not specifically addressed in his complaint. Moreover, among the state court cases the district court in Freeman relied on is Erickson v. City of Orr, in which the Court of Appeals of Minnesota reversed a grant of summary judgment because it found that there was a genuine issue of material fact as to whether plaintiff's reporting of, inter alia, improper employee discounts was "part of her duties" or an effort to "expose allegedly illegal city actions." No. A05-481, 2005 WL 2277395, at *7 (Minn. Ct. App. Sept. 20, 2005). Thus, even if the court were to indulge defendants and apply Minnesota's definition of "report," the court would be precluded from ruling as a matter of law that Carmack's complaint was not a "report" because the outstanding factual question as to the scope of his duties is unresolved.

Defendant's second argument is that because Carmack did not notify his employer, i.e., the SWVHEC or its board of trustees, before lodging his complaint externally with the

11

OSIG, he cannot invoke the Act.[1] Defendants assert that a whistleblower must start by notifying his employer of the alleged wrongdoing in order to invoke the protections of the Act. This argument fails for two principal reasons. First, and crucially, nowhere does the Act require this sort of "internal" reporting. Section 2.2–3010 of the Act requires only that a whistleblower "make . . . a good faith report of . . . the wrongdoing or abuse to one of the employee's superiors, an agent of the employer, or an appropriate authority." This same section broadly defines "[a]ppropriate authority" as a "federal, state, or local agency or organization having jurisdiction over criminal law enforcement, regulatory violations, professional conduct or ethics, or abuse; or a member, officer, agent, representative, or supervisory employee of the agency or organization." Va. Code § 2.2–3010. Notably, the Office of the State Inspector General is specifically named in § 2.2–3010 as an "appropriate authority." Id. The Act also does not, as evidenced by the use of the disjunctive "or," require Carmack to report suspected wrongdoing to his employer, the SWVHEC, or a superior, such as Matlock, before notifying an "appropriate authority," such as the OSIG. Id. In fact, the statutory language does not evince any preference as to whom among those listed as appropriate authorities in § 2.2–3010 is notified first. The primary requirement of the Act is that the employee's report be made in "good faith," i.e., without malice and with reasonable

---

[1] In support of this proposition, the defendants first cite Kulch v. Structural Fibers, Inc., 78 Ohio St. 3d 134, 142 (Ohio 1997). The Ohio Whistleblower Statute at issue in Kulch, unlike Virginia's statute, by its clear language requires an internal complaint to the employer before lodging a complaint with an outside agency like the Occupational Safety and Health Administration (OSHA). Indeed, the Kulch court specifically noted that the statute "mandates that the employer be informed of the violation both orally and in writing" and that "[a]n employee who fails to provide the employer with the required oral notification and written report is not entitled to statutory protection for reporting the information to outside authorities." Id. at 141. The same glaring dissimilarity with Virginia's statute is present in the next case cited by defendants, Lark v. Montgomery Hospice, Inc., involving Maryland' Health Care Worker Whistleblower Protection Act. 994 A.2d 968, 970 (Ct. App. Md. 2010). Section 1-503(3) of the statute explicitly requires whistleblowers to report the suspected wrongdoing to a "supervisor or administer of the employer in writing" and "afford[] the employer a reasonable opportunity" to take corrective action. Id. The court in Lark ultimately held in favor of plaintiff/appellant, stating that "when a fellow employee's repeated violation of a law, rule, or regulation is reported to a supervisor, the failure or refusal to correct the violation" is actionable under the whistleblower statute. Id. at 969.

cause to believe that it is true, and defendants do not appear to contest that Carmack's complaint was made in "good faith" as defined in the Act. Second, although internal reporting is neither required by the Act nor a prerequisite to suit, the facts as alleged in Carmack's complaint nonetheless indicate that he did report at least some of his concerns internally prior to filing his OSIG complaint. Carmack alleges to have, among other things: (1) questioned Matlock regarding a $1,250 invoice reimbursing Matlock's son, a middle school principal, for expenditures related to a robotics competition, (2) complained about suspected fraud and abuse related to a Tobacco Commission grant to Webb and Matlock, and (3) cautioned Matlcok about pre-selecting employees for hiring in contravention of SWVHEC policy. Moreover, in February 2017, Carmack also allegedly conferred with the ombudsman of the University of Virginia, which provides human resources and other oversight to the SWVHEC, and discussed the suspected wrongdoing. ECF No. 6, at 21. The ombudsman apparently referred Carmack to the Commonwealth's Department of Human Resources Management (DHRM), which in turn suggested Carmack report his complaints to the OSIG. Id. Thus, even if the Act contained an internal reporting requirement, Carmack appears to have reported to a number of persons within or closely associated with the SWVHEC before lodging his complaint externally with the OSIG. Indeed, defendants acknowledge that, at a minimum, Carmack has pled the "advisement of Matlock" and other "limited internal reporting." ECF No. 17, at 6. In sum, defendants' attempts to cast the plaintiff's conduct as falling outside the protections of the Act are without merit. The Act is sufficiently clear on its face to allow the court to comfortably conclude that he would qualify

as a "whistleblower" under the Act if the court assumes, as it must at this juncture, that the facts alleged in the complaint are true.

