IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| WILLIAM D. CARMACK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:18-cv-00031 |
| COMMONWEALTH OF VIRGINIA ET AL, | ) ) ) |
| Defendants. | ) ) |

## MOTION FOR SANCTIONS

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, plaintiff William D. Carmack, moves for entry of an order imposing sanctions upon defendants the Commonwealth of Virginia, the Southwest Virginia Higher Education Center, and David N. Matlock (collectively, "defendants') for failing to provide discovery, and in support thereof states as follows:

1. Discovery issues in this matter started early on. The original problem was that defendants failed to provide complete responses to interrogatories and requests for production of documents and failed to identify what had been withheld. As a result, the parties submitted a letter outlining the issues and held a teleconference with magistrate judge Pamela Sargent pursuant to this Court's protocol on January 28, 2019. During the teleconference, defendants' deficiencies were readily apparent, and Judge Sargent reminded defendants and the attorney general's office of their obligation to provide discovery in a timely manner and to identify what has been withheld as required by Rule 26 of the Federal Rules of Civil Procedure (see Ex. 1). No sanctions were imposed upon defendants at that time, and the case proceeded.

2. Plaintiff then took the depositions of defendant David Matlock on January 24, 2019 and former employees Joyce Brooks, Christine Fields and Janet Williams on February 23, 2019.

Defendants then took plaintiff's deposition on March 12, 2019.

   3.  At plaintiff's deposition, it became apparent that defendants had failed to produce additional documents when defendants offered several documents which had not been produced in discovery and questioned plaintiff about them. Unlike all other depositions, all exhibits offered by defendants omitted the Bates stamped numbers — despite the fact that all of the documents actually produced by the parties had been assigned Bates numbers — hoping apparently that plaintiff would not catch the fact that defendants had not produced some of the documents previously as there are over 25,000 documents produced by defendants in this matter. But, because it was odd that defendants were using documents without Bates stamps, plaintiff subtly drew the issue to the attention of defendants at first,,

> Mr. Grimes: Counsel, do you know the Bates stamps of these documents (Ex. 86), by chance?
> Mr. Kincer: No, I don't. I didn't run mine from the Bates stamp, but we can get that. *I'm sure they have been produced.* We can – I will just make an exhibit that says what it says, and we can key them up later if and when we use it.

(Ex. 2, at 43-44)[Emphasis added]. But, then defendants moved into documents that were never produced in discovery,

> Q All right.
> Ms. Haddox: Do you know the Bates stamps for Exhibit 94?
> Mr. Hardy: I'm sure it requests [sic], as for it, but I'm not finding in the ESI that we produced.
> Ms. Haddox: Okay.

(Ex. 2, at 175). Moments later, defendants used another unproduced document, so plaintiff therefore began to make a record of the issue, which defendants took issue with,

> Ms. Haddox: Just for the record, Exhibit 95, neither e-mail was produced in discovery.
> Mr. Hardy: Nor were they asked, *would be our position.*
> Ms. Haddox: I'm just making a record. I don't have before me all the discovery requests. I can look at it later. For the record, neither e-mail in Exhibit 95 was produced.

2

> Mr. Kincer: So the best thing for us to do is to move on.
> Ms. Haddox: Which would be the definition of making a record.

(Ex. 2, at 180)[Emphasis added]. For the record, the documents in question referenced immediately above (Deposition Exhibits 86, 94 and 95) are attached to this motion as Exs. 3, 4, and 5, respectively.

    4.    Defendants thereafter introduced a host of documents that had not been produced before,

> MS. HADDOX: While we are still on your time, let me finish my objection from earlier. I think I got through 95. So Exhibit 96 through 101 and 104 and 106 were not produced. Like the others, they are subject to production and numerous requests for production. Requests for production number two seeks the personal health insurance or other files of Carmack in any form and all other documents concerning or pertaining to his employment, including and not limited to his job duties, his performance, records of misconduct or violation of company rules, which is [the] precise reason defendant allegedly used them today.
>     In addition – I won't go through all of the justification[s]; you can read it yourself. Request for production five, six, seven, 19, 21, [and] 23, would also cover the documents not produced.
> MR. KINCER: Okay.

(Ex. 2, at 284-285) (some of the depositions exhibits referenced in this section are Confidential and would have to be filed under seal; therefore, the documents have not been attached hereto).

    5.    Thus, defendants' "position" that plaintiff had not requested the documents before plaintiff's deposition was untrue — in reality, the documents were requested long before Matlock's deposition, and therefore also certainly before plaintiff's deposition. Review of plaintiff's initial discovery requests (Ex. 6) plainly reveals that plaintiff requested the documents every which way but Sunday, and even if plaintiff had not, pursuant to Fed. R. Civ. P. 26 a party has an obligation to identify and produce discoverable information in their initial disclosures even without a formal request. And, pursuant to the recent changes to Fed. R. Civ. P. 26, a party has an obligation to identify withheld documents, which was not done here.