**B.**

Defendants' second major contention regarding Count I is that Carmack has failed to sufficiently plead causation between his complaint to the OSIG on or about July 31, 2017 and his termination as CFO of the SWVHEC on January 4, 2018. Defendants claim both that there is no "evidence" of causation and that the five month delay between these events indicates that the termination was made without consideration of the protected activity.

To state a claim for retaliatory discharge, the Fourth Circuit generally requires a plaintiff to plausibly allege (1) engagement in protected activity, (2) materially adverse employment action, and (3) that a causal relationship existed between the protected activity and the adverse employment activity." Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015). Carmack's allegations plainly satisfy the first and second elements of a retaliation claim. His filing of the OSIG complaint was a protected activity, and his termination from the SWVHEC indisputably constitutes adverse employment action. However, Carmack failed to make an adequate showing of a causal connection between the two. While the court is mindful that Carmack need not establish a prima facie case at this stage, it nonetheless "look[s] to the requirements of a prima facie case as a guide in assessing plausibility of [Carmack's] claim for relief," and finds that, even construing the complaint liberally and despite the low pleading standard, Carmack has not adequately pled causation. Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002) (recognizing that the prima facie

14

case is an evidentiary, and not a pleading, standard)); see also Hinton v. Virginia Union Univ., 185 F.Supp.3d 807, 818 (E.D. Va. 2016), motion to certify appeal denied, No. 3:15CV569, 2016 WL 3922053 (E.D. Va. July 20, 2016).

To adequately allege causation, a plaintiff must first assert facts that allow the court to reasonably infer that the employer was aware of the protected activity. Mohammed v. Cent. Driving Mini Storage, Inc., No. 2:13cv469, 2015 WL 3607527, at *10 (E.D. Va. June 5, 2015). Indeed, the "decisionmaker's knowledge of the protected activity is 'essential to a retaliation claim." Jones v. HCA, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014) (citing Francisco v. Verizon S. Inc., 756 F.Supp.2d 705, 725–26 (E.D. Va. 2010). Second, either (1) the retaliation must closely follow the protected activity or (2) the plaintiff must put forth a sufficient explanation for the delay between the protected activity and the alleged retaliation. Hinton, 185 F.Supp.3d at 837-38 (relying on Perry v. Kappos, 489 Fed.Appx. 637, 643 (4th Cir. 2012)). With respect to the threshold knowledge requirement, Carmack alleges only that the "institution[sic] and individual defendants knew that plaintiff had lodged the above-referenced complaints, and in particular that plaintiff had complained to the OIG." This kind of threadbare, conclusory allegation - a mere recitation of a legal requirement for which there is no factual support in the complaint - is precisely the sort of allegation that Twombly and Iqbal rejected. The complaint does allege that the OSIG sent a letter to the Commonwealth's Secretary of Education stating that it had conducted an investigation based on a complaint made to the its hotline, but there is nothing in the complaint indicating that the letter actually named Carmack as the complainant or that Matlock, assuming he was the "decisionmaker" responsible for Carmack's termination, knew of the OSIG complaint. What

15

is more, it is unclear why whatever information the Commonwealth's Secretary of Education gleaned from the OSIG's letter should be imputed to the other defendants, namely the SWVHEC or Matlock.

Furthermore, with respect to the first option under Hinton, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close[.]'" Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citations omitted). While there is no "bright temporal line," case law from the Fourth Circuit suggests that five months between the protected activity and the adverse action is too long to establish causation by temporal proximity alone. See King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (two months and two weeks "sufficiently long so as to weaken significantly the inference of causation between the two events"); Horne v. Reznick Fedder & Silverman, 154 Fed.Appx. 361, 364 (4th Cir. 2005) (holding district court did not err in granting summary judgment in defendant's favor on retaliation claim, as plaintiff's only evidence of causation was that she was fired two months after discrimination complaint, citing King); see also Perry v. Kappos, 489 Fed.Appx. 637, 643 (4th Cir. 2012) (holding three month lapse too long to establish causation, without more); Pascual v. Lowe's Home Ctrs., Inc., 193 Fed.Appx. 229, 233 (4th Cir. 2006) (three to four month separation between termination and claimed protected activity too long to establish a causal connection by temporal proximity alone); Wilson v. City of Gaithersburg, 121 F. Supp. 3d 478, 485 (D. Md. 2015) (lapse of more than three months too long a period to establish a causal relationship on temporal proximity alone); cf. Foster v. Univ. of Md.,