3

6. As further evidence that defendants knew that they had an obligation to produce the documents, three (3) days *after* plaintiff's deposition, defendants produced the documents in question as part of a document dump of *an additional 2,557 documents* (Ex. 7).[1] At the risk of burdening the record, plaintiff will not attach here all of the documents, but suffice to say that most, like SWVHEC023427 (Ex. 8, an email dated October 26, 2016) are internal emails and other documents which defendants have had in their possession *for more than two years*.[2] Without question, *all* of these documents should have been produced by defendants well *before* the principal witnesses in this case, plaintiff William Carmack and defendant David Matlock, were deposed.

7. Immediately following the document dump of over 2500 documents which should have been produced before the Matlock and Carmack depositions, plaintiff sent an email attempting in good faith to resolve the matter,

> Ryan/Ed – as you know, you offered as exhibits at Mr. Carmack's deposition this week several documents that had not been produced in discovery. You offered documents without Bates stamps hoping that we would not realize that the documents had not been previously produced. This was not an accident. To the contrary, it was a tactical maneuver on the part of the AG's office. These documents had been requested in discovery, and to make matters worse, Judge Sargent chastised you recently for engaging in similar tactics i[n] a teleconference earlier this year and reminded you plainly that the documents at issue during that conversation should have been produced pursuant to Rule 26 with or without request. Today — 3 days after Mr. Carmack's deposition — you appear to have produced the documents in question (I have not completed review of the documents produced today). In so doing, you deprived us of the opportunity to prepare the plaintiff for his deposition. This clearly was an intentional act. We intend therefore to file a motion for imposition of sanctions. As the AG's office engaged in similar tactics in the DMV trilogy cases, and Back/Vaughn, this is a pattern and practice with your office. We would like to give you the opportunity to discuss voluntary resolution of this matter before the motion is filed. If you are interested, please let me know.

---

[1] In the email, defense counsel stated that "I will follow up with a final ROG/RFP response" (Ex. 7, at 1). To date the response has not been received.
[2] Plaintiff will produce every document if requested by the court. Some are confidential and must be produced under seal.

4

(Ex. 9, at 3). Instead of owning up to their duplicity, defendants doubled down and stated that "discovery requests are continuing in nature. We did not know the existence of many of the documents until *shortly before* Mr. Carmack's deposition." *Id.* at 2 [Emphasis added]. But, the fact that defendants had the documents before the depositions obviously means that they should have been produced before the depositions,

> No Ryan – your statement that "we did not know the existence of many of the documents until shortly before Mr. Carmack's deposition" is not sufficient. If you knew of them a week before, you should have produced them a week before. If you knew of them the day before, you should have produced them the day before. And you certainly knew of them the day before, for you made copies and brought them to the deposition.

*Id.* at 1. And, on information and belief, defendants should have known of the documents prior to when they allege they did. For example, some of the documents appear to be emails that were included in ZIP file that was attached to an email that defendants produced long ago, but failed to provide the ZIP file itself (Ex. 12). Plaintiff specifically followed up asking for the ZIP file during *Matlock's* deposition on January 24, 2019 — again, long before plaintiff was deposed,

> MR. GRIMES: Ryan, could we get that, by chance, the contents of the zip file?
> MR. HARDY: We'll look into it, yes.
> MR. KINCER: Of Mr. Carmack's email account.
> MR. GRIMES: Whatever was in the zip file. Whatever is described here. The zip file.
> MR. KINCER: Right, right. But you had said Mr. Carmack's emails here, not the Commonwealth's emails.
> MR. GRIMES: He said that.
> MR. KINCER: I don't think so.
> MR. GRIMES: I don't know what's in the zip file.
> MR. KINCER: Okay.
> MR. GRIMES: Whatever -- whatever was sent by Jeff Webb to OSIG referenced in this email of November 2, 2017, Exhibit 73.

(Ex. 13, at 300).

Plaintiff hoped that the issue had been resolved, but things then turned much worse.

8. On April 3, 2019, defendants filed their motion for summary judgment (ECF 63) and a supporting memorandum (ECF 64). The cornerstone of the motion is the litigation affidavit of David Matlock (ECF 64-1), purportedly signed the same day the motion was filed (ECF 64-1, at 21).[3] The heart of Matlock's affidavit, and the lynchpin of defendants' case, is Exhibits 1 and 2 to Matlock's affidavit (ECF 64-2 and 64-3). Those documents purport to be memoranda from Paul Reagan, Chief of Staff, dated September 20 and 27, 2016, seeking for "FY 2017 equal to five (5) percent of your agency's adjusted legislative general fund appropriation" (ECF 64-2, at 3).[4] This means of course that the defendants had the documents in question more than two years prior to the commencement of depositions in this case. Although defendants' defense has been ever evolving, on brief this particular point has become the heart of defendants' case: "[t]he critical failing of Plaintiff's wrongful termination claims is that he cannot dispute that his layoff was the result of a year-long analysis into how the Center should be reorganized to meet a budget reduction mandated by Governor McAuliffe" (ECF 64, at 18). And, defendants repeatedly reference the documents in question on brief (*see, e.g.*, ECF 64, at 4).