787 F.3d 243, 247 (4th Cir. 2015) (complaints of discrimination one month prior to termination sufficient to create a jury question regarding causation prong of prima facie case); Jenkins v. Gaylord Entertainment Co., 840 F. Supp. 2d 873, 881 (D. Md. 2012) (two-day span between opposition activity and suspension was "very close" and sufficient to state a cognizable causation claim). The plaintiff posits that it "would have taken some time" for Matlock and others at the SWVHEC to learn that the he authored the OSIG complaint after it was filed, and therefore temporal proximity is stronger than it otherwise appears. Be that as it may, the complaint does not contain any factual matter pertaining to or otherwise allege the length of time between when the complaint was filed and when defendants learned that Carmack was the one to file it.

Under the second Hinton "sufficient explanation" option, where, as here, temporal proximity between protected activity and allegedly retaliatory conduct is missing, the Fourth Circuit and its courts have looked to factors articulated in the Third Circuit's Farrell decision in analyzing the causation prong. Lee v. Wade, No. 3:15CV37, 2015 WL 5147067, at *5 (E.D. Va. Aug. 31, 2015) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271 (3d Cir. 2000)); Mohammed v. Cent. Driving Mini Storage, Inc., No. 2:13cv469, 2015 WL 3607527, at *10 (E.D. Va. June 5, 2015)); Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007). These additional factors include, inter alia, (1) antagonism or retaliatory animus during the intervening period or (2) inconsistent reasons for termination. See, e.g., Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir.2007) (where temporal proximity is lacking, "evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation."); Linkous v. CraftMaster Mfg., Inc., Civil Action No. 7:10-CV-00107,

2012 WL 2905598 at *8 (W.D.Va.2012) (explaining that "[b]ecause plaintiff has no evidence of temporal proximity and has not offered any evidence that [defendant] has offered inconsistent reasons for his termination, plaintiff must rely on an intervening pattern of retaliatory conduct to prove causation"); Jaudon v. Elder Health, Inc., 125 F.Supp.2d 153, 165 (D. Md. 2000). The most common "sufficient explanation" in the Fourth Circuit requires alleging "continuing retaliatory conduct and animus." Reardon v. Herring, 201 F. Supp. 3d 782, 785 (E.D. Va. 2016) (citing Perry, 489 Fed.Appx. at 643).

In the instant case, Carmack has not alleged antagonism or retaliatory animus directed at him in the intervening period between when he filed the OSIG complaint on or about July 31, 2017, and his termination on January 4, 2018. He also has not alleged that defendants provided inconsistent reasons for his termination. Though there are facts in the complaint which perhaps evince retaliatory animus, including, for example Matlock's (a) exclusion of the finance department from financial decision-making and meetings, (b) stripping the Carmack of supervisory responsibility over the husband and wife computer team, (c) instruction to several SWVHEC employees not to cooperate or converse with the Carmack, and (d) placement of additional locks on his door, these events occurred at either unspecified times or prior to the filing of the OSIG complaint. Therefore, to the extent these facts can reasonably be viewed as exhibiting retaliatory animus on the part of defendants, namely Matlock, they are not probative as alleged of a causal link between plaintiff's OSIG complaint and termination. In sum, Carmack has failed to plead facts permitting the court to make a reasonable inference in his favor that the protected act and adverse action were related. He does not plead sufficient facts indicating defendants were

aware of the OSIG complaint. Nor does this case involve the kind of "very close" time span between protected activity and adverse action that gives rise to an inference of causation. Lastly, Carmack fails to plead intervening facts that bridge the gap between his OSIG complaint and termination sufficient to overcome the lack of temporal proximity. Count I is therefore **DISMISSED without prejudice**. As the statutory predicate for Carmack's wrongful discharge claim (Bowman claim) in Count III is a violation of Virginia's Fraud and Abuse Whistle Blower Protection Act, which the court finds has not been adequately pled, Count III will similarly be **DISMISSED without prejudice**. The court will provide Carmack with **LEAVE TO AMEND** his complaint pursuant to the court's opinion.

### IV.

Accordingly, defendants' motion to dismiss (ECF No. 8) will be **GRANTED in part** and **DENIED in part**. As regards those claims that will be dismissed without prejudice, Carmack will be given leave to file an amended complaint that cures the defects noted herein with 14 days.

An appropriate Order will be entered this day.

Entered: 11-06-2018

/s/ Michael F. Urbanski
Michael F. Urbanski
Chief United States District Judge