9. The problem is that defendants did not produce the documents in question (ECF 64-2 and -3) until March 22, 2019 (see Ex. 10) — nearly two months after Matlock's deposition on January 24, 2019 and 10 days after Carmack's deposition on March 12, 2019 — and 3 days after the discovery cut-off of March 19, 2019. By so doing, defendants quite effectively deprived plaintiff from asking Matlock about the documents at his deposition or otherwise conducting any discovery whatsoever concerning the documents. And to make matters worse, defendants never identified the

---

[3] Not once on brief do defendants refer to Matlock's deposition transcript.
[4] Interestingly, the memo is addressed to "Executive Branch Agency Heads, excluding Institutions of Higher Education" (ECF 64-2, at 1) — like the Southwest Virginia Higher Education Center.

6

author of the documents, Paul Reagan, as a person having knowledge of the facts of the case (see Ex. 11). Plaintiff could not therefore have known to take his deposition.

   10. Federal law prohibits this type of conduct and is quite clear. Simply put, federal law does not permit a party to sandbag another party during discovery then use that duplicity to ambush an opponent at a later point during the proceedings. *HSK v. Provident Life & Accident Ins. Co.*, 128 F. Supp. 3d 874, 881 n.4 (D. Md. 2015) is instructive. There the court stated,

  *See Chapman v. Ourisman Chevrolet Co., Civ. No. AW-08-2545, 2011 U.S. Dist. LEXIS 73708, 2011 WL 2651867, at \*3-5 (D. Md. July 1, 2011)*. That case thus applied a rule intended to prevent sandbagging "during discovery, then staging an ambush during a later phase of the case." *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 95 (D.D.C. 1998). And this court has prohibited corporations from contradicting their designee's testimony with subsequently executed affidavits, which is consistent with the "general proposition [that] a party may not submit an affidavit or declaration at the summary judgment stage contradicting its earlier deposition testimony." *TEKsystems, Inc. v. Bolton*, Civ. No. RDB-08-3099, 2010 U.S. Dist. LEXIS 9651, 2010 WL 447782, at \*8 (D. Md. Feb. 4, 2010) (quoting *Caraustar Indus., Inc. v. N. Ga. Converting, Inc.*, Civ. No. 3:04CV187-H, 2006 U.S. Dist. LEXIS 91829, 2006 WL 3751453, at \*6 (W.D.N.C. Dec. 19, 2006)).

  This hornbook proposition of law is codified in the Federal Rules of Civil Procedure. Rule 37(c) plainly provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information of witness to supply evidence on a motion, at a hearing or at trial, unless the failure was substantially justified or is harmless." Here defendants did precisely what the law forbids — they withheld documents which had been in their possession for more than two years, permitted the depositions of the

principal witnesses to go forward without the documents so that the witnesses could not be questioned about the documents, then produced the documents after the depositions and relied on them to support their motion for summary judgment. This is not a clever litigation tactic; to the contrary, it is precisely what a party cannot do.

Accordingly, plaintiff requests entry of an order striking the Matlock affidavit and the exhibits in question from the record and precluding defendants from using that information to supply evidence to support their motion for summary judgment or at trial, and for an award of attorney's fees and costs.

Respectfully submitted,

WILLIAM D. CARMACK

By: /s/ *Terry N. Grimes*
    Of Counsel

Terry N. Grimes, Esquire (VSB No. 24127)
TERRY N. GRIMES, ESQ., P.C.
320 Elm Avenue, SW
Roanoke, Virginia 24016-4001
(540) 982-3711
(540) 345-6572 *Facsimile*
*tgrimes@terryngrimes.com*
    *Counsel for Plaintiff*

Brittany M. Haddox, Esq. (VSB #86416)
STRELKA LAW OFFICE, PC
119 Norfolk Avenue, SW
Warehouse Row, Suite 330
Roanoke, Virginia 24011
(540) 283-0802
*brittany@strelkalaw.com*
    *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that plaintiff has attempted in good faith to resolve the matter without judicial intervention and that on this 24th day of April, 2019, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court through the CM/ECF system, which will send notification to all counsel of record.

/s/ *Terry N. Grimes*
Terry N. Grimes
