Attorney-Client Privilege

**From:** Shaw, Kathleen (OSIG) <Kathleen.Shaw@osig.virginia.gov>
**Sent:** Wednesday, January 17, 2018 4:35 PM
**To:** 'duffycarmack@hotmail.com'
**Subject:** FOIA 2018-050 SWVHEC Case Report 16077

*This email has been sent on behalf of Michael Westfall, Acting State Inspector General.*

To Whom It May Concern:

The Office of the State Inspector General received a Virginia Freedom of Information Act (FOIA) records request from you on Jan. 9, 2018, made in accordance with Code of Virginia § 2.2-3700 et seq.

The attached documents are supplied to you in compliance with Code of Virginia § 2.2-3704[B](2), and contain findings and recommendations from the State Fraud, Waste and Abuse Hotline's investigation of Southwest Virginia Higher Education Center (SWVHEC) Case 16077, which addresses complaints related to violation of policies and other issues.

Please be advised the report and associated response have been reviewed for redaction per Code of Virginia § 2.2-3705.3 [7].

This fulfills your FOIA request.

Sincerely,

Michael C. Westfall, CPA
Acting State Inspector General

*Kathleen Shaw, Communications Director*
*Office of the State Inspector General*
*101 N. 14th St., 7th Floor*

Carmack 000003

*Richmond, VA 23219*
*804-625-3276*
*kathleen.shaw@osig.virginia.gov*



Carmack 000004



## COMMONWEALTH OF VIRGINIA
### Office of the State Inspector General

Michael C. Westfall
Acting State Inspector General

P.O. Box 1151
Richmond, Virginia 23218

Telephone (804) 625-3255
Fax (804) 786-2341
www.osig.virginia.gov

November 17, 2017

Dr. Dietra Y. Trent
Secretary of Education
P.O. Box 1475
Richmond, VA 23218

Subject: Hotline Case # 16077 Report

Dear Secretary Trent:

The Office of the State Inspector General (OSIG) recently conducted an investigation based on a complaint made to the State Fraud, Waste and Abuse Hotline (Hotline) regarding the Southwest Virginia Higher Education Center (Center).

The scope of the review was limited to relevant circumstances as specified in the complaint. Therefore, this inquiry was limited to the review of pertinent policies and procedures, documentation and interviews with personnel. The period covered during this review was January 2016 to September 2017.

**Allegation #1:** *Adam Tolbert, Operations and Administrative Staff, has inappropriate and unnecessary access to Human Resource (HR) systems.*

**Policy Guidelines:**
The Agency Risk Management and Internal Controls Standards states that information technology infrastructure controls include restricting access to operating system software.

**Finding of Fact:**
OSIG reviewed Mr. Tolbert's access authority and found he had system access to several HR processes. However, his position description did not identify any need for that access. David Matlock, executive director of the Center, told OSIG that Mr. Tolbert had system access to certain HR records to learn the system and serve as backup when needed.

**Conclusion:**
The allegation is **partially substantiated**. Mr. Tolbert had system access to certain HR processes, but no identified need for that access in his position description. However, Mr. Matlock identified a need for the access.

**Recommendation:**
If Mr. Tolbert is to continue to be a backup to HR staff and needs system access to certain HR processes, his position description should be updated to reflect those responsibilities.

**Allegation #2:** ███████████ *waste state funds performing* ████████████████ *for a system that handles* ███████████████.

**Finding of Fact:**
The Hotline caller said ████████████ cost the Center about ███████ annually to perform ██████████████████ for a system that handles ███████████ The caller contacted a vendor that estimated an annual cost of about one third that amount to perform similar duties.

████████ told OSIG the system handled ██████████, but was recently changed to ███████ and ████████. At the time of this investigation, no ████████ had been made to ████████; the Center therefore wants to ascertain whether that process is working adequately before considering an alternative source to program and maintain the system. The ████████ have worked at the Center ████████ and have ████████████. Once there have been ██████████ and the system is determined to be working satisfactorily, the Center will consider issuing a request for proposal (RFP) to solicit possible vendors to perform this work. The Center will likely begin this consideration in late spring or early summer of 2018.

**Conclusion:**
The allegation is **unsubstantiated**. The ████████████ provided a reasonable explanation for continuing to employ the ████████████ without considering an outside vendor at this time.

**Allegation #3:** ████████████ *inappropriately authorized* ███████████████████ *at a school where* ████████████, *but not at other regional schools.*

**Finding of Fact:**
The caller provided evidence that a school where █████████████████ was approved in ████████████████ for a ██████████████. Subsequently, Center staff prepared for OSIG a summary of disbursements related to ████████████ for fiscal years (FY) 2014–2017. The disbursements summary shows the ████████ referred to above received support in

CONFIDENTIAL STATE HOTLINE DOCUMENT   Page **2** of 5

Carmack 000006

█████ only. Altogether for the four fiscal years, disbursements exceeded ████████, including for six other schools.

**Conclusion:**
The allegation is **unsubstantiated**. Although true that the school where ██████████ was █████ received funding for ████████████ during one year, ████ was provided to a number of other areas for the four years reviewed, including six other schools.

**Allegation #4:** *Mr. Matlock does not submit travel reimbursement requests timely.*

**Policy Guidelines:**
The Commonwealth Accounting Policies and Procedures (CAPP) Manual Section 20335 – State Travel Regulations states, "Travelers must submit the Expense Report to their supervisor within 30 working days after completion of the trip."

**Finding of Fact:**
The caller said that Mr. Matlock had not submitted travel reimbursement requests during calendar year 2017, although he had travelled multiple times during the months of May–August 2017. Mr. Matlock confirmed he had not submitted the reimbursement requests because he had higher priorities completing his other assigned duties. In the past, he had always been reimbursed for such requests even though they were often late based on the state policy.

In addition, Mr. Matlock referred to University of Virginia (UVA) travel reimbursement policy because UVA provides administrative support for the Center. He told OSIG the UVA travel reimbursement policy allows for late submission of the reimbursement request with supervisor approval. OSIG confirmed the wording of the UVA policy and requested guidance from the Department of Accounts' deputy state comptroller regarding its applicability to the Center. The deputy state comptroller agreed a supervisor could approve a reimbursement request made more than 30 business days after the related travel.

**Conclusion:**
The allegation is **partially substantiated.** Although Mr. Matlock did submit his travel reimbursements late based on state policy, a supervisor can approve travel reimbursement requests that are submitted by staff more than 30 working days after travel.

**Recommendation:**
Mr. Matlock may want to consider having administrative staff prepare his travel reimbursement requests from supporting documentation for his signature within 30 working days after his travel so he does not have to concern his supervisor with this approval responsibility.

**Allegation #5:** ███████ *does not* ████████ *in the Center's* ████████ *although required by policy.*

**Policy Guidelines:**
On ███████████████████████████, issued a memo to staff regarding "Paid Time Off and other Related Topics" that was to be applicable to all full-time and part-time staff. This memo included the following: "'Clock hours' for payroll purposes can be accrued <u>only</u> while working at the SWVHEC, traveling on pre-approved Center business, and participating in pre-approved professional development. When you are 'off the clock,' you are welcome to check emails, catch up on professional reading, prepare for a special event, etc.; however, you <u>cannot</u> earn pay or accrue comp time."

**Finding of Fact:**
The caller said that the policy described above was applicable to all staff, and in part, meant that all staff, including ███████, were to sign in and out from the Center's time clock daily. However, ███████ had not regularly used the time clock since ███████.

███████ told OSIG when █ first started working at the Center █ used the time clock, but later determined that since █ worked a lot outside of regular working hours the time documented on the clock did not include, cumulatively, the total hours he worked each day. █ also said that █ spoke with ███████ and found the policy was not meant to be applied to ███████ had not followed it ███████ was in that position.

**Conclusion:**
The allegation is <u>**unsubstantiated**</u>. A memo from a ███████ is not necessarily binding on ███████. Further, Fair Labor Standards Act (FLSA)-exempt employees, such as ███████, are not typically paid based on clock hours.

**Recommendation:**
Unless required for grant reporting or other purposes, Center management should consider excluding all FLSA-exempt employees from the requirement to use a time clock. Usually, only wage employees (to record hours worked for pay calculations) and non-exempt FLSA staff (to determine overtime pay/leave) are required to use a time clock.

**Allegation #6:** *Mr. Matlock approved sole sourcing a purchase after the purchase was made.*

**Policy Guidelines:**
The Agency Procurement and Surplus Property Manual Chapter 8 "Sole Source Procurement" Section 8.1 states "All sole source procurements for nontechnology goods and services up to and including $50,000 must be approved in advance by the agency head or designee."

Carmack 000008

**Finding of Fact:**

The caller provided supporting documentation that the Center purchased a preventive maintenance service agreement for specialty room dividers and approved the sole-source document after the service was performed. Mr. Matlock said the same vendor had performed this work for 10–15 years, and he relied on finance staff to verify the Center's compliance with the state procurement policy. He acknowledged that his approval of the sole source justification occurred after the service was performed, although he was not made aware of the policy requirement when he approved the justification.

**Conclusion:**

The allegation is **substantiated**. Although the sole source justification makes sense based on the service performed, the state procurement policy requires that justification be approved prior to when the applicable service is performed.

**Recommendation:**

Mr. Matlock should ensure that future sole source justifications are approved prior to service performance. In addition, the Center should annually confirm the vendor used is the only one capable of performing the service for the annual contract, or whenever the contract ends, if longer, such as for a multi-year contract.

Please provide a response to the recommendations made in this report, indicating the corrective action(s) you plan to take within 30 days of the issuance of this report. Should you have any questions, please do not hesitate to contact me at (804) 625-3255, or michael.westfall@osig.virginia.gov.

Respectfully,

Michael C. Westfall, CPA
Acting State Inspector General

**From:**      Carneal, Sherri (OSIG)
**To:**        Westfall, Michael (OSIG)
**Cc:**        Sadler, Tim (OSIG)
**Subject:**   FW: Southwest Higher Ed Center
**Date:**      Monday, January 08, 2018 2:46:52 PM
**Attachments:** image001.png
               image002.png
               image003.jpg
               image004.png
               image005.png
               FWA Secretary of Education Dr Trent Southwest Virginia Higher Education 11 17 17.pdf

Please advise how you wish to respond to Dr. Trent.

**From:** Trent, Dietra (GOV)
**Sent:** Monday, January 08, 2018 2:44 PM
**To:** Carneal, Sherri (OSIG) <Sherri.A.Carneal@osig.virginia.gov>
**Cc:** Coy, Holly (GOV) <Holly.Coy@governor.virginia.gov>
**Subject:** Southwest Higher Ed Center

Hi Sherrie – I've received your report regarding the allegations raised against SWHEC.  As you know, the McAuliffe administration concludes this Thursday.  Therefore, I am handing your letter off to Holly Coy who will remain in her role as Deputy Secretary.

By copy of this email, I'm advising the incoming administration to pay close attention to the items that were substantiated by your investigation.

Let me know if you need further action from me.

Best regards,

Dietra Y. Trent, Ph.D.
Secretary of Education
Commonwealth of Virginia
(804) 786-1151



July 31, 2017

To:     Shaun Cowardin
        Office of State Inspector General
        101 N. 14th Street, Floor 4
        Richmond, VA  23219

From:   William D. Carmack, "Duffy"
        Southwest Virginia Higher Education Center.

Dear Shaun,

Enclosed is documentation of complaints outlined to you in my letter.  Please feel free to contact me by phone or I am happy to meet you in Richmond.  I am frequently there on Center business.

Respectfully,

William D. Carmack
550 Court Street
Abingdon, VA  24210
Cell: 276-356-9778

**Pre-Selection:**                    *Exhibit 1*

   a.   In August 2016 Joe Mitchell, then employed by Virginia Highlands Community College, met with Mr. Matlock and upon exiting this meeting announced to others in the building (Melissa Warden, receptionist) he would be coming to work as the Property Manager at the Higher Education Center. This announcement came before a position was created or posted.  Mr. Matlock announced his selection of Mr. Mitchell as Property Manager in the September 2016 manager's meeting.  HEC employee Josh Reynolds, working within the Maintenance Department, questioned the process of filling a position without it being posted.  Mr. Matlock stated that Mr. Reynolds did not have the necessary certifications or experience to do the job. An made was adjustment to Mr. Reynold's salary compensating him for serving as interim manager for the past 18 months in the absence of a "Property Manager".

On September 7, 2016, I met with Mr. Matlock to caution him about "pre-selecting" employees.

On September 26th, Mr. Mitchell was hired as a wage employee and became Property Manager.  Once Mr. Mitchell completed the 1500 hours defined as a "wage position", a job description for this position was created, matching Mr. Mitchell's credentials, and the full-time job was posted.  Interview Committee of Joyce Brooks, Jeff Webb (Director of Technology) and Adam Tolbert (Information Technology) were selected and candidates interviewed.   Mr. Mitchell was hired on July 9, 2017 **as indicated by the attached screen shot from the payroll system.  A background check on Mr. Mitchell was charged to the center budget on April 17, 2017, before the candidate was selected. EXHIBIT A.**  Mrs. Brooks (Director of Human Resources) reported on numerous occasions that many qualified applicants posted for this position. **EXHIBIT K job posting.**

*Exhibit 1*

   b.   Soon after arriving as Center Director, Mr. Matlock, who openly supports the Republican Party, aligned himself with Information Technology Employee, Adam Tolbert.  Adam is a prominent member of the Republican Party, and was elected Chairman of the 9th Congressional District Committee in 2014.  In September 2016 Mr. Matlock announced that he had selected Mr. Tolbert as a replacement for Joyce Brooks, Director of Operations and Human Resources and stated that he would be working alongside Mrs. Brooks to train for the position.  Mr. Tolbert has been actively involved in the management of Human Resources.  He has been assigned to update the Center By-laws and Policy Manual.  Following last year's audit, he became the contact person to communicate between Auditor of Public Accounts and the Higher Education Center. Aside from Mr. Tolbert's knowledge of state government and experience in Information Technology, he had no background or experience to justify these assignments.  The selection of Mr. Tolbert as succession to Mrs. Brooks bypassed a 59 year old female who

1

has served as backup in Mrs. Brooks absence for HR needs.  She had access to all HR and payroll systems.  She has over 20 years of experience in personnel and fiscal management. Her name is Deborah Hensley. **Attached you will find a report from the Integrated System confirming access to confidential Human Resource Information granted to Mr. Tolbert EXHIBIT B.** Employees have expressed concern that their "co-worker" has access to salary and confidential information pertaining to them.

Finance/Policy Violations *EXHIBIT 2*

a.   On numerous occasions Mr. Matlock has made presentations to the public stating that Non-General Funds at the Center have been at an all-time high under his direction and leadership.  He announced an increase of over $75,000 compared to a 5-year average for 2017.  **Attached you will find a report, prepared by Mr. Matlock that was distributed to the Board of Trustees at the June 2017 meeting.  These numbers do not match with budget reports.  I have attached a copy of the Non-General Fund Revenue report that balances our budget report.  As indicated, there is not a $75,000 increase during FY 17. EXHABIT C**

From his first day on the job Mr. Matlock has disregarded the CFO and other members of the Finance Department on matters related to the financial strength and integrity of the Center.  Due to the complexity of our state budget process I have encouraged Mr. Matlock to confer with me for clarification, but my offers have been declined to date.  He makes financial commitments within the community and does not inform the finance department so budget adjustments can be made. Members of the finance department approach me frequently with concerns of purchases and financial obligations he has committed the Center for.  He does not discuss these with finance and appears to disregard policies and regulations often required when dealing with state resources.  One example of being excluded in shown in **EXHABIT I** which is an email I sent to Mr. Matlock.  There are many examples of this type of behavior.

*Exhibit 3*

b.   Mr. Matlock fails to complete RECON reports in a timely manner.  He also ignores emails asking that he complete on-line training to approve financial transactions as Agency Director.  In December, P-Cards for all Center Managers were blocked because he had not completed his annual on-line training. A deadline to complete "Grant Funding Certification" and our ability to move grant funds was frozen.  Under duress from employees in the grant department he completed the training in late July 2017.  **Attached is an example of his not approving the RECON report within the required timeframe. EXHIBIT D and Exhbit J.** He must be reminded each month by employees in finance to complete the RECON report.  It appears he disregards the email notifications for approval.

*Exhibit #4*

2

Carmack 000013

*Exhibit #5*

c. Mr. Matlock has taken several business-related trips over the past 90 days. He has not submitted travel invoices for these trips. Accounts payable and travel invoices are frequently submitted late. He is prompted on a regular basis that these need to be completed within a 30-day time frame. On frequent occasions, Mr. Matlock pays business related expenses out of his pocket for assorted reasons. These are not always submitted for reimbursement. While this might be considered generous, it is an anomaly within a state agency.

*Exhibit #6*

d. On multiple occasions Mr. Matlock has submitted invoices to be paid as "Sponsorships". The Business Office continues to remind him that that sponsorships are disallowed by UVA. Invoices are changed to "Marketing" and resubmitted for payment. **Attached you will find 3 examples of invoices from "SVAM" dated 7-20-16 which was changed from Sponsorship to Marketing. These invoices, created in July, Aug, and Oct. were not submitted to Finance for payment until December 2016. EXHIBIT E**

*Exhibit #7*

e. Elizabeth Tate is a "regular part-time employee" in Information Technology. She works from home and is supervised by Jeff Webb, Director of Information Technology. For 3 years her work has centered around programing needs for the Tobacco Scholarship/Loan Program, which is administered by Southwest Virginia Higher Education Center. For the past two years we have experienced great frustration with the inability of Mrs. Tate to meet deadlines in a timely manner. The employees in the Tobacco Office express concern on a regular basis that she is unable to meet their work needs. By self-admission, Mrs. Tate requires the assistance of her husband to complete the work. (Mr. Tate is paid by the Center as a wage employee as needed.) We are constantly reminded that Mr. Tate is a full-time employee for Crutchfield Corporation and is not always available for our requested time frame. Between July 2016 and December 2016, Elizabeth Tate incurred 111 hours of overtime. **EXHIBIT K confirmation of O.T. hours from payroll.** I approached Mr. Matlock and Mr. Webb with my concerns of the overtime matter on November 9, 2016. At that time Mr. Matlock thought it best that Mrs. Tate report to Mr. Carmack since 100 percent of her work is for the Tobacco program, which falls under the prevue of the CFO. On December 7, 2016 Mr. Matlock came to me and stated "it will be too upsetting for the Tate's if they reported to you. They might leave and what would we do?" Mr. Matlock failed to remedy the abuse of time and the matter remains unresolved.

Bullying Retaliation:

a. Mr. Matlock and Mrs. Brooks engage in repeated bullying and retaliation against

3

employees.  On September 15th Mr. Matlock held an open forum with staff to address his lack of success in uniting employees to work together.  He asked employees in the meeting to speak openly with concerns about one another.  This was met in total silence.  Eventually one of the housekeeping employees voiced her concern with lack of access and support from her supervisor.  The following weekend, security cameras were placed in the housekeeping closet while no one was in the building.  This was perceived as a "threat" from housekeeping for the comments made in the open forum.   Silence permanented the remainder of the meeting.  In effort to stimulate conversation, Mr. Matlock told a story of how he liked to get pedicures. "I especially enjoy the part where the lady rubs lotion on my legs."  This was followed by his telling the staff that later that evening he was taking a group of "Redneck" boys to the County Faire.  The meeting ended in his frustration to stimulate talk.

b.  On various occasions Janet Williams and Debbie Heath,(employees in conference services, who report to Joyce Brooks, are told to have no conversation with the CFO.  If they are seen in my office discussing business or exchanging pleasantries she demands to know what they were discussing and chastises them for speaking with me.

c.  January 27, 2017 Mr. Matlock publicly singled me out during a manager's meeting and chastised me for assisting a vendor who came to the building to bring samples of ceramic tile to replace broken tiles in the main entrance.  Mr. Matlock asked that I assume this responsibility.  The day the vendor arrived with samples, I paged Properties and Maintenance to meet in the lobby and participate in the discussion.  The only person from this department that was on site that day was Josh Reynolds.  While Mr. Reynolds and I were in the hallway discussing options with the vendor, Joyce Brooks walked back and forth in front of the group not participating in the discussion. (Mr. Matlock was not in the building during this event.) Later that afternoon, during managers meeting, chastised and humiliated me for being involved in this event.  Following the meeting I asked him how he received the information on the vendor being in the building?   He stated that Mrs. Brooks told Mrs. Hietala (Administrative Assistant to Mr. Matlock) who texted him to say that I was overstepping my bounds.  I discussed the inappropriate treatment he exhibited toward me and his lack of professionalism.  He simply turned and walked away stating "he hoped we were friends".

d.  All employee evaluations were due to UVA no later than April 15, 2017.  My review was not completed until June 28, 2017.  On two occasions Mr. Matlock stated to me that he had not forgotten my review but became too exhausted signing reviews and did not complete mine.  He was continually reminded for 8 weeks, by Joyce Brooks, that my review was past due.  On June 30th Mr. Matlock met with me briefly to cover my review.  I was very direct with my comments and concerns in my self-evaluation.  These were not addressed during the review.  He simply stated that he was aware that we had problems but had never worked in a "place like this".

4

Long Term Employees Resigning:

a. The most troubling outcome of inadequate management is the recent announcement of resignation from two women working in our conference service department. (Debbie Heath and Janet Williams). Both individuals are at least 62 years of age and are to be commended for years of dedicated work to ensure that thousands of events hosted in our Center were perfect! Both are primary income providers for their families. They are often at work from 5 A.M until mid-night if necessary to complete the job. Poor treatment and retaliation from Mrs. Brooks and Mr. Matlock have pushed these women to submit their resignations which go into effect later in the fall. Both will need to seek employment elsewhere to pay their monthly bills.

Mr. Matlock is seldom at the Higher Education Center. When here, he locks himself in his Office. He had the door to his office replaced with a solid wood door with no window installed. He changed to locks so no one has access to the room when he is not present. This has created an extreme distrust among employees.

*Exhibit #9*

Concern with Management:

a. Upon the retirement of former Agency Director, Rachel Fowlkes, the Higher Education Foundation commissioned a local artist create a mobile that hung in our main entrance along with a plaque recognizing Dr. Fowlkes for her vision and work in Higher Education throughout the Commonwealth. In December of 2016 this mobile was removed during Christmas Break by Joe Mitchell, Manager of Properties and Maintenance, and never reinstalled. The cost to the Foundation for this custom piece was $9,900. Requests have been made by members of the Foundation Board along with employees of the HEC to have the mobile returned to its place. This request has been met with many excuses and the mobile continues to be "missing".

b. Morale is extremely poor and Mr. Matlock has created factions within the staff. The Center is split into small groups of angry employees. The quality of work and concern for the Center declines daily. There is little trust for Mr. Matlock's credibility.

c. In September 2016, Mr. Matlock announced to the staff that he was having Information Technology create an anonymous evaluation for staff to complete on his effectiveness as a leader. He stated there would be 8 questions and all employees were to have this completed and returned prior to Thanksgiving Break. This review never materialized.

5

Carmack 000016

d. **Attached is a letter, <u>EXHIBIT F,</u> that was composed and signed by the 6 full-time college partners located at the Higher Education.** This letter was presented to Mr. Matlock by the partners due to frustration and the inability to obtain fair and consistent leadership from him.

*Exhibit #10*

e. On February 13th, I received a call from employee Janet Williams. Mrs. Williams was crying and ask why I hated her? Totally shocked by this call I went to Mrs. Williams home to discuss the issue in person. With her husband present, she said the Mr. Matlock came to her that day and told her that I was not to be trusted and that I was out to have her fired. This is NOT TRUE. After discussion, Mrs. Williams realized that Mr. Matlock was working to create division among staff.

*Exhibit #11*

f. On February 15, 2017, the Higher Education Center purchased a "Table" in support of the Washington County Chamber of Commerce annual awards banquet. Mr. Matlock did not inform the Finance Department of this. The Chamber continued to send invoices to him for several months with no response. On May 24, 2017, I received a call from Nita Farmer, Associate Chamber Director who told me when she approached my Matlock in person about the Center's past due bill that he told her that I could not be trusted. Ms. Farmer may be contacted during normal work hours at 276-628-8141. **<u>Attached Invoice Exhibit H.</u>**

*Exhibit #12*

g. The most recent event involves a grant that was obtained by Mr. Matlock from the Tobacco Commission for supporting ODU in providing both degree and non-degree programs at the HEC in the field of Cyber Security. Dr. Darryl (Deri) C. Draper, Director of Integrated Learning at ODU **EXHIBIT G** approached Mr. Matlock to determine his interest in hosting the program. Quickly Mr. Matlock began work on this project stating that it was "his program". While applying for the grant he learned that Wytheville Community College was also applying for a grant through the Tobacco Commission for a Cyber Security Program. He contacted the Presidents of Wytheville and Virginia Highlands Community College and ask that in exchange for not competing for the grant funds, he would include them in his grant. The grant was awarded and Dr. Draper met with David Matlock and myself in June 2017. In her presence, he was very excited about the program and insisting that Dr. Draper and I order the equipment needed for the Cyber Lab immediately! I reminded him that a grant agreement with the Tobacco Commission and MOU with Old Dominion had to be created and signed first. As soon as Dr. Draper left the office he turned to me and stated "Gosh they are going to be mad at me. This program belongs to S.W. VA Higher Education Center and Anyone, including the community colleges, can use the lab. " ODU learned of this "switch" on the morning of June 8th. I received a call from Dr. Draper who was very upset by the information she had received from the ODU site director at the Higher Education Center. Dr. Draper noted that ODU was not willing to invest over $300,000 in matching funds for a program and lab in Abingdon to be used by other colleges. She also noted that ODU has an exclusive contract with CISCO to provide cyber security training with their equipment within the Commonwealth of Va. The Cyber Security program does not appear to be

6

*to Next page*

*EXHIBIT #12*

moving forward.  I assume there is warranted distrust on the part of ODU toward the project.  You may contact Dr. Deri Draper at 757-683-6388.

Mr. Matlock demonstrates strength in K-12 education and programs that feed the Community College System.  These areas do not align with our mission of providing Bachelor, Master and Doctoral degrees.  While Mr. Matlock is recognized by select members of the General Assembly as an educational leader these traits have not been observed during his 20 months tenure at the Higher Education Center.

My request is to bring the issue of poor leadership and lack of integrity demonstrated from Mr. Matlock to the attention of the Commonwealth of Virginia and the Board of Trustees of the Southwest Virginia Higher Education Center.  The employees of the Center feel powerless, frustrated and fear of retaliation if they speak out.  Without intervention, the integrity and success of the Higher Education Center will continue to lurch even further out of control. Several members of the Board of Trustees are aware there are management problems at the Center.  I hope that my formal complaint will give the Commonwealth reason to inform the Board in a "Collective" and "Formal" manner of their need to be vigilant in addressing management issues at SWVA Higher Education Center.

**NOTE:**

Over the past 7 months, in an attempt to resolve these issues in a constructive manner, I have met with: Brad Holland, Ombudsman at the University of Virginia.
Mr. Holland referred me to DHRM where I have and conversations with:

Kristy Hall, phone
Gretchen White, in person
Amanda Monico, phone
Alex Morgan, phone

All advised that I forward this complaint on to the Office of Inspector General.  Each have assured me of job protection under the "Whistle Blower Act".

Respectfully,

William D. Carmack, CFO
Southwest Virginia Higher Education Center
One Partnership Circle
Abingdon, Virginia  24211
Cell - 276-356-9778

7

Carmack 000018



Exhibit 1

Joe Mitchell —
Hire date ? Jul 09-17
No notification finance

Appeared on UVA Payroll Rept as
full time July 2017

Appeared on UVA payroll Dept as
Wage Aug 2017

Did not work Months of Oct - Dec 17

Carmack 000019

*Exhibit J*

# HUMAN RESOURCES
## UNIVERSITY *of* VIRGINIA
### JOBS @

**HOME**
**SEARCH POSTINGS**
**CREATE JOB INTEREST INVENTORY**
**CREATE APPLICATION**
**LOGIN**

## Job Details

Return to Search Results

Print

**Affiliated Job Search Engines:**

**UVA HEALTH SYSTEM (MEDICAL CENTER)**

**UVA PHYSICIANS GROUP**

**EXECUTIVE SEARCH GROUP & STRATEGIC RESOURCING**

**ALL UNIVERSITY-RELATED FOUNDATIONS**

**UVA STUDENT EMPLOYMENT**

**DEVELOPMENT CAREERS AT UVA**

**Useful Links:**

**BECOME A TEMP**

**DIVERSITY AND EQUITY**

**MILITARY TALENT PARTNERSHIP**

**HUMAN RESOURCES HOME**

**U.VA. HOME**

**MY UVA CAREER**

**Legal Notices to Prospective Employees:**

**EEO IS THE LAW**

**EO/AA STATEMENT**

**ADA STATEMENT**

**CLERY ACT**

**E-VERIFY**

**NOTICE OF NON-DISCRIMINATION**

Important: If you need to edit your application information or candidate profile, click on **V Application** from menu on left before applying to a posting. You will NOT be allowed to u application or candidate profile after you have applied to a posting. Contact University Hur at UVaJobs@virginia.edu or call 434-924-4598, to update contact information ONLY, for appl candidate profiles that have already been attached to a posting.

**APPLY FOR THIS POSTING**

**Posting Information**

**GENERAL INFORMATION FOR ALL POSTINGS**

| | |
|---|---|
| **Posting Number:** | 0620708 |
| **Position Type:** | University Operational and Administrative Staf |
| **Employment Posting Category:** | University Staff |
| **Type of Application: (required to apply for this posting)** | Staff Application |
| **Organization (Position Organization):** | 20370 SW-SW VA H Ed Ctr |
| **Department:** | Southwest Virginia Higher Education Center |
| **Location:** | Abingdon |
| **Working Title:** | Building and Grounds Manager |
| **Anticipated Hiring Range:** | $50,420 - $70,000 |
| **Is this position funded in whole or in part by the American Recovery & Reinvestment Act (Stimulus Package)?** | No |
| **End Date of Position:** | |
| **Posting Date:** | 04-06-2017 |

*Had been working since 7-9-17*

*Job posted*

*Joe started work as wage employee Oct - 16*

The Southwest Virginia Higher Education Cent candidates to fill the vacant position of Buildin Manager.

*Brooks, Tolbert, Uners were interview committee*

Carmack 000020

Posting Information

Close Window

**GENERAL INFORMATION FOR ALL POSTINGS**

**Posting Number:** 0620708

**Position Type:** University Staff

**Employment Posting Category:** Staff Application

**Type of Application:** Staff Application
**(required to apply for this posting)**

**Organization (Position Organization):** 20370 SW-SW VA H Ed Ctr

**Department:** Southwest Virginia Higher Education Center

**Location:** Abingdon

**Working Title:** Building and Grounds Manager

**Anticipated Hiring Range:** $50,420 - $70,000

**Is this position funded in whole or in** No
**part by the American Recovery &**
**Reinvestment Act (Stimulus**
**Package)?**

**End Date of Position:**

**Posting Date:** 04-06-2017

The Southwest Virginia Higher Education Center is seeking
candidates to fill the vacant position of Building & Grounds
Manager.

This position is responsible for efficient and effective daily
operations of the physical plant and grounds at the SWVHEC,
including renovation and new construction. Position provides
leadership for maintenance team as well as performing
maintenance and repair. Ensures quality services are provided at
reasonable costs. Manages day-to-day maintenance activities for
the Division.

The ideal candidate will have a minimum of seven years of
experience in a licensed trade discipline with knowledge of other
trades and five years supervisory and leadership experience. A
master level license in a trade is required.

*written to Joe Mitchell's Credentials*
*Specially*

The selected candidate will be required to complete an annual
Statement of Economic Interests required by the Commonwealth.

Please click **here** for additional information about the Southwest
Virginia Higher Education Center.

**Posting Summary:**
Click here for an example.

**University Leadership**
**Characteristics:**

*For Thomas Jefferson, learning was an integral part of life. The
"academical village" was created around the assumption that
learning is a lifelong and shared process, and that interaction
between scholars and students enlivens the pursuit of knowledge.*

Carmack 000021

**Closing Date:** 04-17-2017

**Required Applicant Documents:** CV / Resume
Cover Letter
Contact Information for 3 References - name, email, phone

**E-mail a Friend:** jobs.virginia.edu/applicants/Central?quickFind=81570

**Faculty, Professional Research Staff and University Staff - Executive**

**Tenure Status:**

**Rank:**

**Appointment Type:**

**Academic Year for Position? (e.g. 2015)**

**Employment Conditions for Faculty**

**Univ.Staff - Operational & Administrative (O&A), Managerial & Professional (M&P)**
U.Va. will perform background checks including receipt of official transcripts from the institution granting the highest degree for all new faculty hires prior to making a final offer of employment.

**Area of Interest:** Building Trades

**FLSA Exemption Status:**
Click here for a definition. Non Exempt

**Posting for UVA Employees Only:** No

**Shift:** Day
Evening
Night
Weekend

**Number of Work Hours Per Week: (format: xx.xxxx)** 40

**Number of Months/Year:** 12

**EO/AA Statement:** The University of Virginia is an equal opportunity and affirmative action employer. Women, minorities, veterans and persons with disabilities are encouraged to apply.

University Human Resources strives to identify applicants who will contribute as high potential employees, leaders and managers. We employ individuals who foster and promote the University mission and purpose. Successful candidates exemplify uncommon integrity; they are honest, trusted, team-oriented and live the core values of the University. These candidates display great judgment, by practicing evidence-based decision-making. They are strategically focused by contributing to and achieving department goals and vision. They set high performance standards and hold themselves accountable by aggressively executing these standards. These employees also develop a deep passion for the University and the impact it has on students, faculty, alumni and community. Successful candidates identify their personal career goals and development opportunities, and as supervisors, help their staff do the same. They contribute to team success by leading talent, through their individual efforts and by leading and developing their teams.

Carmack 000022

**Optional Applicant Documents:**

**Univ. Staff - O&A or M&P - QUALIFICATIONS**

**EDUCATION**

**Required Education**

**What is the minimum level of formal education required to successfully perform the duties and responsibilities of the position? Choose one.**
Degree Requirements Analysis

High School Diploma or Equivalent Required

**If degree or equivalent experience required, please specify: (Entries to the right will appear in the posting for this position.)**
Degree Requirements Analysis

High School Diploma or Equivalent Required

**Preferred Education**

**What level of education is preferred to successfully perform the duties and responsibilities of the position? Choose one.**

No Response

**If degree or equivalent experience preferred, please specify: (Entries to the right will appear in the posting for this position.)**

**EXPERIENCE**

**Required Experience**

**What is the minimum level of relevant experience required to successfully perform the duties and responsibilities of the position? Choose one.**

Extensive - 7 years plus

**If any experience is required, please specify kind of experience:**

Seven years of experience in a licensed trade discipline with knowledge of other trades and five years supervisory and leadership experience.

**Preferred Experience**

**What is the minimum level of relevant experience preferred to successfully perform the duties and responsibilities of the position? Choose one.**

Extensive - 7 years plus

**If any experience is preferred, please specify kind of experience:**

Experience in multiple trades

**LICENSE or CERTIFICATION**

**If yes, what is the required License or Certification.**

A master level license in any building trade.

**If yes, what is the preferred License or Certification.**

Valid Driver's License with the ability to obtain a Virginia Driver's License within 90 days of hire. Must have a positive point balance.

Carmack 000023

**KNOWLEDGE, SKILLS and ABILITIES**

| | |
|---|---|
| **Required Knowledge, Skills and Abilities:** | 1. Extensive knowledge, skills and abilities in at least one of the following trades. (Electrical or HVAC)<br>2. Proven leadership experience and dependability.<br>3. Ability to communicate effectively.<br>4. Ability to read, write and perform basic math. |
| **Preferred Knowledge, Skills and Abilities:** | |

**COMPUTER APPLICATIONS**

| | |
|---|---|
| **Required Computer Applications:** | Microsoft Office and Outlook |
| **Preferred Computer Applications:** | |

**Univ.Staff - O&A or M&P - EMPLOYMENT CONDITIONS**

| | |
|---|---|
| **Employment Conditions:** | Criminal History<br>Sexual Offender Registry<br>International Search<br>Professional Licensure<br>DMV Licensure |
| **Drug Testing Required?** | No |
| **(Typically positions involved in patient contact, mass transportation or law enforcement are included)** | |
| **Is this position eligible for Telecommuting?** | No |
| **Is this position eligible for an Alternate Work Schedule?** | No |

Close Window

For additional support, please visit <u>http://peopleadminsupport.com/5-8/</u>

Carmack 000024

GA_Project Reconciliation Reports

**Integrated System**   Exhibit A

01-M^^'17  09.28.40 AM

**Detail Transactions by Project and Organization**
&Period

Show Labor Encumbrances : 'N'          Show Oracle Manual Encumbrances : 'N'
Show Purchasing Line Item Detail : 'Y'   Default to prior period : 'N'

Expenditure Detail By Project

| Project Number | Project Name | Expenditure Type | Task | SW-Facilities | Incurred By Org | Expenditure Item Date | Transferred Date | Employee - Vendor / Comment | MBU | Cur Month Actual | Commitments | Dept | Transaction No | Award Number | PO Number |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 102203 | | | | Carrying Out Org | 20370 SW-SW VA H Ed Ctr | | | BERRY HOME CENTERS INC / MAINTENANCE SUPPLIES | SW-SW VA H Ed Ctr | | | 1843087 | | SR00096 | |
| Apr-17 | Supplies, Building R&M | Supplies, Building R&M | 101 | 20370 SW-SI 06-APR-2017 | | | | | | 0.22 | | | | | |
| Apr-17 | Supplies, Building R&M | | 101 | 20370 SW-SI 03-APR-2017 05-APR-201: REPUBLIC SERVICES / 2 WASTE CONTAINERS 8 CU YD, 4 LIFTS PER WEEK, PARTNERSHIP CIRCLE | | | | | | 269.65 | 3,510.41 | | Vchr:3475905 Inv:0825000771436 | 1841667 | |
| Apr-17 | Svc Charge, Refuse Removal | | 101 | 20370 SW-SI 03-APR-2017 05-APR-201: REPUBLIC SERVICES / 1 WASTE CONTAINER 8 CU YD, 1 LIFT PER WEEK, 04/01-04/30 - 21371 FORSYTHE RD | | | | | | 606.97 | | | Vchr:3475905 Inv:0825000771436 | 1841667 | |
| Apr-17 | | | 500 | 20370 SW-SI 03-APR-2017 05-APR-201: REPUBLIC SERVICES / 04/01-04/30 - 21371 FORSYTHE RD | | | | | | 142.09 | | | Vchr:3475905 Inv:0825000771436 | 1841667 | |
| Apr-17 | | | 500 | 20370 SW-SI 02-FEB-2017 24-APR-201: REPUBLIC SERVICES / FRONT LOAD (8YD) SCHEDULED SERVICE - 21371 FORSYTHE RD | | | | | | 142.09 | | | Vchr:3483163 Inv:0825000763259A | 1819301 | |
| Apr-17 | | | 101 | 20370 SW-SI 08-NOV-2016 | | | REPUBLIC SERVICES / 30 YD TEMPORARY DUMPSTER - MISTLETOE MARKET | | | 674.00 | | | 1792314 | | |
| Apr-17 | Svc Charge, Refuse Removal | Svc Charge, Refuse Removal | 500 | 20370 SW-SI 22-FEB-2017 13-APR-201: BANK OF AMERICA / , DEBORAH JANE HENSLEY, 22-FEB-17, BVU-UTIL-BILL-PMNT | | | | | | 891.15 | 674.00 | | Vchr:3478147 Inv:BOA Visa 10APR17 | | |
| Apr-17 | | | 500 | 20370 SW-SI 14-MAR-2017 13-APR-201: BANK OF AMERICA / , DEBORAH JANE HENSLEY, 14-MAR-17, BVU-UTIL-BILL-PMNT | | | | | | 2,228.78 | | | Vchr:3478147 Inv:BOA Visa 10APR17 | | |
| Apr-17 | | | 500 | 20370 SW-SI 14-MAR-2017 13-APR-201: BANK OF AMERICA / , DEBORAH JANE HENSLEY, 14-MAR-17, BVU-UTIL-BILL-PMNT | | | | | | 1,723.18 | | | Vchr:3478147 Inv:BOA Visa 10APR17 | | |
| Apr-17 | Svc Charge, Electricity | Svc Charge, Electricity | 101 | 20370 SW-SI 03-OCT-2016 10-APR-201: GMSA-HRBC / S. Mitchell-criminal history charge | | | | | | 3,951.96 | | | | | |
| Apr-17 | Svcs, Background Check | | 101 | 20370 SW-SI 03-OCT-2016 10-APR-201: GMSA-HRBC / S. Mitchell-criminal history charge | | | | | | 52.00 | | | HRBD100316USG132400 | | |

*(handwritten notes)* Criminal History Run April 2017 - Went to court... Svc charge electricity for April 2017...

Carmack 000025

Exhibit

olbert, Adam Luke

| | | | | | | |
|---|---|---|---|---|---|---|
| 159446 | 20370 SW-SW VA H Ed Ctr | Employee Ex-applic Oracle Procurement | UVA Employee Self Service | 23-DEC-2004 | 23-DEC-2004 | 30-JUL-2008 |
| 159446 | 20370 SW-SW VA H Ed Ctr | Employee Ex-applic Human Resources | UVA Employee Self Service | 23-DEC-2004 | 05-JUN-2013 | 05-JUN-2013 |
| 159446 | 20370 SW-SW VA H Ed Ctr | Employee Ex-applic Human Resources | UVA Ex-Employee Self Service | 23-DEC-2004 | 03-JUN-2013 | |
| 159446 | 20370 SW-SW VA H Ed Ctr | Employee Ex-applic Human Resources | UVA HRMS I9 Specialist | 23-DEC-2004 | 05-OCT-2016 | 05-OCT-2016 |
| 159446 | 20370 SW-SW VA H Ed Ctr | Employee Ex-applic Human Resources | UVA HRMS Specialist | 23-DEC-2004 | 09-SEP-2016 | 22-JUL-2017 |
| 159446 | 20370 SW-SW VA H Ed Ctr | Employee Ex-applic Human Resources | UVA HRMS Timekeeper | 23-DEC-2004 | 23-SEP-2016 | |
| 159446 | 20370 SW-SW VA H Ed Ctr | Employee Ex-applic Human Resources | UVA HRMS Viewer | 23-DEC-2004 | 09-SEP-2016 | |
| 159446 | 20370 SW-SW VA H Ed Ctr | Employee Ex-applic Human Resources | UVA Manager Self-Service | 23-DEC-2004 | 01-APR-2009 | 03-JUN-2013 |
| 159446 | 20370 SW-SW VA H Ed Ctr | Employee Ex-applic Human Resources | UVA OOB Specialist-Limited | 23-DEC-2004 | 09-SEP-2016 | |

Proof from Wbas System Tolbert
has access to All the info as of 2016

Exhibit 1 - Tolbert

Carmack 000026

## SOUTHWEST VA HIGHER EDUCATION CENTER
## NON-GENERAL FUND REVENUE

| | **FY17 | FY16 | FY15 | FY14 | FY13 |
|---|---|---|---|---|---|
| RESIDENT FEES | $224,013.52 | $349,918.36 | $291,355.00 | $287,050.00 | $287,050.00 |
| LEASED SPACE | $155,038.31 | $120,006.88 | $100,099.88 | $66,576.12 | $54,813.64 |
| ROOM RENTALS AND FOOD & BEVERAGE SERVICE | $210,721.69 | $222,455.03 | $237,093.97 | $194,845.43 | $211,158.07 |
| HEC SPECIAL EVENTS | $22,843.66 | $14,329.01 | $22,546.75 | $10,944.86 | $14,678.90 |
| COOKING ALONG THE CROOKED ROAD | $16,952.43 | $18,301.50 | $13,806.50 | $12,236.00 | $20,886.50 |
| COLLEGE FOR OLDER ADULTS | $37,344.02 | $41,925.00 | $41,400.00 | $46,234.00 | $48,827.50 |
| TESTING | $25,220.61 | $33,635.85 | $21,173.26 | $10,681.64 | $- |
| MISCELLANEOUS REVENUES | $25,652.26 | $37,099.05 | $19,914.65 | $29,651.64 | $9,047.60 |
| | $717,786.50 | $837,670.68 | $747,390.01 | $658,219.69 | $646,462.21 |

**Thru April 2017

*[Handwritten notes:]*

FY17 year this totals for A's

Spread # Average's Service

He used this report to the Board to say that FY17 was 75,000 higher on average than any other year over the past five yrs

Report from budget in contributing –

Exhibit 8

Carmack 000027

**Southwest Virginia Higher Education Center**
**Board of Trustees**

FY'17

*Exhibit #2*

*Duffy*

| | | Approved FY2017 | Projected FY17 Year End | Proposed FY2018 |
|---|---|---|---|---|
| **STATE REVENUES:** | | | | |
| General Fund Appropriation | $ | 2,161,055.00 | $2,161,055.00 | $ 2,053,109.00 |
| Mandated Reduction | $ | - | $ (108,486.00) | $ - |
| Employee Benefit Appropriation | $ | - | $ 2,981.00 | $ - |
| **TOTAL GENERAL FUND REVENUE** | $ | 2,161,055.00 | $2,055,550.00 | $ 2,053,109.00 |
| | | | | |
| Non-General Fund Revenue | $ | 808,906.80 | $ 790,444.35 | $ 882,072.80 |
| Non-General Fund Carryforward Revenue | $ | 779,568.36 | $ 779,568.36 | $ 1,159,849.95 |
| **TOTAL NON GENERAL FUND REVENUE** | $ | 1,588,475.16 | $1,570,012.71 | $ 2,041,922.75 |
| | | | | |
| **TOTAL STATE REVENUE** | $ | 3,749,530.16 | $3,625,562.71 | $ 4,095,031.75 |
| | | | | |
| **RESTRICTED STATE REVENUE:** | | | | |
| Higher Education Equipment Trust Fund | $ | 80,111.00 | $ 80,111.00 | $ 80,111.00 |
| Maintenance Reserve | $ | 278,202.00 | $ 116,254.28 | $ 563,125.72 |
| **TOTAL RESTRICTED REVENUE** | $ | 358,313.00 | $ 196,365.28 | $ 643,236.72 |
| | | | | |
| **TOTAL REVENUES** | $ | 4,107,843.16 | $3,821,927.99 | $ 4,738,268.47 |

**BREAKDOWN OF NON-GENERAL FUND REVENUE PROJECTION**   *Terry*

| | | Approved FY2017 | Projected FY17 Year End | Proposed FY2018 |
|---|---|---|---|---|
| Resident Fees (ODU, RU, UVA-W, UVA, VT) | $ | 292,816.80 | $ 224,013.52 | $ 292,816.80 |
| Non-resident Fee | $ | - | $ - | $ - |
| Leased Space | $ | 135,240.00 | $ 170,674.43 | $ 172,256.00 |
| Room Rentals and Food & Beverage Services | $ | 225,000.00 | $ 252,866.04 | $ 275,000.00 |
| HEC Special Events | $ | 25,000.00 | $ 23,500.00 | $ 25,000.00 |
| Cooking Along the Crooked Road | $ | 18,000.00 | $ 20,342.88 | $ 18,000.00 |
| College for Older Adults  (Fees) | $ | 47,850.00 | $ 38,000.00 | $ 42,000.00 |
| Testing | $ | 40,000.00 | $ 30,264.72 | $ 32,000.00 |
| Miscellaneous Revenues (Commissions & Reimbursements) | $ | 25,000.00 | $ 30,782.76 | $ 25,000.00 |
| **TOTAL NGF REVENUE** | $ | 808,906.80 | $ 790,444.35 | $ 882,072.80 |

*Non-general Revenue was Under budget 18,462
Not 75,000 over previous year are expense*

Carmack 000028

*Exhibit #2* (handwritten)

## Conference Service/Information Desk Operating Budget
### Fiscal Year 2018 Budget 0.2

*Handwritten annotations: "Non General fund Revenue Fiscal" … "Budget for FY17" … "Actuals collected 28,000 more, not $75,000 as stated by McDaniel"*

| | FY2017 | Projected FY17 Year End | Proposed FY2018 |
|---|---|---|---|
| **REVENUES** | | | |
| Room Rentals | $225,000.00 | 252,866.04 | $275,000.00 |
| SWVHEC Sponsored Events | $25,000.00 | 23,500.00 | 25,000.00 |
| Cooking School | $18,000.00 | 20,342.88 | 18,000.00 |
| **TOTAL NGF REVENUE** | $268,000.00 | 296,708.92 | $318,000.00 |
| **EXPENSES** | | | |
| **Administrative Personnel** | | | |
| Director of Operations (J Brooks) | $69,940.09 | 67,902.90 | $69,940.09 |
| Benefits | 26,926.93 | 26,142.62 | 27,346.58 |
| Administrative Assistant | $ - | | |
| Benefits | $ - | | |
| I.T. Specialist II (D Viers) | 52,910.07 | 51,368.98 | 52,910.07 |
| Benefits | 20,370.38 | 19,777.06 | 20,687.84 |
| Trades/Utility (J Williams) | 36,643.28 | 35,577.64 | 36,843.28 |
| Benefits | 14,107.66 | 13,697.39 | 14,327.52 |
| Comp Leave Payments | | | |
| Trades/Utility (D Heath) | 27,584.43 | 27,709.38 | 30,342.77 |
| Benefits | 10,620.01 | 10,668.11 | 11,864.02 |
| Trades/Utility | $ - | | |
| Benefits | $ - | | 9,775.00 |
| Wage Positions (Conference Svcs) 5 positions | 51,000.00 | 62,244.96 | 62,000.00 |
| Benefits | 2,703.00 | 3,298.98 | 3,534.00 |
| Wage Positions (Front Desk) 5 positions | 45,000.00 | 42,511.32 | 50,904.00 |
| Benefits | 2,835.00 | 2,253.42 | 2,895.83 |
| Wage - Cooking School (Jferreria) | 6,000.00 | 6,891.36 | 6,000.00 |
| Benefits | 318.00 | 365.24 | 342.00 |
| Overtime | | | |
| Bonus | 20,000.00 | 18,340.00 | 28,000.00 |
| Overtime | | 972.02 | 1,596.00 |
| Benefits | | | 5,285.00 |
| Overtime & Benefits | | | |
| **Total Conference Services Personnel** | $386,508.85 | 388,755.36 | $459,294.00 |
| **OTPS** | | | |
| Travel, Meals, Lodging | $2,000.00 | 363.84 | $2,000.00 |
| Prof. Mbrshps/Prof. Devl | 500.00 | 565.00 | 800.00 |
| | $ - | | |
| Recoveries | (10,000.00) | (9,729.48) | (10,000.00) |
| Misc. Charges | 2,000.00 | 698.28 | 2,000.00 |
| SWVHEC Sponsored Events | 25,000.00 | 20,126.04 | 25,000.00 |
| **Total OTPS** | $19,500.00 | 12,043.68 | 19,800.00 |
| **Conference Service Supplies & Equipment** | | | |
| Food Service & Conference Supplies | 43,700.00 | 34,022.16 | 43,700.00 |
| Rental Equipment | 3,000.00 | 2,115.60 | 3,000.00 |
| Furnishings/Equipment | 25,000.00 | 15,760.80 | 25,000.00 |
| eVA Compliant Fee | 250.00 | 85.80 | 250.00 |
| **Total Conference Svc Supplies & Equip** | $71,950.00 | 51,984.36 | 71,950.00 |
| **Total Marketing & Conferences Services** | $477,958.85 | 452,783.40 | $551,044.00 |

Carmack 000029

Exhibit I

## Duffy Carmack

**m:**         Duffy Carmack
**Sent:**     Tuesday, June 13, 2017 10:44 AM
**To:**        David Matlock
**Subject:**   Duffy Cisco Meeting

David,

A few weeks ago, when you and I met with ODU representatives in your office you stated that you, Jeff and I needed to travel to a Community College in North Carolina to look at their Cisco Lab as a model for the one here. At our managers meeting last Monday, June 12th, you asked Kathy to schedule a time that Joe, Jeff, you and I could travel to N.C. to look at the lab. I understand that you are touring the Cisco facility today. Why was I not included in this trip? The Foundation is the recipient and administrator of the Tobacco Commission Grant that will support this Cisco Training Program at the Higher Education Center. As Director of the HEC Foundation and CFO of the Higher Education Center it would have been appropriate for me to have been a part of this trip. This is another example of the exclusion of the CFO from business that is important to the financial success of the Center. Please respond.

Thanks
Duffy

William D. Carmack, CFO
Southwest Virginia Higher Education Center
PO Box 1987
Abingdon, VA 24212
276-619-4302

Exhibit 3

Carmack 000030

COMMONWEALTH OF VIRGINIA

*Exhibit #3*

# EMPLOYEE GRIEVANCE PROCEDURE

## GRIEVANCE FORM A

### I.  Grievance

| Employee's Full Name: Paula June Moad | Job Title: Supervisor of Testing Center |
|---|---|
| Agency Name: Southwest Virginia Higher Education Center | Facility Name: Southwest Virginia Higher Education Center |

| Home Address: 10702 Tree Top Drive Meadowview VA  24361 | Work Telephone No. ( 276 ) 619 - 4359  ext. Work E-mail Address: | |
|---|---|---|

| Date Grievance Occurred: November 14, 2017 | Role Title: Testing Center Administrator |
|---|---|

**The issues are** (use attachments if necessary):
As Testing Center Administrator I was seeking status on two applicants that we had interviewed and offered job too 10 days prior.  Due to the Bulling nature of our internal HR director, she did not communicate anything about the status if theses applicants.  I spoke with my supervisor, William D. Carmack and he advised me to follow-up with UVA HR on the job offer status.  I made a call to UVA HR and the gave me the status update on each applicant.  They also noted that they had only received the applications a couple of days prior.  There was a background issue with one applicant which was disclosed to me by UVA.  I took this to my supervisor by phone, who was out of town.  Later that day, Joyce Brooks accompanied by Adam Tolbert from Information Technology came into my office and attacked me for calling UVA.  They told me it was none of my business and that I was out of line.  I was spoken down too and belittled in front of a person from I.T. who has no involvement in this situation.  Mrs. Brooks then turned to Adam and asked if there was anything he would like to add??  Alter that afternoon I was called to the Directors Office, David Matlock where he and Mrs. Brooks again attacked me for following up with UVA on the applicants. They ordered me not to talk to William D. Carmack, my immediate supervisor.  Mr. Carmack was never included in any conversation with me.

**The facts supporting this are** (use attachments if necessary):

See Attached emails to Mr. Carmack from Me.  Also is correspondence from UVA HR to me concerning the hiring candidate

**The relief I want is** (use attachments if necessary):I would like to speak to someone from DHRM about the unprofessional behavior exhibited by management toward the employees and the obvious disregard for William D. Carmack, CFO and supervisor of various departments. I discussed this incident with my supervisor. The details of the event were never discussed with Mr. Carmack.

| Date: 12-13-17 | Employee's Signature: *Paula J. Moad* |
|---|---|

Grievances must be submitted within 30 calendar days of the date the employee knew or should have known of the issue being grieved. The *Grievance Procedure Manual*, available on EEDR's website, contains complete instructions for initiating, processing, and pursuing grievances.  Contact the Office of Equal Employment and Dispute Resolution (EEDR) if you have any questions.

Check if you decided not to present this grievance to your immediate supervisor because  (check one):

Discrimination or Retaliation by Immediate Supervisor
Grieving disciplinary action issued by someone other than Immediate Supervisor

### II.  First Resolution Step

| Date Received: | | |
|---|---|---|
| Response (use attachments if necessary): | | |
| Date: | First Step Respondent's Signature: | Telephone No.: ( )  -  ext. |

Date Received: _____

Employee's response (check one):

I conclude my grievance and am returning it to the Human Resources Office.       I advance my grievance to the second step.

Employee's comments (optional - [use attachments if necessary]):

Carmack 000031

- Copy of version control repository (git, mercurial, Subversion, etc)
- Any documentation
- Unit tests and/or integration tests if they exist
- Database schema, stored procedures, and user-defined functions
- Test data if that exists
- A detailed document that explains how the new Tobacco Council rules affect how the current system functions and what parts, from a user's perspective, need to be changed to implement them
- Access to look at the production database as necessary

If there is documentation for the codebase and tests and the developers are willing to answer questions to clarify things, I estimate discovery at 25 hours. But if there are not tests and no documentation and the developers are not going to answer inquiries -- so all I have is the source code and the production database to go on -- then let's say 40 hours.

In the Learning/Documentation phase we will learn and document everything that we discovered. We have no idea how to quote this until we complete phase one. We expect this to be 2 to 4 times the hours spent in the discovery phase.

We expect the maintenance phase to be 4 to 8 hours per month.

Alexander will have a second person helping him and becoming familiar with the project/code. However, Alexander will be the primary person who works on the project. A third developer will look over the report that Alexander completes after each phase and will also explore how the system works and where everything is physically.

Transitioning all of this to Azure, the Microsoft Cloud, is a great idea. It would very cleanly separate the Tobacco Council "stuff" from the Higher Ed Center "stuff". We have done this for Strongwell and are very comfortable doing this.

This would give us a very good reason to collect information that we need for the discovery phase! As we put the servers up in the cloud, we could make sure that everything is put there that the Tobacco Council owns, the source code and the like.

Can I call you this afternoon to talk a little bit more about this?

Best Regards,

Tim Meredith

Systems Engineer
**Holston IT**
www.holstonit.com
(423) 534-3418 office
(423) 612-3389 cell

# RE: Holston IT: Migrating to Azure

Tim Meredith <Tim@holstonit.com>

Wed 11/16/2016 10:26 AM

*Exhibit 7*

To:Duffy Carmack <dcarmack@swcenter.edu>;

Thanks Duffy!

I sent Jeff a request to get together this afternoon at 3. He said 3:30 sounded good. We will get the ball rolling.

Best Regards,

Tim Meredith
**Holston** IT

**From:** Duffy Carmack [mailto:dcarmack@swcenter.edu]
**Sent:** Wednesday, November 16, 2016 10:02 AM
**To:** Jeff Webb <jeff.webb@swcenter.edu>
**Cc:** David Matlock <dmatlock@swcenter.edu>; Tim Meredith <Tim@holstonit.com>; Alicia Young <ayoung@swcenter.edu>; Patricia Ball <pball@swcenter.edu>
**Subject:** Fw: Holston IT: Migrating to Azure

Jeff,

I have spoken with the Richmond staff of the Tobacco Commission and now ready to move forth with outsourcing the Tobacco Scholarship Program to Azure. I would like to use Holston IT services to assist in this process. I have quotes from them for their service and the anticipated monthly fee, which will be paid out of Tobacco is $1200. for hosting the data on a virtual server. Please let me know if you need my assistance in making this happen.
Thanks!!

Duffy Carmack
Chief Financial Officer
Southwest Virginia Higher Education Center
276-619-4302
www.swcenter.edu

From: Tim Meredith <Tim@holstonit.com>
Sent: Wednesday, November 16, 2016 8:58 AM

Carmack 000 024

**To:** Duffy Carmack
**Subject:** Holston IT: Migrating to Azure

Duffy,

*Exhibit 7*

Great conversation yesterday!

Here is the migration strategy that I like. You can show this to Jeff. I am happy to talk to him also.

https://azure.microsoft.com/en-us/blog/migrate-on-premise-virtualized-workloads-to-azure-using-azure-site-recovery/

Migrating would take about 12 hours onsite, time to replicate (about a week or so), and another 12 hours to finish up. That's about 24 hours of billable time and 2 weeks of total time.

Just FYI.

Best Regards,

Tim Meredith

Systems Engineer
**Holston** IT
www.holstonit.com
(423) 534-3418 office
(423) 612-3389 cell

Disclaimer: This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

Disclaimer: This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

**Duffy Carmack**

| | |
|---|---|
| From: | Duffy Carmack |
| t: | Thursday, April 13, 2017 4:20 PM |
| To: | David Matlock |
| Cc: | Joyce Brooks |
| Subject: | Duffy Eval |

*Exhibit 8*

David,
I have completed my evaluation and returned it to you.  I will be off tomorrow, but will look for it and send it forward.
Thanks, and CONGRATULATIONS ON THE NEW GRANDDAUGHTER!!!

Duffy

William D. Carmack, CFO
Southwest Virginia Higher Education Center
PO Box 1987
Abingdon, VA  24212
276-619-4302

*- Reviews due to LWA by April 17th. He did all employee reviews except me. He did not do mine until June 30 20? Should be in same page.*

1

Carmack 000035

## 2016 Performance Evaluation William Carmack

👁View Form ↻Return

## Details

### Steps

| Activity Name | Assigned To | EMail | Status | Due Date | Action |
|---|---|---|---|---|---|
| 2016 (Step 1) Draft your performance plan, William Carmack | William Carmack | wdc3v@Virginia.EDU | Complete | 2017-04-15 00:00:00 | - Select - |
| 2016 (Step 2) Review and confirm the performance plan for, William Carmack | David Matlock | dm4qb@Virginia.EDU | Sent Back | 2017-04-15 00:00:00 | - Select - |
| 2016 (Step 1) Draft your performance plan, William Carmack | William Carmack | wdc3v@Virginia.EDU | Complete | 2017-04-15 00:00:00 | - Select - |
| 2016 (Step 2) Review and confirm the performance plan for, William Carmack | David Matlock | dm4qb@Virginia.EDU | Complete | 2017-04-15 00:00:00 | - Select - |
| 2016 (Step 3) Complete a self-evaluation for your interim review, William Carmack | William Carmack | wdc3v@Virginia.EDU | Complete | 2017-04-15 00:00:00 | - Select - |
| 2016 (Step 4) Complete an interim review | David Matlock | dm4qb@Virginia.EDU | Complete | 2017-04-15 00:00:00 | - Select - |

*[Handwritten annotation:] Exhibit 8) Printed for Matlock to complete on 4-13-17- Did not do until 6-30-17*

Exhibit 8

July 17, 2017

Dear William D. Carmack,

I am pleased to notify you that the 2017 Acts of Assembly authorizes a 3% salary increase effective July 10, 2017 for classified state employees.

In order to qualify for these salary increases, employees must have received a rating of at least "Contributor" on their 2016 performance evaluation. Based upon your employment dates and last performance rating, you qualify for the 3% salary increase. You will see this increase in your July 28, 2017 paycheck. Please note this will not appear in the Integrated System until the 7/10/17 payroll runs.

The Southwest Virginia Higher Education Center thanks you for the contributions that you make to your team, our agency, and to the Commonwealth of Virginia.

Thank you,

David N. Matlock
Executive Director
SW VA Higher Education Center

Exhbt 9



**Shannon Scott Osborne** is with **Patsy Rhoten**.

18 hrs · Meadowview

I'm not one to rant or post on facebook my life, but today I was asked to remove my post of me and my friends at work because it may offend someone, it was just a picture out of fun we was not on the clock when this picture was taken but the point is we live in this society and world of everyone is offended, I did not say anything towards anyone I just answered a comment, my point is I work with some pretty cool people we work as a team we try to help each other but a picture out of fun offends some people at the sweat factory I'll call it that so they want sue me but we work with bullies who can go around and tell people their stupid and don't expect you to understand because everyone there is ignorant, so the boss knows this but my facebook post that read "They stink" offends them but bullies and assholes there can do whatever the hell they want well that offends me. Rant over.

👍 Like     💬 Comment

Also Resigning were:
Janet Williams
Debbie Heath - you need to talk with
her about her Experience

Carmack 000038

Exhibit 10      April 24, 2017

David,

At the Partner Meeting, you asked that we provide feedback on the following 3 questions.  The group preferred to answer anonymously (with the exception of a couple of individuals).  Below is the collective answers of the group.  There were some duplicate comments, so answers were compiled in an attempt to not be redundant.

Kindest Regards,

Partners

**1.  What am I doing that I need to continue?**

- ➢ Seeking new ideas and programs for the HEC (in the building)
- ➢ Networking
- ➢ Community/public relations
- ➢ Increasing activity/events at the HEC (You do a great job with this!)
- ➢ Conveying HEC mission & message
- ➢ Brand awareness
- ➢ Presence & support at partner events
- ➢ Connecting with administrators on our main campuses.  It is important to remind them of the good work we do here!
- ➢ Promoting HEC Resident unity/collaboration (Center Celebration, Fun Fridays, etc.)

**2.  What am I not doing that I need to start?**

- ➢ Listen more than you talk – slow down and really listen and be open to collaboration and ideas from others.
- ➢ Using your staff & partner resources.  We can help with projects and assignments and free up your time to focus on bigger projects!  Start delegating in certain areas so you can focus on more pressing issues.
- ➢ Know and utilize the strengths of your employees/partners.
- ➢ Being considerate/respectful of others time and job responsibilities.  I.e. others do not function or perform well in a "fly by the seat of your pants" environment. Organization and planning are our strengths and make our events and the HEC great.  Waiting until the last minute to perform tasks is extremely stressful for detail-oriented planners.
- ➢ Match staff skill sets to positions.
- ➢ Hire a Marketing Director/Manager.  We appreciate the increased efforts in marketing.  Someone dedicated to this position and to help Sean would be very valuable!
- ➢ Seek humility & show empathy - Start using "we", rather than "I" when referring to accomplishments and achievements.
- ➢ Take time to evaluate new tenants in the Center.  Does the Center have the space to lease to another organization or do you need to discuss a new venture with the

Exhibit 10

partners to determine if leasing space to non-partners is the best choice for center residents' programming.

➢ Speak with full partners before bringing new programs into the Center.  You don't want to kill an existing program by allowing a new institution to bring the same program into the Center.  This may not bode well with older partners.

➢ Refrain from including your family and your personal experiences into every conversation be it with internal staff or board members, the public or whomever.

➢ Recognize that the increase in revenue has not all been from your being the new director.  Some of the programs were started before you came to the Center.  Credit should be shared where credit is due.

➢ I suggest you participate in part of the Partner meeting to update happenings and plans for the Center.  It would be nice for the partners to have some time to talk and share among themselves.

## 3.  What am I doing that I need to stop?

➢ Getting bogged down with the small stuff (use & trust your resources).

➢ Micromanaging.  This creates anxiety and unnecessary pressure on others.

➢ Making last minute changes to plans.

➢ Comparing the HEC to VHCC.  Two different institutions……not everything can, will or should operate the same.

➢ Taking on too much.  Again, we can help and are happy to do so, if you let us.

➢ Taking credit for everything that happens at the Center.  Again, using I, me and my and taking credit for the work of others is detrimental to your success as the director of the Center.  Give credit where credit is due and share the success with everyone who contributes.

➢ Treat everyone the same.  Don't show favoritism.

➢ Should the director be the leader of the Center and be implementing programs.  Perhaps you should help the partners by handing off programs to the partners who depend on professional development and training to support their being at the Center.



**Washington County Chamber of Commerce**
Suite D
1 Government Center Place
Abingdon, VA 24210

*Exhibit 11*

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/28/2017 | 1262 |



*Received by CFO*
*5-17*

| Bill To |
|---------|
| **Southwest VA Higher Education Center**<br>**Attn: David Matlock**<br>**P. O. Box 1987**<br>**Abingdon, VA 24212-1987** |

Stop by and pick up our
Livability Magazine
featuring Washington
County, Virginia.

| Item | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| Annual Awards L... | Table Promotion for Chamber Annual Awards Luncheon Held on Thursday, January 12, 2017 at SWVHEC | | 600.00 | 600.00 |

We appreciate your continued support!

| | **Total** | |
|---|-----------|---|
| | | $600.00 |

Exhibit 12

**Thoughts from the proposed SVHEC/ODU MOU regarding the Cisco Networking & Cyber Security Academy**

1. The project was proposed by Dr. Deri Draper to David Matlock during a March 2017 meeting here at the SVHEC. At this meeting Mr. Matlock said that there were Tobacco Commission funds that help make the project come to fruition.

2. Dr. Draper collaborated directly with David Matlock on the grant application to the Tobacco Commission. I am aware of numerous hours, verbiage and data Dr. Draper provided in the writing of this grant.

3. Connie Estep was told directly by a Tobacco Commission employee (Sara Williams) and her supervisor that they "saw this as an ODU project" - that it was "awarded based upon ODU bringing programs here to the tobacco footprint." The Commission staff also stated they had no issue with using language that includes both ODU and the SVHEC for the Academy.

4. The Commission staff stated their primary concern was that the Academy served those within the tobacco footprint.

5. Changes from the original grant to MOU: It was noted that ODU's contribution of $20K in marketing fell under supplies and materials in the original grant application, yet was not highlighted as marketing in the MOU. In the MOU $15K of marketing was added to the SVHEC's contribution. We have noted on several occasions in the last few months that SVHEC marketing is not equitable to the marketing capabilities of ODU and that ODU should strongly suggest we serve as the lead facilitator on this aspect of the project.

   Additional variances from the original grant application – originally the SVHEC only provided $15K per year in classroom space. In the MOU the SVHEC has added $5k in tech support, the above mentioned $15k in marketing and $30k in scholarships.

6. In the MOU ODU's role is conveyed as being no greater than Virginia Highlands Community College and Wytheville Community College, yet ODU is the only participant in this agreement who is an authorized academic partner with CISCO. There are three paragraphs as to what ODU will provide but zero paragraphs as to what VHCC and Wytheville will provide.

7. We are extremely disappointed that ODU is not listed as an equal partner in this endeavor yet we are agreeing to an investment of $296k over a three-year period, while SVHEC contributes $105k (an increase of $90k from the original

Exhibit 12

grant application), the SVHEC Foundation (as grant administrator) contributes $190k, VHCC contributes $0 and Wytheville contributes $0.

8. VCU has a clinical lab here on site at the SVHEC, which was created under a similar grant application thru the Tobacco Commission. It is referred to as the VCU Clinical Sciences Lab. The guidelines establishing the VCU lab are similar to the proposed ODU/SVHEC Cisco lab as the SVHEC provides space for the lab, IT support and serves as grant administrator. (It is also important to note that VCU, like ODU, is not considered to be part of the tobacco footprint.)

9. At this time, it is unclear to us what Mr. Matlock views VHCC and Wytheville's roles will be with the Academy. We were told by SVHEC staff the SVHEC can provide scholarships but it can only be done for a student who is enrolled in a four-year institution. The scholarship can apply to professional development programs but even then, it must still be administered thru a four-year institution. That being the case we are unsure where VHCC, Wytheville and the scholarships come into play. It was also relayed to our attention that should VHCC or Wytheville wish to use the Academy they will have to execute MOU agreements with ODU.

10. As an additional side note, we were also told the SVHEC Foundation will "own" the Cisco lab equipment until the grant term is over. At the end of the grant the equipment is then property of Old Dominion University.

Our suggestion would be that if you have specific questions regarding the grant you should reach out to, Sara Williams, at the Virginia Tobacco Commission office located here at the SVHEC. Her direct number is 276-619-4325.

Carmack 000043

Exhibit 12

Exhibit C

## OLD DOMINION UNIVERSITY
**IDEA FUSION**

**Darryl (Deri) C. Draper**

Provost Fellow, College of Continuing Ed. and Prof. Development
Director of Integrated Learning, The Center for High Impact Practices
College of Continuing Ed. and Prof. Development
The Center for High Impact Practices

Student Success Center
Norfolk, Virginia 23529

Office: 757/683-6388
Fax: 757/683-3204
ddraper@odu.edu

Carmack 000044

Exhibit 12

ADDENDMUM
TO
MEMORANDUM OF UNDERSTANDING
BETWEEN
SOUTHWEST VIRGINIA HIGHER EDUCATION CENTER
AND
OLD DOMINION UNIVERSITY
(College of Continuing Education and Professional Development)

This Memorandum of Understanding will be attached to the Memorandum of Understanding between Southwest Virginia Higher Education Center and Old Dominion University dated July 1, 2016. This addendum defines the noncredit education and training to be offered through the Virginia Tobacco Commission grant establishing the Old Dominion University /Southwest Virginia Higher Education Center's Cisco Networking & Cyber Security Academy (hereinafter "ODU/SVHEC Cyber Security Academy") which will provide a key component of education and training for the New Virginia Economy where students will earn various workforce and cyber security networking certifications.

Old Dominion University (ODU) will offer noncredit bearing courses in a face-to-face delivery format at the Southwest Virginia Higher Education Center (SVHEC). Face-to-face courses will be facilitated by local networking and cyber security professionals. This project directly addresses the current supply/demand of workers within the occupational title taxonomy for Information Technology and Cyber Security. Each of these courses will require a minimum enrollment at the SVHEC.

It is desirable for all parties to work collaboratively in the use of resources to the greatest advantage in-service to higher education needs of the citizens of the Southwest Virginia region. SVHEC will provide a dedicated classroom for this program and on-site ODU representatives will guide students to ensure that certification requirements have been met. Additionally, the parties will seek funding in an attempt to expand collaboration to include the region's community colleges in order to develop a credit bearing degree option for the citizens of Southwest Virginia.

*DM Agreed to remove cell @ ODU on my cell 8-24-17*

*★ This was a deviation from agreement @ ODU*

Both institutions believe that neither party should need to incur any additional financial obligations beyond what is included in appendix A as a result of this agreement and understand that all additional financial arrangements should be agreed to by both parties on a case-by-case basis and will depend upon the availability of funds. This agreement shall be effective for three years from August 1, 2017, unless terminated beforehand by either party. The program shall be reviewed annually following the date of signing to determine if its goals are being achieved.

Exhibit 12

Close communications will be maintained between SVHEC and ODU so that both organizations are continually aware of any changes in the certification requirements of either institution and to be sure that these curricular changes do not jeopardize students enrolled in the programs.  A typical schedule of courses for students based upon the certification requirements of the two institutions will be published on both institutions' websites.

This agreement has been developed in the firm belief that it provides a valuable educational opportunity for the citizens of the Commonwealth of Virginia.  It is effective for a period of three years, ending on July 30, 2020.

SOUTHWEST VIRGINIA                              OLD DOMINION UNIVERSITY
HIGHER EDUCATION CENTER

_____                       _____
David Matlock              Date                   Augustine O. Agho         Date

                                                _____
                                                ~~James~~ James Shaeffer       Date
                                                Dean, College of Continuing Education and
                                                Professional Development

Carmack 000046

| | |
|---|---|
| **From:** | Carneal, Sherri (OSIG) |
| **To:** | Westfall, Michael (OSIG) |
| **Cc:** | Sadier, Tim (OSIG) |
| **Subject:** | FW: Southwest Higher Ed Center |
| **Date:** | Monday, January 08, 2018 2:46:52 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.jpg |
| | image004.png |
| | image005.png |
| | FWA Secretary of Education Dr Trent Southwest Virginia Higher Education 11 17 17.pdf |

Please advise how you wish to respond to Dr. Trent.

**From:** Trent, Dietra (GOV)
**Sent:** Monday, January 08, 2018 2:44 PM
**To:** Carneal, Sherri (OSIG) <Sherri.A.Carneal@osig.virginia.gov>
**Cc:** Coy, Holly (GOV) <Holly.Coy@governor.virginia.gov>
**Subject:** Southwest Higher Ed Center

Hi Sherrie – I've received your report regarding the allegations raised against SWHEC. As you know, the McAuliffe administration concludes this Thursday. Therefore, I am handing your letter off to Holly Coy who will remain in her role as Deputy Secretary.

By copy of this email, I'm advising the incoming administration to pay close attention to the items that were substantiated by your investigation.

Let me know if you need further action from me.

Best regards,

Dietra Y. Trent, Ph.D.
Secretary of Education
Commonwealth of Virginia
(804) 786-1151





# COMMONWEALTH OF VIRGINIA
## Office of the State Inspector General

Michael C. Westfall
Acting State Inspector General

P.O. Box 1151
Richmond, Virginia 23218

Telephone (804) 625-3255
Fax (804) 786-2341
www.osig.virginia.gov

November 17, 2017

Dr. Dietra Y. Trent
Secretary of Education
P.O. Box 1475
Richmond, VA 23218

Subject: Hotline Case # 16077 Report

Dear Secretary Trent:

The Office of the State Inspector General (OSIG) recently conducted an investigation based on a complaint made to the State Fraud, Waste and Abuse Hotline (Hotline) regarding the Southwest Virginia Higher Education Center (Center).

The scope of the review was limited to relevant circumstances as specified in the complaint. Therefore, this inquiry was limited to the review of pertinent policies and procedures, documentation and interviews with personnel. The period covered during this review was January 2016 to September 2017.

**Allegation #1:** *Adam Tolbert, Operations and Administrative Staff, has inappropriate and unnecessary access to Human Resource (HR) systems.*

**Policy Guidelines:**
The Agency Risk Management and Internal Controls Standards states that information technology infrastructure controls include restricting access to operating system software.

**Finding of Fact:**
OSIG reviewed Mr. Tolbert's access authority and found he had system access to several HR processes. However, his position description did not identify any need for that access. David Matlock, executive director of the Center, told OSIG that Mr. Tolbert had system access to certain HR records to learn the system and serve as backup when needed.

CONFIDENTIAL STATE HOTLINE DOCUMENT    Page 1 of 5

Carmack 000048

**Conclusion:**

The allegation is <mark>partially substantiated</mark>. Mr. Tolbert had system access to certain HR processes, but no identified need for that access in his position description. However, Mr. Matlock identified a need for the access.

**Recommendation:**

If Mr. Tolbert is to continue to be a backup to HR staff and needs system access to certain HR processes, his position description should be updated to reflect those responsibilities.

**Allegation #2:** ███████████ *waste state funds performing* ███████████████
*for a system that handles* ████████████.

**Finding of Fact:**

The Hotline caller said ████████████ cost the Center about ██████████ annually to perform ████████████████████ for a system that handles ███████████ The caller contacted a vendor that estimated an annual cost of about one third that amount to perform similar duties.

████████████ told OSIG the system handled ████████████████, but was recently changed to ██████ and ████████. At the time of this investigation, no ████████ had been made to ██████████; the Center therefore wants to ascertain whether that process is working adequately before considering an alternative source to program and maintain the system. The ██████████████ have worked at the Center ████████████ and have ██████████. Once there have been ████████████ and the system is determined to be working satisfactorily, the Center will consider issuing a request for proposal (RFP) to solicit possible vendors to perform this work. The Center will likely begin this consideration in late spring or early summer of 2018.

**Conclusion:**

The allegation is <mark>unsubstantiated</mark>. The ████████████████ provided a reasonable explanation for continuing to employ the ████████████ without considering an outside vendor at this time.

**Allegation #3:** ██████████ *inappropriately authorized* ██████████████ *at a school where* ████████████, *but not at other regional schools.*

**Finding of Fact:**

The caller provided evidence that a school where ████████████████ was approved in ██████████████ for a ████████████. Subsequently, Center staff prepared for OSIG a summary of disbursements related to ████████████ for fiscal years (FY) 2014–2017. The disbursements summary shows the ██████ referred to above received support in

Carmack 000049

████ only. Altogether for the four fiscal years, disbursements exceeded ████████, including for six other schools.

**Conclusion:**

The allegation is <mark>unsubstantiated</mark>. Although true that the school where ████████ was ████ received funding for ████████ during one year, ████████ was provided to a number of other areas for the four years reviewed, including six other schools.

**Allegation #4:** *Mr. Matlock does not submit travel reimbursement requests timely.*

**Policy Guidelines:**

The Commonwealth Accounting Policies and Procedures (CAPP) Manual Section 20335 – State Travel Regulations states, "Travelers must submit the Expense Report to their supervisor within 30 working days after completion of the trip."

**Finding of Fact:**

The caller said that Mr. Matlock had not submitted travel reimbursement requests during calendar year 2017, although he had travelled multiple times during the months of May–August 2017. Mr. Matlock confirmed he had not submitted the reimbursement requests because he had higher priorities completing his other assigned duties. In the past, he had always been reimbursed for such requests even though they were often late based on the state policy.

In addition, Mr. Matlock referred to University of Virginia (UVA) travel reimbursement policy because UVA provides administrative support for the Center. He told OSIG the UVA travel reimbursement policy allows for late submission of the reimbursement request with supervisor approval. OSIG confirmed the wording of the UVA policy and requested guidance from the Department of Accounts' deputy state comptroller regarding its applicability to the Center. The deputy state comptroller agreed a supervisor could approve a reimbursement request made more than 30 business days after the related travel.

**Conclusion:**

The allegation is <mark>partially substantiated.</mark> Although Mr. Matlock did submit his travel reimbursements late based on state policy, a supervisor can approve travel reimbursement requests that are submitted by staff more than 30 working days after travel.

**Recommendation:**

Mr. Matlock may want to consider having administrative staff prepare his travel reimbursement requests from supporting documentation for his signature within 30 working days after his travel so he does not have to concern his supervisor with this approval responsibility.

CONFIDENTIAL STATE HOTLINE DOCUMENT   Page 3 of 5

Carmack 000050

**Finding of Fact:**

The caller provided supporting documentation that the Center purchased a preventive maintenance service agreement for specialty room dividers and approved the sole-source document after the service was performed. Mr. Matlock said the same vendor had performed this work for 10–15 years, and he relied on finance staff to verify the Center's compliance with the state procurement policy. He acknowledged that his approval of the sole source justification occurred after the service was performed, although he was not made aware of the policy requirement when he approved the justification.

**Conclusion:**

The allegation is <mark>substantiated.</mark> Although the sole source justification makes sense based on the service performed, the state procurement policy requires that justification be approved prior to when the applicable service is performed.

**Recommendation:**

Mr. Matlock should ensure that future sole source justifications are approved prior to service performance. In addition, the Center should annually confirm the vendor used is the only one capable of performing the service for the annual contract, or whenever the contract ends, if longer, such as for a multi-year contract.


Please provide a response to the recommendations made in this report, indicating the corrective action(s) you plan to take within 30 days of the issuance of this report. Should you have any questions, please do not hesitate to contact me at (804) 625-3255, or michael.westfall@osig.virginia.gov.


Respectfully,

Michael C. Westfall, CPA
Acting State Inspector General

Carmack 000051

**Duffy Carmack**

| | |
|---|---|
| From: | Cowardin, Shaun (OSIG) <Shaun.Cowardin@osig.virginia.gov> |
| Sent: | Monday, August 21, 2017 10:04 AM |
| To: | Duffy Carmack |
| Subject: | RE: Duffy Carmack    Case #16077 |

Hi Duffy,

The Office of the State Inspector General is scheduled to receive the investigative report on 10/02/2017. Due to the amount of allegations being looked into it is possible that an extension to the due date will be requested by the investigator.

Thank you,

Shaun Cowardin, CFE, MBA, MSIS
Senior Investigator
Office of the State Inspector General
101 N. 14th Street, 7th Floor
Richmond, VA 23219
(804) 625-3271



**From:** Duffy Carmack [mailto:dcarmack@swcenter.edu]
**Sent:** Monday, August 21, 2017 9:22 AM
**To:** Cowardin, Shaun (OSIG) <Shaun.Cowardin@osig.virginia.gov>
      ect: Duffy Carmack Case #16077

Shaun,
Good morning.  I am checking on the status of case 16077?  Curious as to a possible time line that I can expect to hear from investigators?
Thanks
Duffy Carmack

William D. Carmack, CFO
Southwest Virginia Higher Education Center
PO Box 1987
Abingdon, VA  24212
276-619-4302

Carmack 000052

## Duffy Carmack

| | |
|---|---|
| **From:** | Cowardin, Shaun (OSIG) <Shaun.Cowardin@osig.virginia.gov> |
| **Sent:** | Wednesday, August 2, 2017 10:20 AM |
| **To:** | Duffy Carmack |
| **Subject:** | RE: Southwest Virginia Higher Education Center - Complaint - SCHEV Case 16077 - (SW VA HEC) |

Hi Mr. Carmack,

I have received the mailed documentation and am working with SCHEV on the investigation. If you call to inquire about the status or provide additional documentation, please reference Case #16077.

Thank you,
Shaun Cowardin

**From:** COV Hotline (OSIG)
**Sent:** Thursday, July 27, 2017 1:03 PM
**To:** Cowardin, Shaun (OSIG) <Shaun.Cowardin@osig.virginia.gov>
**Subject:** FW: Southwest Virginia Higher Education Center - Complaint - SCHEV Case 16077 - (SW VA HEC)


**From:** Duffy Carmack [mailto:dcarmack@swcenter.edu]
**Sent:** Thursday, July 27, 2017 11:59 AM
**To:** COV Hotline (OSIG) <COVHotline@osig.virginia.gov>
**Subject:** RE: Southwest Virginia Higher Education Center - Complaint

Shaun,
Good Morning, I am comfortable in sending the information to SCHEV as presented. In reality, it will be know that the complaint was lodged by me for the benefit of the Center and all Employees.
It will take me a few days to assemble the documentation in an orderly manner. Shall I send this to you, or to Peter Blake at SCHEV?
Thank you

William D. Carmack, CFO
Southwest Virginia Higher Education Center
PO Box 1987
Abingdon, VA  24212
276-619-4302

**From:** COV Hotline (OSIG) [mailto:COVHotline@osig.virginia.gov]
**Sent:** Wednesday, July 26, 2017 10:45 AM
**To:** Duffy Carmack <dcarmack@swcenter.edu>
**Subject:** Southwest Virginia Higher Education Center - Complaint

Hi Mr. Carmack,

1

Carmack 000053

Thank you for your hotline submission. Please refer to Case 16077 if you call to inquire about the case status or provide additional information about the complaint.

This case will be reviewed by the State Council of Higher Education for Virginia (SCHEV). You stated that you would like ⌐complaint to remain confidential. When sending the case to SCHEV, I can send the complaint details as is or you have the option to remain anonymous. However, if you choose to remain anonymous I will have to redact any information provided that will identify you as the complainant.

Please provide the detailed notes, examples and dates you stated you have for the 12 allegations. Also, please indicate if you would prefer to have the information provided to SCHEV as is or would like to proceed as an anonymous complaint.

Thank you,
Shaun Cowardin
Office of the State Inspector General
101 N. 14th Street, 7th Floor
Richmond, VA 23219

Carmack 000054

**Duffy Carmack**

| | |
|---|---|
| From: | COV Hotline  (OSIG) <COVHotline@osig.virginia.gov> |
| Sent: | Wednesday, July 26, 2017 10:45 AM |
| To: | Duffy Carmack |
| Subject: | Southwest Virginia Higher Education Center - Complaint |

Hi Mr. Carmack,

Thank you for your hotline submission. Please refer to Case 16077 if you call to inquire about the case status or provide additional information about the complaint.

This case will be reviewed by the State Council of Higher Education for Virginia (SCHEV). You stated that you would like this complaint to remain confidential. When sending the case to SCHEV, I can send the complaint details as is or you have the option to remain anonymous. However, if you choose to remain anonymous I will have to redact any information provided that will identify you as the complainant.

Please provide the detailed notes, examples and dates you stated you have for the 12 allegations. Also, please indicate if you would prefer to have the information provided to SCHEV as is or would like to proceed as an anonymous complaint.

Thank you,
Shaun Cowardin
Office of the State Inspector General
101 N. 14th Street, 7th Floor
Richmond, VA 23219

Carmack 000055

**Duffy Carmack**

                Tim.sadler@osig.virginia.gov

     ject:           William D. Carmack, CFO  Southwest Virginia Higher Education Center

Tim,

I am back in the office following 3 days of business travel.  As a follow- up to our conversation this past Monday, I have compiled two invoices from Bristol Chamber of Commerce that were dated September, 2016 that Mr. Matlock turned in to the business office on September 2017 to be paid.  These are 12 months late.  Invoice A is for $250.00 and Invoice B is for $35.00.

Mr. Matlock has not turned in any travel reimbursement since March 2017.  He is holding a stack of travel receipts from April through September 2017.  He has been reminded by Debbie Hensley, business manager, for months that they need to be turned in.  He periodically makes comments that he needs to get reimbursed for his expenses.  If and when he turns them in they will be months late.

Attached are 3 additional examples of RECON reports that he has not approved by the 15th of the month.  He was reminded by Debbie Hensley each month in addition to the automatic emails he receives from RCON.

Included in this package is a request for distribution in the amount of $1,250.00 paid to Virginia Middle School, Bristol, Virginia for children to participate in state robotics competition held at JMU.  His son, Jason Matlock, is the principal of this school.  David Matlock stated that he had made this offer to all county schools, but no one else accepted the offer.  We have no documentation that is offer was made to others.  From the receipts attached, it appears that Jason Matlock went on this trip and his travel was paid for by these funds.

..thwest Virginia STEM Academy marketing materials are included which demonstrates a class he has created for kindergarten and elementary school children.  There is a $35.00 charge and he is paying a stipend to elementary teachers to attend this event to supervise the children.  Another example of emphasis being placed on students that are not directly related to our primary mission.  Our other STEM related activities have come through a partner institution , Virginia Tech, with instructors who demonstrate credentials to instruct the children.  In the past our STEM education has been directed toward professional development of elementary teachers to work with children on STEM projects.

I have requested documentation from UVA payroll department for overtime paid to Elizabeth Tate from July 1, 2016 – June 30, 2017.  I am told by payroll that she has been paid in excess of $14,000 overtime during this timeframe.  I will forward the documentation next week when I receive it.

Since our conversation on Monday, I have received the MOU from Old Dominion University for the Cyber Security Program.  This is a good thing.  I do need to emphasize that Mr. Matlock's comments concerning this program to local ODU staff and the Dean of the College changed on a daily basis creating an issue of distrust.

The issue in my initial documentation that you received about the "purchase of a table on July 31" was poorly worded to you.  Mr. Matlock purchased sponsorship of a table for the annual chamber of commerce dinner.  This was verbally done in April 2017.  According to Nita Lester, Assistant Chamber Director, she submitted several invoice to Mr. Matlock for payment without response.  When she confronted him in person about the past due invoice, he made derogatory statement toward me to Mrs. Lester.  It was not until Mrs. Lester contacted me and sent the invoices directly to my attention did they get paid. Phone number Washington County Chamber of Commerce 276-628-8141.

P ~ard Suspension.  Mr. Matlock should have received multiple notices prior to December 1, 2017 that he needed to c ..plete the P-Card training.  Training was not done until cards were declined by local merchants and we **strongly** encouraged him to complete the training.

Carmack 000056

I would like to emphasize that I do not feel that Mr. Matlock is a dishonest person. His lack of knowledge for his r ~ition, and his failure to rely on the CFO and others within the Center Staff for training and guidance has created two , 's of chaos.

There is little trust for his word, or ability to complete tasks within a timely manner. Work conversations are always deflected toward himself and how important and successful he is. Morale is very poor. His lack of effective leadership has created a very poor working environment. The long time work ethic and outstanding customer service that our Center has been known for is not gone. I am aware that you are looking into the policy violations that I have expressed concern about. Who will reach out to staff so they can express their concerns and personal experiences with Mr. Matlock? This is a very important piece in capturing the complete story taking place in Southwest Virginia.

I am overnighting the documents mentioned above to your attention.
Thanks again!

Duffy Carmack

William D. Carmack, CFO
Southwest Virginia Higher Education Center
PO Box 1987
Abingdon, VA  24212
276-619-4302

2

# dhrm Department of Human Resource Management

THE 1ST SOURCE FOR HR INFORMATION

 About Us     Contact Us

**For Employees**   **For Agencies**   **For Job Seekers**   **For Retirees**   **For Citizens**   **How Do I**   **Quick Links**

DHRM Home / Employment Dispute Resolution / Grievance Procedure

## EMPLOYMENT DISPUTE RESOLUTION

**WHAT'S ONLINE?**

» EmployeeDirect
» ITECH/HuRMAN
» Learning Center
» Payline
» TAL

**WHAT'S POPULAR?**

» Forms
» HR Policy
» Publications
» Pay and Holiday Calendar
» Reports
» State Employee Search

**WANT TO CONNECT?**

### Grievance Procedure

The grievance procedure is a process through which a Virginia state government employee can bring workplace concerns to upper levels of management. This process is more formal than mediation and requires that rules be followed strictly. The Grievance Procedure Manual lists the rules that must be followed. Failure to follow these strict procedures will forfeit your right to this process.

A grievance can have up to four phases: (1) the management resolution steps; (2) qualification for hearing; (3) hearing; and (4) review of the hearing decision. Not all grievances are qualified for hearing. For example, under the grievance statues, grievances that relate solely to layoffs, transfers, assignments, or the content of personnel policies cannot proceed to a hearing. On the other hand, some issues are automatically qualified for hearing, such as formal discipline or dismissal for unsatisfactory performance. Attorneys serving as Administrative Hearing Officers conduct hearings in qualifying grievances.

Even if your concern is about an issue that cannot be qualified for hearing, many grievances result in resolution during the management steps, without a grievance hearing. For more information regarding the grievance process contact the EEDR AdviceLine at 1-888-23-ADVICE (1-888-232-3842).

**\*\*UPDATED** Grievance Procedure Manual (effective July 1, 2017)

Summary of Changes (July 1, 2017)

**\*\*UPDATED** Rules for Conducting Grievance Hearings (effective July 1, 2017)

Grievance Procedure FAQs

Grievance Procedure Manual

Grievance Procedure Forms

Agency Steps Respondent List

Law Student Advocate Program

Rulings and Hearing Decisions

Appellate Decisions

**EEDR Related**

AdviceLine

Contact EEDR

EEDR Forms and Resources

EEDR Training

Grievance Procedure

Hearings

Mediation

Other Links of Interest

Workplace Conflict Consultation Program

Equal Employment

---

**About DHRM**
Our Organization Structure
Our Mission and Vision
Our History

**Benefits**
Health Coverage
Flexible Spending
Leave
Other Benefits

**Compensation**
Pay and Holidays
Payline
Salary Structure

**EmployeeDirect**
TAL
Health Benefits Online
Adjunct Emergency Workforce

**Employment Dispute Resolution**
AdviceLine
Grievance
Mediation

**Equal Employment**
EEO Information
Complaint of Discrimination

**Wellness**
CommonHealth
Weight Watchers

**Worklife**
Employee Assistance Program
Employee Discounts

**HR Professionals**
Benefits Administration
Compensation and Classification
Employee Programs
Employment Dispute Resolution
Equal Employment Opportunity Management
Agency Human Resource Services
HuRMan
Performance Management Policies
Workers Compensation

**Executive Level Management**
Agency Head Resources
Human Resource Consulting

**Job Seekers**
Employment Opportunities
Career Development

**Retirees**
Health Coverage
Virginia Retirement System

**Citizens**
Employment Verification
Freedom of Information
Procurement
Virginia Performs

**Quick Links**
State Employee Directory
Employee Discounts
Pay and Holiday Calendar
EmployeeDirect
Payline
Information
Technology/HuRman
Emergency Office Closings
Learning Center

July 31, 2017


To:     Shaun Cowardin
        Office of State Inspector General
        101 N. 14th Street, Floor 4
        Richmond, VA  23219


From:   William D. Carmack, "Duffy"
        Southwest Virginia Higher Education Center.


Dear Shaun,

Enclosed is documentation of complaints outlined to you in my letter.  Please feel free to contact me by phone or I am happy to meet you in Richmond.  I am frequently there on Center business.


Respectfully,

William D. Carmack
550 Court Street
Abingdon, VA  24210
Cell: 276-356-9778

Carmack 000059

Pre-Selection:

a.  In August 2016 Joe Mitchell, then employed by Virginia Highlands Community College, met with Mr. Matlock and upon exiting this meeting announced to others in the building (Melissa Warden, receptionist) he would be coming to work as the Property Manager at the Higher Education Center. This announcement came before a position was created or posted. Mr. Matlock announced his selection of Mr. Mitchell as Property Manager in the September 2016 manager's meeting. HEC employee Josh Reynolds, working within the Maintenance Department, questioned the process of filling a position without it being posted. Mr. Matlock stated that Mr. Reynolds did not have the necessary certifications or experience to do the job. An made was adjustment to Mr. Reynold's salary compensating him for serving as interim manager for the past 18 months in the absence of a "Property Manager".

On September 7, 2016, I met with Mr. Matlock to caution him about "pre-selecting" employees.

On September 26th, Mr. Mitchell was hired as a wage employee and became Property Manager. Once Mr. Mitchell completed the 1500 hours defined as a "wage position", a job description for this position was created, matching Mr. Mitchell's credentials, and the full-time job was posted. Interview Committee of Joyce Brooks, Jeff Webb (Director of Technology) and Adam Tolbert (Information Technology) were selected and candidates interviewed. Mr. Mitchell was hired on July 9, 2017 **as indicated by the attached screen shot from the payroll system. A background check on Mr. Mitchell was charged to the center budget on April 17, 2017, before the candidate was selected. EXHIBIT A.** Mrs. Brooks (Director of Human Resources) reported on numerous occasions that many qualified applicants posted for this position. **EXHIBIT K job posting.**

b.  Soon after arriving as Center Director, Mr. Matlock, who openly supports the Republican Party, aligned himself with Information Technology Employee, Adam Tolbert. Adam is a prominent member of the Republican Party, and was elected Chairman of the 9th Congressional District Committee in 2014. In September 2016 Mr. Matlock announced that he had selected Mr. Tolbert as a replacement for Joyce Brooks, Director of Operations and Human Resources and stated that he would be working alongside Mrs. Brooks to train for the position. Mr. Tolbert has been actively involved in the management of Human Resources. He has been assigned to update the Center By-laws and Policy Manual. Following last year's audit, he became the contact person to communicate between Auditor of Public Accounts and the Higher Education Center. Aside from Mr. Tolbert's knowledge of state government and experience in Information Technology, he had no background or experience to justify these assignments. The selection of Mr. Tolbert as succession to Mrs. Brooks bypassed a 59 year old female who

1

Carmack 000060

has served as backup in Mrs. Brooks absence for HR needs.  She had access to all HR and payroll systems.  She has over 20 years of experience in personnel and fiscal management. Her name is Deborah Hensley. **Attached you will find a report from the Integrated System confirming access to confidential Human Resource Information granted to Mr. Tolbert EXHIBIT B.** Employees have expressed concern that their "co-worker" has access to salary and confidential information pertaining to them.

<u>Finance/Policy Violations:</u>

a.   On numerous occasions Mr. Matlock has made presentations to the public stating that Non-General Funds at the Center have been at an all-time high under his direction and leadership.  He announced an increase of over $75,000 compared to a 5-year average for 2017.  **Attached you will find a report, prepared by Mr. Matlock that was distributed to the Board of Trustees at the June 2017 meeting.  These numbers do not match with budget reports.  I have attached a copy of the Non-General Fund Revenue report that balances our budget report.  As indicated, there is not a $75,000 increase during FY 17. <u>EXHABIT C</u>**

From his first day on the job Mr. Matlock has disregarded the CFO and other members of the Finance Department on matters related to the financial strength and integrity of the Center.  Due to the complexity of our state budget process I have encouraged Mr. Matlock to confer with me for clarification, but my offers have been declined to date. He makes financial commitments within the community and does not inform the finance department so budget adjustments can be made. Members of the finance department approach me frequently with concerns of purchases and financial obligations he has committed the Center for.  He does not discuss these with finance and appears to disregard policies and regulations often required when dealing with state resources.  One example of being excluded in shown in **<u>EXHABIT I</u>** which is an email I sent to Mr. Matlock.  There are many examples of this type of behavior.

b.  Mr. Matlock fails to complete RECON reports in a timely manner.  He also ignores emails asking that he complete on-line training to approve financial transactions as Agency Director.  In December, P-Cards for all Center Managers were blocked because he had not completed his annual on-line training. A deadline to complete "Grant Funding Certification" and our ability to move grant funds was frozen.  Under duress from employees in the grant department he completed the training in late July 2017.  **Attached is an example of his not approving the RECON report within the required timeframe. <u>EXHIBIT D and Exhbit J.</u>** He must be reminded each month by employees in finance to complete the RECON report.  It appears he disregards the email notifications for approval.

2

c.  Mr. Matlock has taken several business-related trips over the past 90 days.  He has not submitted travel invoices for these trips.  Accounts payable and travel invoices are frequently submitted late.  He is prompted on a regular basis that these need to be completed within a 30-day time frame.  On frequent occasions, Mr. Matlock pays business related expenses out of his pocket for assorted reasons.  These are not always submitted for reimbursement.  While this might be considered generous, it is an anomaly within a state agency.

d.  On multiple occasions Mr. Matlock has submitted invoices to be paid as "Sponsorships".  The Business Office continues to remind him that that sponsorships are disallowed by UVA.  Invoices are changed to "Marketing" and resubmitted for payment.  **Attached you will find 3 examples of invoices from "SVAM" dated 7-20-16 which was changed from Sponsorship to Marketing.  These invoices, created in July, Aug, and Oct. were not submitted to Finance for payment until December 2016<u>. EXHIBIT E</u>**

e.  Elizabeth Tate is a "regular part-time employee" in Information Technology.  She works from home and is supervised by Jeff Webb, Director of Information Technology. For 3 years her work has centered around programing needs for the Tobacco Scholarship/Loan Program, which is administered by Southwest Virginia Higher Education Center.   For the past two years we have experienced great frustration with the inability of Mrs. Tate to meet deadlines in a timely manner.  The employees in the Tobacco Office express concern on a regular basis that she is unable to meet their work needs.  By self-admission, Mrs. Tate requires the assistance of her husband to complete the work. (Mr. Tate is paid by the Center as a wage employee as needed.)  We are constantly reminded that Mr. Tate is a full-time employee for Crutchfield Corporation and is not always available for our requested time frame.  Between July 2016 and December 2016, Elizabeth Tate incurred 111 hours of overtime. **<u>EXHIBIT K confirmation of O.T. hours from payroll.</u>** I approached Mr. Matlock and Mr. Webb with my concerns of the overtime matter on November 9, 2016.  At that time Mr. Matlock thought it best that Mrs. Tate report to Mr. Carmack since 100 percent of her work is for the Tobacco program, which falls under the prevue of the CFO.  On December 7, 2016 Mr. Matlock came to me and stated "it will be too upsetting for the Tate's if they reported to you.  They might leave and what would we do?"  Mr. Matlock failed to remedy the abuse of time and the matter remains unresolved.

<u>Bullying Retaliation:</u>

a.  Mr. Matlock and Mrs. Brooks engage in repeated bullying and retaliation against

3

employees.  On September 15th Mr. Matlock held an open forum with staff to address his lack of success in uniting employees to work together.  He asked employees in the meeting to speak openly with concerns about one another.  This was met in total silence.  Eventually one of the housekeeping employees voiced her concern with lack of access and support from her supervisor.  The following weekend, security cameras were placed in the housekeeping closet while no one was in the building.  This was perceived as a "threat" from housekeeping for the comments made in the open forum.    Silence permanented the remainder of the meeting.  In effort to stimulate conversation, Mr. Matlock told a story of how he liked to get pedicures. "I especially enjoy the part where the lady rubs lotion on my legs."  This was followed by his telling the staff that later that evening he was taking a group of "Redneck" boys to the County Faire.  The meeting ended in his frustration to stimulate talk.

b.  On various occasions Janet Williams and Debbie Heath,(employees in conference services, who report to Joyce Brooks, are told to have no conversation with the CFO.  If they are seen in my office discussing business or exchanging pleasantries she demands to know what they were discussing and chastises them for speaking with me.

c.  January 27, 2017 Mr. Matlock publicly singled me out during a manager's meeting and chastised me for assisting a vendor who came to the building to bring samples of ceramic tile to replace broken tiles in the main entrance.  Mr. Matlock asked that I assume this responsibility.  The day the vendor arrived with samples, I paged Properties and Maintenance to meet in the lobby and participate in the discussion.  The only person from this department that was on site that day was Josh Reynolds.  While Mr. Reynolds and I were in the hallway discussing options with the vendor, Joyce Brooks walked back and forth in front of the group not participating in the discussion. (Mr. Matlock was not in the building during this event.) Later that afternoon, during managers meeting, chastised and humiliated me for being involved in this event.  Following the meeting I asked him how he received the information on the vendor being in the building?   He stated that Mrs. Brooks told Mrs. Hietala (Administrative Assistant to Mr. Matlock) who texted him to say that I was overstepping my bounds.  I discussed the inappropriate treatment he exhibited toward me and his lack of professionalism.  He simply turned and walked away stating "he hoped we were friends".

d.  All employee evaluations were due to UVA no later than April 15, 2017.  My review was not completed until June 28, 2017.  On two occasions Mr. Matlock stated to me that he had not forgotten my review but became too exhausted signing reviews and did not complete mine.  He was continually reminded for 8 weeks, by Joyce Brooks, that my review was past due.  On June 30th Mr. Matlock met with me briefly to cover my review.  I was very direct with my comments and concerns in my self-evaluation.  These were not addressed during the review.  He simply stated that he was aware that we had problems but had never worked in a "place like this".

4

Carmack 000063

moving forward. I assume there is warranted distrust on the part of ODU toward the project. You may contact Dr. Deri Draper at 757-683-6388.

Mr. Matlock demonstrates strength in K-12 education and programs that feed the Community College System. These areas do not align with our mission of providing Bachelor, Master and Doctoral degrees. While Mr. Matlock is recognized by select members of the General Assembly as an educational leader these traits have not been observed during his 20 months tenure at the Higher Education Center.

My request is to bring the issue of poor leadership and lack of integrity demonstrated from Mr. Matlock to the attention of the Commonwealth of Virginia and the Board of Trustees of the Southwest Virginia Higher Education Center. The employees of the Center feel powerless, frustrated and fear of retaliation if they speak out. Without intervention, the integrity and success of the Higher Education Center will continue to lurch even further out of control. Several members of the Board of Trustees are aware there are management problems at the Center. I hope that my formal complaint will give the Commonwealth reason to inform the Board in a "Collective" and "Formal" manner of their need to be vigilant in addressing management issues at SWVA Higher Education Center.

**NOTE:**

Over the past 7 months, in an attempt to resolve these issues in a constructive manner, I have met with: Brad Holland, Ombudsman at the University of Virginia.
Mr. Holland referred me to DHRM where I have and conversations with:

Kristy Hall, phone
Gretchen White, in person
Amanda Monico, phone
Alex Morgan, phone

All advised that I forward this complaint on to the Office of Inspector General. Each have assured me of job protection under the "Whistle Blower Act".

Respectfully,

William D. Carmack, CFO
Southwest Virginia Higher Education Center
One Partnership Circle
Abingdon, Virginia  24211
Cell - 276 - 356 - 9778

7

Carmack 000064

Exhibit #3

Davids's Personal Calendar showing meetings with all department ~~meeting~~ managers excluding Carmack

ℹ️ Attendee responses: 1 accepted, 0 tentatively accepted, 0 declined.
2 instances of this recurring appointment conflict with other appointments on the calendar.

| | | |
|---|---|---|
| | To... | Jeff Webb |
| Send Update | Subject | David & Jeff Weekly Mtg |
| | Location | David's ofc |
| | Recurrence | Occurs every Tuesday effective 9/26/2017 until 12/26/2017 from 3:00 PM to 3:30 PM |

In Shared Folder   David Matlock                                    Last modified by Kathy Hietala on Tue 10/17

ℹ️ No responses have been received for this meeting.
6 instances of this recurring appointment conflict with other appointments on the calendar.

| | | |
|---|---|---|
| | To... | Joyce Brooks |
| Send Update | Subject | David & Joyce Weekly Mtg |
| | Location | David's ofc |
| | Recurrence | Occurs every Tuesday effective 10/3/2017 until 12/26/2017 from 2:00 PM to 2:30 PM |

In Shared Folder   David Matlock                                    Last modified by Kathy Hietala on Tue 10/17



Organization
Job: **Trades Technician IV-Nonexempt.Building T**          Group: **Other Wage...**
Grade: **Classified.4.**          Position: **26370.Building and Grounds Manager...**
Location: **HR-Washington County**          Payroll: **Bi-weekly**
          Status: **Active Assignment**

Assignment Number: **224455**          Collective Agreement
Assignment Category: **Parttime-Regular**          Employment Category

### Salary Information

Salary Basis **Hourly Rate**

Review Salary          Review Performance
Every [        ]          Every [        ]

Effective Dates
From: **28-SEP-2016**          To: **___**

**Time Information**          **Next**

Exhibit 1

Joe Mitchell —
Hire date? Jul 09-17
NO notification of finance

Appeared on UVA Payroll Rept as
full time July 2017

Appeared on UVA payroll Rept as
Wage Aug 2017

Did not work Months of Oct - Dec 17

Carmack 000090

## SOUTHWEST VA HIGHER EDUCATION CENTER
## NON-GENERAL FUND REVENUE

| | **FY17 | FY16 | FY15 | FY14 | FY13 |
|---|---|---|---|---|---|
| LEASED SPACE | $155,038.31 | $120,006.88 | $100,099.88 | $66,576.12 | $54,813.64 |
| HEC SPECIAL EVENTS | $22,843.66 | $14,329.01 | $22,546.75 | $10,944.86 | $14,678.90 |
| COLLEGE FOR OLDER ADULTS | $37,344.02 | $41,925.00 | $41,400.00 | $46,234.00 | $48,827.50 |
| MISCELLANEOUS REVENUES | $25,652.26 | $37,099.05 | $19,914.65 | $29,651.64 | $9,047.60 |
| | $717,786.50 | $837,670.68 | $747,390.01 | $658,219.69 | $646,462.21 |

**Thru April 2017

*(handwritten notes)*

← FY year end totals for All Areas of Conference Services

He used then report to the Board to say that FY17 was 75,000 higher on average then any other year over the past five yrs

Report from budget in contradiction —

Exhibit 3

Carmack 000091

**Southwest Virginia Higher Education Center**
**Board of Trustees**

FY'17                                                                    *Duffy*

*Exhibit #2*

| STATE REVENUES: | | Approved FY2017 | | Projected FY17 Year End | | Proposed FY2018 |
|---|---|---|---|---|---|---|
| General Fund Appropriation | $ | 2,161,055.00 | $ | 2,161,055.00 | $ | 2,053,109.00 |
| Mandated Reduction | $ | - | $ | (108,486.00) | $ | - |
| Employee Benefit Appropriation | $ | - | $ | 2,981.00 | $ | - |
| TOTAL GENERAL FUND REVENUE | $ | 2,161,055.00 | $ | 2,055,550.00 | $ | 2,053,109.00 |
| | | | | | | |
| Non-General Fund Revenue | $ | 808,906.80 | $ | 790,444.35 | $ | 882,072.80 |
| Non-General Fund Carryforward Revenue | $ | 779,568.36 | $ | 779,568.36 | $ | 1,159,849.95 |
| TOTAL NON GENERAL FUND REVENUE | $ | 1,588,475.16 | $ | 1,570,012.71 | $ | 2,041,922.75 |
| | | | | | | |
| TOTAL STATE REVENUE | $ | 3,749,530.16 | $ | 3,625,562.71 | $ | 4,095,031.75 |
| | | | | | | |
| RESTRICTED STATE REVENUE: | | | | | | |
| Higher Education Equipment Trust Fund | $ | 80,111.00 | $ | 80,111.00 | $ | 80,111.00 |
| Maintenance Reserve | $ | 278,202.00 | $ | 116,254.28 | $ | 563,125.72 |
| TOTAL RESTRICTED REVENUE | $ | 358,313.00 | $ | 196,365.28 | $ | 643,236.72 |
| | | | | | | |
| TOTAL REVENUES | $ | 4,107,843.16 | $ | 3,821,927.99 | $ | 4,738,268.47 |

**BREAKDOWN OF NON-GENERAL FUND REVENUE PROJECTION** *Terry*

| | | | | | | |
|---|---|---|---|---|---|---|
| Resident Fees (ODU, RU, UVA-W, UVA, VT) | $ | 292,816.80 | $ | 224,013.52 | $ | 292,816.80 |
| Non-resident Fee | | | $ | - | $ | - |
| Leased Space | $ | 135,240.00 | $ | 170,674.43 | $ | 172,256.00 |
| Room Rentals and Food & Beverage Services | $ | 225,000.00 | $ | 252,866.04 | $ | 275,000.00 |
| HEC Special Events | $ | 25,000.00 | $ | 23,500.00 | $ | 25,000.00 |
| Cooking Along the Crooked Road | $ | 18,000.00 | $ | 20,342.88 | $ | 18,000.00 |
| College for Older Adults  (Fees) | $ | 47,850.00 | $ | 38,000.00 | $ | 42,000.00 |
| Testing | $ | 40,000.00 | $ | 30,264.72 | $ | 32,000.00 |
| Miscellaneous Revenues (Commissions & Reimbursements) | $ | 25,000.00 | $ | 30,782.76 | $ | 25,000.00 |
| TOTAL NGF REVENUE | $ | 808,906.80 | $ | 790,444.35 | $ | 882,072.80 |

Non-general Revenue was under budget 18,462
Not 75,000 over previous yrs on Reserve

Carmack 000092

COMMONWEALTH OF VIRGINIA

*Exhibit #3*

# EMPLOYEE GRIEVANCE PROCEDURE

## GRIEVANCE FORM A

## I.  Grievance

| Employee's Full Name:<br>Paula June Moad | Job Title: Supervisor of Testing Center |
|---|---|
| Agency Name:<br>Southwest Virginia Higher Education Center | Facility Name:<br>Southwest Virginia Higher Education Center |

| Home Address: | Work Telephone No. | |
|---|---|---|

| Date Grievance Occurred:<br>November 14, 2017 | Role Title:<br>Testing Center Administrator |
|---|---|

**The issues are** (use attachments if necessary):
As Testing Center Administrator I was seeking status on two applicants that we had interviewed and offered job too 10 days prior.  Due to the Bulling nature of our internal HR director, she did not communicate anything about the status of theses applicants.  I spoke with my supervisor, William D. Carmack and he advised me to follow-up with UVA HR on the job offer status.  I made a call to UVA HR and the gave me the status update on each applicant.  They also noted that they had only received the applications a couple of days prior.  There was a background issue with one applicant which was disclosed to me by UVA.  I took this to my supervisor by phone, who was out of town.  Later that day, Joyce Brooks accompanied by Adam Tolbert from Information Technology came into my office and attacked me for calling UVA.  They told me it was none of my business and that I was out of line.  I was spoken down too and belittled in front of a person from I.T. who has no involvement in this situation.  Mrs. Brooks then turned to Adam and asked if there was anything he would like to add??  After that afternoon I was called to the Directors Office, David Matlock where he and Mrs. Brooks again attacked me for following up with UVA on the applicants. They ordered me not to talk to William D. Carmack, my immediate supervisor.  Mr. Carmack was never included in any conversation with me.

**The facts supporting this are** (use attachments if necessary):

See Attached emails to Mr. Carmack from Me.  Also is correspondence from UVA HR to me concerning the hiring candidate

| **The relief I want is** (use attachments if necessary):I would like to speak to someone from DHRM about the unprofessional behavior exhibited by management toward the employees and the obvious disregard for William D. Carmack, CFO and supervisor of various departments. I discussed this incident with my supervisor. The details of the event were never discussed with Mr. Carmack. | |
|---|---|
| Date:<br>12-13-17 | Employee's Signature:  *Paula J. Moad* |

Grievances must be submitted within 30 calendar days of the date the employee knew or should have known of the issue being grieved. The *Grievance Procedure Manual*, available on EEDR's website, contains complete instructions for initiating, processing, and pursuing grievances.  Contact the Office of Equal Employment and Dispute Resolution (EEDR) if you have any questions.

Check if you decided not to present this grievance to your immediate supervisor because  (check one);

 Discrimination or Retaliation by Immediate Supervisor
 Grieving disciplinary action issued by someone other than Immediate Supervisor

## II.  First Resolution Step

| Date Received: | | | |
|---|---|---|---|
| Response (use attachments if necessary): | | | |
| Date: | First Step<br>Respondent's<br>Signature: | Telephone No.:<br>(    )    -        ext. | |

Date Received: _____

Employee's response (check one):

 I conclude my grievance and am returning it to the Human Resources Office.      I advance my grievance to the second step.

| Employee's comments (optional - [use attachments if necessary]): | |
|---|---|

Carmack 000093

Exhibit #3

### III.  Second Resolution Step

| Date Received: | | Date of Meeting: |
|---|---|---|
| Response (use attachments if necessary): | | |

| To: | Second Step Respondent's Signature: | Telephone No.: ( ) - ext. |
|---|---|---|

Date Received: _____

Employee's response (check one):

    ☐ I conclude my grievance and am returning it to the Human Resources Office.     ☐ I advance my grievance to the third step.

Employee's comments (optional - [use attachments if necessary]):

| Date: | Employee's Signature: |
|---|---|

*NOTE: The employee is responsible for having the grievance delivered to the proper person or office within five workdays.*

### IV.  Third Resolution Step

| Date Received: | |
|---|---|
| Response (use attachments if necessary): | |

| Date: | Third Step Respondent's Signature: | Telephone No.: ( ) - ext. |
|---|---|---|

Date Received: _____

Employee's response (check one):

    ☐ I conclude my grievance and am returning it to the Human Resources Office.     ☐ I proceed to the next step and request qualification of my grievance for hearing.

Employee's comments (optional - [use attachments if necessary]):

| Date: | Employee's Signature: |
|---|---|

*NOTE: The employee is responsible for having the grievance delivered to the proper person or office within five workdays.*

### V.  Qualification for Hearing/Agency Head

Qualified for a Hearing:

    ☐ Grievance is qualified in full.
    ☐ Grievance is qualified only in part, as described by agency head below (or in an attachment).
    ☐ Grievance is not qualified.

Reasons (use attachments if necessary):

| Date: | Agency Head's Signature: |
|---|---|

Date Received: _____

Employee's response (check one):

    ☐ I conclude my grievance and am returning it to the Human Resources Office.

    ☐ I appeal the agency head's qualification decision and ask the Human Resources Office to forward the grievance record to EEDR. (All qualified issues will proceed to hearing following issuance of a qualification ruling by EEDR).

    ☐ [If partial qualification] I waive any further right of appeal on any unqualified issues and ask the agency to request appointment of a hearing officer.

Employee's comments (optional - [use attachments if necessary]):

| Date: | Employee's Signature: |
|---|---|

*NOTE: This form must be returned to the Human Resources Office within five workdays after receipt of the agency head's qualification decision. The agency will retain the original.*

☞ If the agency is not in compliance, a written notice must be sent to the agency head ☜

*Exhibit #3*

Nov 15, 2017, at 6:45 AM, Paula Moad <maepj48@gmail.com> wrote:

Duffy,

I am hoping you read this before work this morning.  I am sending this via my personal email and computer from home in hopes Adam cannot access it.

I have been ordered not to talk to you.  After our chat yesterday, I was summoned to David's office, where he and Joyce told me how wrong I was.  Will share more details with you later.

Joyce's asked if I told you about D's charges.  I said "No"; I had sent you an email saying that we had a problem.  Did not tell them I had asked your permission to call HR.

Seems you are my only ally & friend at HEC.  I am sure they will speak to you about me some time today.

Thanks,
Paula

*Exhibit #3*

COMMONWEALTH OF VIRGINIA

# EMPLOYEE GRIEVANCE PROCEDURE

## GRIEVANCE FORM A

## I. Grievance

| Employee's Full Name:<br>William Duff Carmack | | CFO | |
|---|---|---|---|
| Agency Name:<br>Southwest Virginia Higher Education Center | | Facility Name:<br>Southwest Virginia Higher Education Center | |
| Home Address: | Work Telephone No. | | Home Telep276-628-7522<br>Home E-mail Address: |
| Date Grievance Occurred:<br>November 14, 2017 | Role Title:<br>Supervisor of Testing Center | | |

**The issues are** (use attachments if necessary):

Agency HR Director (Joyce Brooks) bullies and harasses employees. She exhibits hostile behavior toward CFO William D. Carmack as well as other staff members. If an employee from another department stops by finance to ask a question they are reprimanded by her and asked the nature of the conversation.

She has a long history, well known by all staff, of lying to and bullying employees and often playing favorites. Approximately 3 years ago, she hired her son Steven Brooks to work part time in Conference Services Department which she supervised. Information Technology employee, Adam Tolbert has been pre-selected to replace Mrs. Brooks if she retires. Adam has access to all confidential information about agency employees including reviews, salaries, etc. Mr. Tolbert is a prominent member of a political party and is rewarded over others by Agency Head, David Matlock, for this position. Mr. Matlock has stated publicly that he trusts Adam over anyone else.

Paula Moad, wage employee, is the supervisor for our Testing Center. Paula is a retired school administrator, well educated and professional. On November 14, 2017 Mrs. Brooks and Mr. Tolbert approached Paula and reprimanded her for contacting UVA Human Resources to inquire on the status of two pending job offers for part time staff in the testing center. On October 23, 2017 an interview committee comprised of Paula, William Carmack, Deborah Hensley, Hannah Hietala, and Austin Derks interviewed candidates for the position. Interviews were completed by October 23, 2017 and the selected candidates were given to Mrs. Brooks. Days later she started asking for documentation during the interview process that was not available. (Had she told us of the need for this information we would have been happy to have provided it.) After the 2 candidate names were given to her, she brought 4 more applications to me and ask why we did not hire them? I had no awareness that the job posting was still open. She is passive aggressive and does not communicate with most members of the Center. 3 weeks passed, and the candidates did not receive an offer from UVA. During this time, Mrs. Brooks opened a job posting in Conference Services, which she supervises, advertised, interviewed, selected and hired the 3rd child of Kathy Hietala who is Mr. Matlock's administrative assistant and good friend of Mrs. Brooks. Mrs. Brooks trolls back and forth in front of my office multiple times per day. There is no communication between she and many of the employees within the building. She uses most conversations against the person in a twisted derogatory way. Though it may appear logical that I could have asked her the status of the pending applicants, it was not practical and I am sure there would have been negative repercussions towards me.

Paula Moad called UVA HR on November 14, 2017, with my awareness, to inquire of the status of the pending job offers. The UVA employee was very helpful and stated that they had only received the applications within the past week. Later during the day on November 14th Mrs. Brooks and Adam Tolbert approached Mrs. Moad and reprimanded her for calling UVA directly. She was told that all personal matters belonged to Mrs. Brooks. I have no doubt that this was retaliation directed against me. She could have approached me as the manager of the Testing Center to express her concerns. I recently filed a hotline report to the OSIG in which she was named. Since that time, I have been ostracized by her and the Center Director. There is ZERO communication with me or others within the finance department about information we need to do our job correctly and maintain the financial integrity of the Agency! As far back as July 2017 I am the only member of senior management that does not have a weekly meeting with the Center Director as indicated on his calendar. When awareness of the OSIG complaint was known, I was blocked from seeing the Directors calendar. I consider this a retaliatory act. I consider Mr. Matlock's exclusion of me from operations at the Center an act of hostility hoping that I will leave. I have made multiple offers to assist him since his arrival two years ago. As Interim Director I had a great deal of knowledge and information that needed to be transferred to him. He refused my multiple offers to work with me on a managerial level. However, he had no problem in giving control to Joyce Brooks and Adam Tolbert. This action has been noticed by many and often commented upon. The hostile behavior toward me is witnessed by the College Partners that are housed in the Center along with employees.

**The facts supporting this are** (use attachments if necessary):

**The relief I want is** (use attachments if necessary): I request that the Commonwealth send a third party into the Center to interview employees and clearly see the negative repercussions that ineffective leadership has created. As an employee of the State of Virginia we deserve to work in a safe, pleasant and healthy environment. I have no trust in private conversations with Mr. Matlock. I request a third party mediation to work through by concerns with him.

| Date: 11-14-17 | Employee's Signature: *William D. Carmack* |
|---|---|

*Grievances must be submitted within 30 calendar days of the date the employee knew or should have known of the issue being grieved. The Grievance Procedure Manual, available on EEDR's website, contains complete instructions for initiating, processing, and pursuing grievances. Contact the Office of Equal Employment and Dispute Resolution (EEDR) if you have any questions.*

*Exhibit #3*

## OFFICE OF EQUAL EMPLOYMENT SERVICES

**Name:** William J Carmack          **Case No.** _____

### WITNESS IDENTIFICATION LIST

Please complete for any person(s) that you feel may have important information about your complaint and that you want this office to interview.  Provide a brief statement concerning what information you believe this witness can provide (you may attach additional sheets).  **Please return this form within three days.**

(1)     Witness Name:     Paula Mead

         Home Phone #:

         Work Phone #:     _____

BRIEF STATEMENT:

Reprimanded for Contacting UVA Human Resources to find out status of job offer to Testing Center Post. Mrs Brooks Accompaind by Adam Tolbert Confronted me and Chastised me for Calling UVA for information.

(2)     Witness Name:     _____          Mrs Brooks is too
         Home Phone #:     ( ) _____      difficult to ask such
         Work Phone #:     ( ) _____      questions too !

BRIEF STATEMENT:

_____

_____

_____

_____

(3)     Witness Name:     _____

         Home Phone #:     ( ) _____

         Work Phone #:     ( ) _____

BRIEF STATEMENT:

_____

_____

_____

_____

**Duffy Carmack**

| | |
|---|---|
| **From:** | Griffin, Elizabeth M. <EGriffin@oag.state.va.us> |
| | Tuesday, February 21, 2017 9:54 AM |
| **To:** | Duffy Carmack |
| **Cc:** | David Matlock |
| **Subject:** | RE: Tobacco Scholasrhip Program |

Duffy –

Thanks for the message.  I am not sure why you would not have been receiving my emails.  I had appointments scheduled on Friday, which is why I was not able to join the impromptu call.  I will follow up with Elizabeth Myers today.  Would you please send me a Word version of the draft rules so we can make edits?

Thanks –
Elizabeth

**M. Elizabeth Griffin**
**Senior Assistant Attorney General**
**Office of the Attorney General**
202 North 9th Street
Richmond, Virginia 23219
(804) 692-0474 Office
EGriffin@oag.state.va.us
http://www.ag.virginia.gov



Carmack 000134

**ffy Carmack**

| | |
|---|---|
| **From:** | Duffy Carmack |
| **Sent:** | Wednesday, February 22, 2017 11:26 AM |
| **To:** | 'Griffin, Elizabeth M.' |
| **Subject:** | RE: TRRC Education Loan Program |

Elizabeth,
I think we are communicating now via email.  Thanks for your patients!
Duffy

**From:** Griffin, Elizabeth M. [mailto:EGriffin@oag.state.va.us]
**Sent:** Tuesday, February 21, 2017 2:55 PM
**To:** Patricia Ball <pball@swcenter.edu>; David Matlock <dmatlock@swcenter.edu>
**Cc:** Myers, Elizabeth B. <ebmyers@oag.state.va.us>; Duffy Carmack <dcarmack@swcenter.edu>
**Subject:** RE: TRRC Education Loan Program

Thank you, Pat.  Duffy – please let me know if you receive this message.

Elizabeth

**From:** Kathy Hietala

**Sent:** Thursday, July 26, 2018 3:54 PM

**To:** HEC Facility

**Subject:** HirEd Summer Celebration and Retiree Recognition:  Thurs, Aug 9th fr/11:30am - 1:30pm

**Attachments:** HirEd Summer Celebration 2018.pdf

Hello, friends—Below is your invitation to and information about our Summer Celebration and Retiree Recognition.

If you would like to contribute to Joyce's and Janet's gifts, please deliver your contribution to Claire and sign their cards by Friday, August 3rd.

If you would like to attend the event, please email me by Friday, August 3rd, so that I will have an accurate headcount for the caterer.

1

Carmack 000233

# Summer Celebration

## and

## Retiree Recognition

Thursday, August 9th
11:30 a.m.—1:30 p.m.
Room 103 and/or Patio



Please join us for a time of food, fellowship and fun as we gather to celebrate with our most recent retirees, as well as others from our ranks who have been enjoying retirement a while longer.

Matt Sky of Bristol Gardens & Grill will provide the meal:
Ribeye Steak
Baked Potato
Salad
Dessert

Please RSVP to lahieri.isa@swcenter.edu by Friday, August 3rd.

Since we did not have an opportunity to present Joyce and Janet with gifts prior to their departure in January, we are taking up money to get something special for each of them. Cards for Janet and Joyce are at the reception desk in Admin, where you may also make a donation to their gifts.

Carmack 000234

< Recent

Val Lyle

 

> Val, great to hear from you. YES, the mobile has been missing for a long time. I am very glad that someone is inquiring about that. The plaque is still on the wall but no mobile. Keep asking questions. ASK questions in the news paper or on social media. There are a lot of issues about to surface about David Matlock. What a disrespectful act toward Rachel for David to remove the. Mobile.

I had (tried to) work with him at VHCC and knew him to be a dreadful human being, and was shocked when he was

Carmack 000235

 Facebook

‹ Recent

10:57 AM

Val Lyle ›

I had (tried to) work with him at VHCC and knew him to be a dreadful human being, and was shocked when he was hired there. He and I have discussed it in passing several times since I first saw it missing long ago. He said there was a roof leak so they took it down when they replaced ceiling tiles and installed a new roof. Once he showed it to me all in parts on the floor behind the curtain. I was shocked but said nothing as there was so much wrong with what happened. He called me last week saying he wants it back up for a big board meeting

Carmack 000236

 

Val Lyle

up for a big board meeting very soon, so I am scheduled to help re-install this coming Sat afternoon. I've hired an expensive lawyer who is making me a contract for him to sign saying I have no ownership and no liability-they were crazy to take that down with out me, and no telling if it will balance after being man-handled! I am going to swap out the top bar for a thicker straighter one though, while it's down, so hopefully it will look better. They said they cleaned it-god knows with what...



Is Rachael still involved there? What does she think

Carmack 000237

being man-handled! I am going to swap out the top bar for a thicker straighter one though, while it's down, so hopefully it will look better. They said they cleaned it- god knows with what...



Is Rachael still involved there? What does she think of his performance? He told me he plans to turn the commercial kitchen into a makers space because the kitchen doesn't make enough money. That's crazy!!!



Rachel has retired and I'm sure heartbroken over the

 Facebook 10:57 AM

‹ **Recent**

Val Lyle ›

Center

I was forced to report him to the Office of Inspector General in June of 2017 for fraud waste and abuse. I was to be protected under the Federal Whistle Blower Act. He defied the act and terminated me. I have a large law suite in Federal Court against him and the Board of Trustees. I have asked the Bristol Hearld Courier to publish my story within the next week. He has screwed over many people. I hope they all come forth and put an end to his career.

Yes I knew she retired but at

Carmack 000239

 Facebook

Recent

Val Lyle

Trustees. I have asked the Bristol Hearld Courier to publish my story within the next week. He has screwed over many people. I hope they all come forth and put an end to his career.

Yes I knew she retired but at the celebration she was talking about counting down the days she had to be not associated with it before she could come back in some part time situation or at least heavy volunteering...



Val, he wants it back up because I named it as being missing in the suit. It is no different than stealing a

Carmack 000240



Facebook 10:57 AM

‹ Recent

Val Lyle ›

 


part time situation or at least heavy volunteering...

Val, he wants it back up because I named it as being missing in the suit. It is no different than stealing a $9,000 piece of art from the wall. He lies about everything. You are smart to have a contract with him.


Oh my. I'm so sorry that happened to you. Yes I hope so too, Duffy.

Thank you for your caring about the mobile! I loved working with you to create it as a moving work of art honoring Rachels work. It

Carmack 000241

 Facebook   10:57 AM

‹ Recent     Val Lyle ›

wall. He lies about everything. You are smart to have a contract with him.

 Oh my. I'm so sorry that happened to you. Yes I hope so too, Duffy.

Thank you for your caring about the mobile! I loved working with you to create it as a moving work of art honoring Rachels work. It was the perfect thing to honor her. Terrible how a small mind like his can ruin the collaboration of so many!

He was so consumed with football at VHCC he started a flag football team and told

Carmack 000242

 Facebook

< Recent

10:58 AM

Val Lyle  >

honor her.  Terrible how a small mind like his can ruin the collaboration of so many!

He was so consumed with football at VHCC he started a flag football team and told several of my male students they could miss more than half my class to play on a regular basis- he would  give them permission and "excuse" them -like he even had that authority!



He is the center of the universe in his mind!

He talked with me about making (another?!?) LOVE sculpture to put in front of

Carmack 000243

 Facebook    **10:58 AM**

Val Lyle

‹ Recent     

> He is the center of the universe in his mind!

 He talked with me about making (another?!?) LOVE sculpture to put in front of the building– like how many other places have? And about a clock like they have at VHCC to go in the little circle at the drop off entrance...I'm thinking all this man knows is how to "copy!"

 Good luck with your lawsuit Duffy. Let me know what I can do to help.

> You are 100% correct on that! He takes credit for

Carmack 000244

  **Facebook**   10:58 AM

**Val Lyle**

 

‹ **Recent**

 about a clock like they have at VHCC to go in the little circle at the drop off entrance...I'm thinking all this man knows is how to "copy!"

 Good luck with your lawsuit Duffy. Let me know what I can do to help.

> You are 100% correct on that!  He takes credit for everything that anyone else does.  He is too limited to have creative or intellectual thoughts of his own

Now that I think about it, there was a special fund that generated a modest amount

Carmack 000245

**Southwest Virginia Higher Education Center**

**Resolution of the Executive Committee of the Southwest Virginia Higher Education Center**

WHEREAS, Virginia Code § 23-231.5 gives the Board of Trustees of the Southwest Virginia Higher Education Center ("the Center") the authority to appoint an Executive Director of the Center; and

WHEREAS, Virginia Code § 23-231.5 further gives the Board of Trustees of the Center the authority to determine the duties of the Executive Director and of other staff of the Center; and

WHEREAS, the Board of Trustees on June 11, 2015, named W.D. "Duffy" Carmack as Interim Executive Director until the appointment of a permanent Executive Director.

NOW, THEREFORE, BE IT RESOLVED AS FOLLOWS:

1. The Interim Executive Director **shall** maintain the current status and normal operational duties of the Center until such time as a new Executive Director is appointed and employed.

2. The scope of duties of the Interim Director of the Center **shall not** include the following actions:

   a. The hiring of new, or promotion, demotion or termination of current, full-time personnel;
   b. Any organizational structure changes;
   c. Any major unplanned purchases over the monthly operational budget amount without approval of the Board of Trustees;
   d. Any facility structural changes; and
   e. Any new contractual commitments over the monthly operational budget amount without approval of the Board of Trustees.

Date: _July 30, 2015_

By: _Charles W. Carrico Sr._

Charles W. Carrico, Sr.

Chairman
Board of Trustees
Southwest Virginia Higher Education Center

Carmack 000278

 **A Partnership of Top-Ranked Universities with a Space for You.**   

Home  /  Bylaws

# Bylaws

## I. Organization

The Southwest Virginia Higher Education Center is a state agency (#948) established in 1991 by the Virginia General Assembly.

## II. Partners

Virginia Highlands Community College, the University of Virginia's College at Wise, Old Dominion University, Radford University, Emory & Henry College, Virginia Polytechnic Institute and State University, and the University of Virginia are the partners of the Southwest Virginia Higher Education Center. The Center works cooperatively with the private colleges in the area; King University and Bluefield College.

## III. Mission

The mission of the Southwest Virginia Higher Education Center is to provide undergraduate and graduate credit courses and degree programs as well as noncredit educational opportunities in the southwest region.

## IV. Objectives

The objectives of the Southwest Virginia Higher Education Center are to:

A. promote and coordinate undergraduate and graduate degree programs, non-degree courses, and non-credit continuing professional education in a manner

Carmack 000279

that is comparable in quality to member institution's on campus programs and courses;

B. facilitate the delivery of teacher training programs leading to recertification and graduate degrees;

C. serve as a resource and referral center by maintaining and disseminating information on existing educational programs and resources; and

D. develop, in cooperation with the State Council of Higher Education for Virginia, specific goals for higher education in Southwest Virginia.

## V. Governing Board

A. The Center shall be governed by a Board of Trustees, consisting of the Director of the State Council of Higher Education for Virginia or his/her designee, the Chancellor of the Virginia Community College System or his/her designee, the presidents or their designees of Virginia Polytechnic Institute and State University, the University of Virginia, the University of Virginia's College at Wise, Old Dominion University, Radford University, Emory & Henry College and Virginia Highlands Community College, and five citizen members to be appointed by the Governor, representing southwest Virginia public education and area business and industry, including one school division superintendent and one public school teacher.

B. Legislative members and the representatives of the State Council, the Virginia Community College System, and the named institutions of higher education shall serve on the Board until the expiration of their terms of office or until their successors shall qualify. Of the five citizen members to be appointed in 1991, two shall be appointed for three-year terms of office, and three shall be appointed for four-year terms. Thereafter, all such citizen appointments shall be for terms of four years, except that appointments to fill vacancies shall be for the unexpired terms.

No citizen member of the Board shall be eligible to serve for or during more than two successive four-year terms, but after the expiration of a term of three years or less, or after the expiration of the remainder of a term to which appointed to fill a vacancy, two additional four-year terms may be served by such member if appointed thereto.

Carmack 000280

C. Legislative members of the Board shall be compensated as specified in Section 14.1-18 of the Code of Virginia, and all members of the Board shall be reimbursed for their actual expenses incurred in the performance of their duties in the work of the Center.

D. Powers of the Board shall include:

1. All the corporate powers given to that title. The Board shall also have the power to accept, execute, and administer any trust in which it may have an interest under the terms of the instrument creating the trust.

2. The authority to establish and administer agreements with public institutions of higher education in the Commonwealth to provide graduate level instructional programs at the Center. The Board shall be empowered to establish and administer agreements with the University of Virginia's College at Wise for the provision of upper level undergraduate instructional programs at the Center and with Virginia Highlands Community College for the provision of associate degree instructional programs at the Center.

E. Major responsibilities of the Board of Trustees are to:

1. formulate policy to guide administration, financing, and coordination of the Center and programs;

2. evaluate local needs and communicate their assessment to member institutions;

3. apply for, accept, and expend gifts, grants, or donations from public or private sources to enable it to carry out its objectives;

4. approve a yearly budget for Center operations;

5. approve contracts for programs and facilities;

6. employ and evaluate personnel to operate the Center;

7. evaluate the operation of the Center, including the contributions of member institutions;

8. approve membership of additional institutions in the Center;

Carmack 000281

9. determine standards for retaining institutional membership in the Center and approve continued membership;

10. establish the necessary committees for the Board of Trustees to discharge its functions and appropriately delegate responsibility to such committees;

11. act on those recommendations brought forward from Center committees; and

12. monitor Center finances.

## VI. Officers

A. The Board of Trustees shall elect the following officers from its membership for two-year terms of office: Chairperson, Vice-Chairperson, and Secretary. Vacancies may be filled or new offices created and filled at any meeting of the Board.

B. An officer is eligible to serve two consecutive terms.

C. The Chairperson shall be the principal officer of the Center and, subject to the control and direction of the Board, shall have general control of the affairs of the Center. S/he shall be the presiding officer of both the Board of Trustees and the Executive Committee. S/he shall, in general, perform all duties incident to the office of Chairperson and such other duties as may be prescribed by the Board from time to time.

D. The Vice-Chairperson will serve a Chairperson of the Building Committee. S/he shall perform duties that may from time to time be assigned to him/her by the Board of Chairperson.

E. The Secretary shall keep a record of all proceedings of Board meetings and Executive Committee meetings. S/he shall perform all duties incident to the office of secretary and such other duties that may be assigned to him/her by the Chairperson or by the Board.

## VI. Board Of Trustee Meetings

A. The Board of Trustees will hold two meetings per year, one of which will be an annual meeting at which time elections for officers will be conducted.

B. Additional meetings may be called by any three members of the Board provided that each member is given two weeks notice.

C. A majority of the members of the Board of Trustees shall constitute a quorum for any business meeting. Action of the Board must be authorized by the affirmative vote of a majority of that quorum.

D. If a member of the Board is unable to attend a meeting of the Board, the member, after notifying the Center Director personally or in writing, may designate a representative to attend in his/her place with power to vote for the member.

## VIII. Committees

The following permanent committees are established to facilitate the planning and management functions of the Center: executive, nominating, facilities, and program. The Chairperson of the Board will appoint committee members for a term of three years to ensure consistency in decision making. Unless otherwise stated, membership on each committee shall be comprised of one Board member or designee from each partner institution, one legislative member of the Board, one citizen member of the Board, the executive director of the Center and any additional members deemed appropriate by the chairperson. Committees shall keep regular minutes of their proceedings and report them to the Board for its information. A majority of the members of a committee are required in order to transact official business. Actions of any committee must be authorized by the affirmative vote of a majority of that quorum.

A. Executive Committee

1. shall have and exercise all of the authority of the Board in managing the Center as designated by the Board. However, the Executive Committee shall not have the authority of the Board to amend, alter or repeal the Bylaws; elect, appoint or remove any officer of the Board; amend, alter or repeal any resolution of the Board which by its terms provides that it shall not be amended, altered or repealed by the Executive Committee;

Carmack 000283

2. shall be composed of the officers of the Board of Trustees (Chairperson, Vice-Chairperson, and Secretary) and the president, chancellor or his/her designee of the partner institutions; and

3. Shall meet when and where the Executive resolves to do so.

4. The Chairperson of the Board shall serve as the presiding officer of the Executive Committee.

B. Nominating Committee

1. shall consist of three Board members who are not currently serving as officers of the Board;

2. shall include one legislative member, one higher education member, and one legislative member; and

3. shall meet prior to the annual meeting or as needed to nominate the officers of the Board of Trustees.

C. Facilities Committee

1. shall oversee the design, construction, and furnishing of the Center, review bids, and negotiate contractual terms;

2. shall recommend policy for the use and payment of space in the building;

3. shall be chaired by the Vice-Chairperson of the Board of Trustees; and

4. shall meet as often as necessary to ensure timely counsel that advances the building process.

D. Program Committee

1. shall have oversight for the scope and programs of the Center including their need, admission, remediation, retention, and discontinuation;

2. shall develop a long range plan of non-credit, credit, and degree programs for the Center to be presented at the annual meeting of the Board;

Carmack 000284

3. shall be appointed by the Chairperson of the Board and shall include representation from each partner institution, all institutions involved in program planning or delivery, and Board members as designated;

4. shall meet at least twice a year; and

5. shall elect its own chairperson from the committee membership.

## IX. Executive Director Of The Center

A. The Executive Director of the Southwest Virginia Higher Education Center is employed by the Board to provide leadership for the administrative and planning functions of the Center.

B. Terms of Employment

The executive director shall be employed for a three-year term with an annual review conducted by the Board.

C. Major duties are to include the following:

1. develop plans for long term educational programs and financial stability;
2. advise and seek the advice of the Board on pertinent issues and areas requiring policy clarification;
3. implement Board policies;
4. establish guidelines for efficient and sound fiscal management;
5. in accordance with prudent and acceptable practice, deposit and disburse moneys and valuables of the Center as authorized by the Board;
6. stimulate the development of innovative programs and delivery systems;
7. assess and communicate to participating institutions the education needs of the community;
8. coordinate with participating institutions the curriculum to be offered, facilities required, student advisory services; registration and academic fees;
9. serve as a liaison to the Board and all Center committees;
10. organize and maintain a system to gather and analyze data for managing the Center and for providing reports to the Board, state agencies, and participating institutions;
11. develop and maintain public relations and public information programs;

Carmack 000285

12. employ, evaluate, and terminate Center staff according to the Board authorization;

13. ensure that the building is properly maintained and secured; and

14. discharge other responsibilities assigned by the Board of Trustees.

## X. Finances

The University of Virginia shall serve as the fiscal agent for the Southwest Virginia Higher Education Center. The Center will follow the University's policies and regulations in regards to all financial matters.

## XI. Students

A. Prior to acceptance in any course, a student must comply with the requirements of the offering institution and meet the prerequisites of the course.

B. Advising and counseling of students remains the responsibility of the institutions.

C. It is the policy of the Center to maintain and promote equal employment and educational opportunity without regard to race, color, sex or age (except where sex or age is a bona fide occupational qualification), religion, disability, national origin or other non-merit factors.

## XII. Amendments

These Bylaws may be altered, amended or repealed and new Bylaws adopted by a majority vote of the Board present at any meeting of the Board at which a quorum is present. Bylaws and amendments that involve academic issues must be reviewed by the Program Committee prior to final Board consideration.

Carmack 000286

### RECENT NEWS

PRESS RELEASE: YOUNG ARTIST'S WORK ON DISPLAY AT THE SOUTHWEST VIRGINIA HIGHER EDUCATION CENTER

Public Notice of Southwest Virginia Higher Education Center's Executive Committee Meeting

Cisco Networking & Cybersecurity Academy

Public Notice of Southwest Virginia Higher Education Center's Executive Committee Meeting

### FROM TWITTER

The free Telehealth Certification is available to residents of, or practitioners serving, the Virginia Tobacco... https://t.co/EwNt1I11CByesterday

Chop! Chop! Hurry to reserve your spaces now! https://t.co/Qt3wPwX7Dtyesterday

One Partnership Circle
PO Box 1987
Abingdon, VA 24212
(276) 619-4300
info@swcenter.edu

Copyright Southwest Virginia Higher Education Center. All rights reserved.

Carmack 000287



# HRM-030: Recruiting and Hiring of University Staff and Wage Employees

Date: 12/12/2009 Status: Final
Last Revised: 08/19/2016
Policy Type: University
Contact Office: Consulting Services (UHR)
Oversight Executive: Vice President and Chief Human Resources Officer
Applies To: Academic Division and the College at Wise.
Table of Contents:

Policy Statement

1. Posting the Job
2. Use of a Search Committee
3. Evaluating the Successful Candidate
    a. Veterans
    b. Testing
    c. Reference Checks
    d. Background Checks
4. Offer and Acceptance of Employment
    a. Accepting Staff Job Openings
    b. Finalizing the Hiring Process
5. Wage Employees
6. Restrictions on Employment
    a. Employment of Minors
    b. Employment of University Retirees
    c. Employment of Spouses and Dependents
7. Roles and Responsibilities

Procedures

Reason for Policy:

The University of Virginia is committed to hiring the most qualified person for each position while ensuring equal employment opportunity to all qualified individuals. The policy

Carmack 000296

provides guidelines for an efficient and competitive hiring process that produces the highest quality applicant pools and promotes equal employment opportunity.

Policy Summary:

This Policy describes recruitment and hiring policies and certain employment restrictions for all University staff employees and wage employees.

Definition of Terms in Statement:
- Executive & Senior Administrative Staff (E&SA):

  University staff employees on limited term appointments having significant administrative responsibilities and duties and exercising considerable independent discretion, and having the ability to commit the University to a long term course of action. This category includes:

  ◦ University Executive officers including Vice Presidents and the Athletic Director but excluding academic administrators (whose primary responsibility is administrative but who oversee an academic or academic-support unit of the institution) such as the Provost, Deans, University Librarian, and VP Research;
  ◦ Members of the President's professional staff (e.g. Chief of Staff, Chief Audit Executive; Director, Equal Opportunity Programs; etc.); and
  ◦ Senior administrative officers with a direct reporting line to any of the above-named executives, academic administrators or Presidential professional staff, for example, Associate or Assistant Vice Presidents, Associate or Assistant Deans with administrative responsibilities, Vice Provosts with administrative responsibilities, Executive Directors, Directors, or other key senior staff; and
  ◦ Head and Associate Head Coaches/Coordinators on individually negotiated contracts.

- Limited Term Appointment:

  A University Executive & Senior Administrative staff position having a defined term renewable for successive terms, usually ranging from one to three years.

- Managerial & Professional Staff Employee (M&P):

  University staff employees who manage a division or subdivision of a major academic or administrative unit and/or exercise significant knowledge, discretion and independent judgment gained through advanced education or experience. This category includes coaches, other than Head or Associate Head Coaches/Coordinators, on individually negotiated contracts. M&P Staff are typically exempt employees under the provisions of the Fair Labor Standards Act (FLSA), and therefore not subject to the FLSA provisions governing the payment of overtime.

- Operational & Administrative Staff Employee (O&A):

  University Staff employees performing office, laboratory, student and library support; building construction and maintenance; equipment services; public safety; and other operational responsibilities. O&A Staff are typically non-exempt employees under the

Carmack 000297

provisions of the Fair Labor Standards Act (FLSA), and therefore are subject to the FLSA provisions governing the payment of overtime.

- Underutilization:

  Occurs when the University employs fewer females and minorities in a particular job group than would be reasonably expected based on their availability in the relevant geographic recruiting area [per Executive Order No. 11.246 (September 28, 1965)].

- University Staff Employees (University Staff):

  Those salaried, non-faculty employees hired on or after July 1, 2006, and those salaried non-faculty employees and administrative and professional faculty electing to participate in the University Human Resources System established by the Board of Visitors under the authority granted by the Restructuring Act and the Management Agreement. (The term "University Staff Employee" includes all three categories of University Staff Employees - Operational & Administrative, Managerial & Professional, and Executive & Senior Administrative.)

  ◦ Management Agreement:

    The agreement between the University and the Commonwealth required by Subsection D of §23.1-1004 of the Restructuring Act.

  ◦ Restructuring Act:

    The Restructured Higher Education Financial and Administrative Operations Act, Chapter 10 of Title 23.1 of the Code of Virginia.

- Wage Employee:

  An employee whose terms and conditions of employment stipulate an hourly rate of pay rather than a fixed salary and who is paid on an hourly basis for actual hours worked. Wage employees are not eligible for leave or other benefits. These employees are not covered by the Virginia Personnel Act and are non-exempt for purposes of overtime compensation as defined by the Fair Labor Standards Act.

Policy Statement:

The University's recruiting and hiring process strives to achieve an excellent workforce with representation and participation from all of the diverse sectors of our society. University Human Resources (UHR) coordinates the recruiting and hiring process for all staff positions (except for E&SA staff positions) and wage employees. The Office for Equal Opportunity and Civil Rights (EOCR) coordinates the recruiting and hiring process for all E&SA positions.

UHR oversees the recruiting and hiring process as outlined in this policy. EOCR provides oversight for adherence to equal employment and affirmative action laws, regulations and executive orders.

The primary objectives of the process are:

- recruitment of the best qualified candidates, matching the qualifications of the candidates to the needs and expectations of the hiring units;
- expeditious hiring of qualified candidates into vacant positions;
- participation of qualified candidates from underrepresented groups in applicant pools; and
- equitable and unbiased treatment of all candidates in the recruitment and hiring process in accordance with state and federal law.

1. **Posting the Job:**
   Once the hiring authority has approved the request to post the job opening, the hiring official creates the job posting in the online Jobs@UVa system. All University Staff positions must be posted in Jobs@UVa.  Postings are reviewed by UHR Consulting Services for M&P and O&A University Staff positions prior to posting. E&SA postings are reviewed by EOCR prior to posting. Contact UHR for access to and training on the Jobs@UVa system.

2. **Use of a Search Committee:**
   A search committee must be established for the recruiting and hiring of all E&SA University Staff positions. The hiring official should notify EOCR that a search committee is being formed for an E&SA University Staff position. All members of the search committee for an E&SA University Staff position are required to complete the online training provided by EOCR.

   The use of a search committee is optional for O&A and M&P University Staff positions. The hiring official is only required to notify EOCR for E&SA University staff positions. Whenever a search committee is used, the hiring official enters the names of the search committee members in the Jobs@UVa system. Regardless of the type of position, all search committee members are required to complete EOCR online training.

   An essential role of the search committee is to ensure that all applicants are considered equitably throughout the process.

3. **Evaluating the Successful Candidate:**
   The University's goal is to hire the best qualified candidate for each position. Based on the required and preferred qualifications of the position description, the hiring official will identify the specific criteria for each posting. The hiring official reviews the referred applicant information and must determine which candidates will be interviewed and ultimately select the final candidate. UHR is available to partner with the hiring official to identify posting criteria which maximizes the opportunity for a broad applicant pool as well as provide assistance in the development of interview questions and other screening resources. The University strives to achieve a diverse representation that matches the availability of underrepresented individuals (based on race, gender and ethnicity), and also any under-utilization for the position as identified in the University's Affirmative Action Plan.

   a. **Veterans:**
      Consistent with the requirements of the Va. Code §§ 2.2-2903 and 15.2-1509, a veteran's military service shall be taken into consideration by the University

during the selection process, provided that such veteran meets all of the requirements for the available position.

Additionally, if the position is filled using a scored test or examination, the grade or rating of an honorably discharged veteran must be increased by 5% or by 10% if the veteran has a service-connected disability rating fixed by the U. S. Department of Veterans Affairs.

b. **Testing:**
Informal evaluation of work samples is encouraged as a valuable source of information during the applicant evaluation process (either requested prior to or completed during the interview). As long as the work is not scored, it is not considered a formal "test." All scored tests used in the recruitment and selection process must be related to the work that will be performed. Departments may not use scored tests unless the Department has obtained a valid testing instrument that has been approved in advance by UHR. Testing is defined as any test that is scored and includes verbal or written tests, compositions, and skill tests, such as typing or word processing. (For more information concerning testing, contact <u>UHR</u>).

c. **Reference Checks:**
Authorization from candidates to contact references is included on the job application. (This authorization does not apply to conducting a background check. A separate document must be signed by the final candidate in order to conduct a background check.) At a minimum, references must be checked on the final candidate. However, checking references on other applicants may also be done. A written summary of reference checks, which includes questions, responses, and identities of individuals contacted is required and must be maintained on file in the department. If the applicant is a current or former UVa employee, the hiring official may review the UVa personnel file of those applicants selected as finalists.

d. **Background Checks:**
A background check provides a review of an individual's work and personal history to determine if a candidate is suitable for certain positions. A release form must be signed by the candidate in order to conduct a background check. The baseline background check conducted for all potential University Staff hires includes at a minimum:

- criminal history
- employment history, including references.

In addition to the baseline background checks, other checks will be conducted depending on the nature of the position for which the candidate is being considered, including, but are not limited to:

- verification of educational degrees, academic transcripts, licenses and certifications;
- credit reports;
- driving record;

- a fingerprint-based criminal history report;
- medical evaluations; and/or
- other records or information related to the candidate's suitability for the position.

A safety-sensitive position is one designated by the University as directly responsible for the health, safety and welfare of the general populace or protection of critical infrastructures. For these positions, a criminal history, including fingerprinting, must be obtained for the final candidate from the Federal Bureau of Investigation through the Department of State Police (Va. Code § 2.2-1201.1). In addition, some safety-sensitive positions (e.g., bus driver, policeman, security officer, direct patient care giver, etc.) may require the completion of a drug screen with satisfactory results.

With input from the department, UHR is responsible for determining the type of background check and for arranging for the background check to be conducted. Background checks will be conducted on candidates identified as finalists. Upon receiving the results of the background check, UHR will notify the hiring department as to whether the finalist is eligible for employment. A final written offer of employment is contingent on the results of background checks.

4. **Offer and Acceptance of Employment:**
All final offers must be made by a UHR Consultant or certain HR professionals within a department with pre-approved delegated hiring authority to extend job offers. The offer letter and the candidate's acceptance must be made in writing.

a. **Accepting Staff Job Openings:**

University staff employees who apply for and accept a different University Staff position will remain University Staff employees.

Classified Staff who apply for and accept a "Managerial & Professional" or an "Operational & Administrative" position may elect to become University Staff or choose to remain in their current "classified staff" status. Classified Staff who apply for and accept an "Executive & Senior Administrative" position must become a University Staff employee.

Current Administrative & Professional (A&P) Faculty who apply for and accept a "Managerial & Professional" or an "Executive & Senior Administrative" University Staff position may elect to become University Staff or choose to remain in their current "A&P faculty" status. A&P Faculty who apply for and accept an "Operational & Administrative" position must become a "University Staff" employee.

Academic faculty (teaching and research) who apply for and accept any University staff position must become a "University Staff" employee.

Current Professional Research Staff who apply for and accept a University staff position must become a "University Staff" employee.

Carmack 000301

b. **Finalizing the Hiring Process:**
Once a candidate accepts an offer, the hiring official is responsible for notifying all other applicants of the results of the search. Personal contact with interviewed candidates is encouraged.

New employees hired into benefit-eligible University staff positions and wage positions, must complete required paperwork, which may include the W-4/VA-4, I-9, benefit forms, payroll deposit authorization, selective service, etc. For the I-9, the Immigration Reform and Control Act requires an employee to complete an I-9 no later than close of business on the first day of work, and employers to certify the I-9 no later than the close of business on the third day of work. The University has implemented an automated (paperless) I-9 system. With several exceptions noted below, I-9s are completed by designated I-9 Specialists located within hiring departments:

- For new faculty, staff and wage employees: The I-9 is completed by the hiring department.
- For all student wage employees: The I-9 is completed by the hiring department.
- For temporary employees: The I-9 is completed by UHR.

[For more information, see policy HRM-022, Employment Eligibility Verification (Completing Form I-9).]

5. **Wage Employees:** Wage employment is considered "at-will" employment. This means a wage position is temporary in nature and may end at any time. Wage employees may work a maximum of 1500 hours per year, which begins each October 1 and ends September 30 of the following year. [Refer to HRM-029, Managing Staff Wage Employment.]

Temp employees are a type of wage employees. Departments may not hire temporary employees other than through UVA Temp Services, a UHR program designed to assist hiring departments with their temporary staffing needs.

UVA students enrolled full-time (with 12 credit hours or more) must apply for UVA employment through University Career Services (Handshake). Part-time UVA students may apply for employment through JOBS@UVA. Student employees may not be employed for more than 20 hours per week while school is officially in session.

6. **Restrictions on Employment:**

a. **Employment of Minors:**
Consistent with federal and state law, and with the exception of youth of any age performing in theatrical productions, the minimum hiring age for University employees is 14 years of age. Please consult with University Human Resources for limitations on permissible hours and times of day for 14- and 15-year olds. Certain positions that require the use of hazardous equipment or involve exposure to hazardous materials may require a minimum age of eighteen years.

Carmack 000302

The hiring department must be knowledgeable about federal and state regulations pertaining to minors with reference to hours of work, time records requirements, hazardous occupations, payment of wages, establishment of regular pay period, equal pay without regard to sex, discrimination because of physical handicaps, and the Minimum Wage Act (Code of Virginia §40.1-28.10 et seq.) and the Federal Fair Labor Employment Act 29 U.S.C. §201 et. Seq.).

b. **Employment of University Retirees:**
Employees who retire under the Virginia Retirement System (VRS) (including the University's Optional Retirement Plan) may work for any non-VRS employer and continue to receive retirement benefits. However, the retirement benefits of those employees returning to covered employment (i.e., typically full-time, permanent salaried employment with an employer participating in VRS), must stop.

Under some circumstances, a retired employee receiving benefits under VRS may continue to receive retirement benefits while working in a non-covered position (i.e., a part-time position with a VRS-participating employer that typically requires 80 percent or less of the hours of comparable full-time positions) not to exceed an average of 28 hours per week and 1500 hours per fiscal year. Former UVa employees, retired under VRS and working for the University in a wage capacity must have a bona fide break in service.  A bona fide break in service is a break of at least one full calendar month from the employee's retirement date over a period the employee would normally work. Periods of leave with or without pay do not count towards satisfying the break in service.

Hiring a retiree in a position that would be considered covered without reporting the retiree to VRS, or hiring a retired former employee in a non-covered position without a bona fide break in service may subject the University to liability for repaying any retirement benefits received by the retiree while working in the position.  The Code of Virginia also authorizes VRS to collect benefit overpayments from any employer (not the retiree) in cases where the employer does not comply with return-to work requirements.

[Faculty are covered by policy PROV-003, Part-Time Employment of Retired Members of the Faculty.]

c. **Employment of Spouses and Dependents:**
The University adheres to the State and Local Government Conflict of Interests Act (Va. Code §2.2-3100 et seq.), which provides that an employee shall not be in a position to exercise any control over the employment or the employment activities of a member of his/her immediate family and the employee is not in a position to influence those activities. Exercising control over the employment or the employment activities of an employee includes, but is not limited to, making decisions regarding initial appointment, retention, promotion, salary, leave of absence, and evaluation.

For purposes of this policy, a member of the immediate family is defined (per the State and Local Government Conflict of Interests Act) to include an

Carmack 000303

employee's spouse and any other person residing in the same household as the employee who is a dependent of the employee or of whom the employee is a dependent. A dependent is a person, whether or not related by blood or marriage, who receives from the employee or provides to the employee more than one half of his financial support.

7. **Roles and Responsibilities:**
The *hiring official* is responsible for:
- Adhering to UHR and EOCR recruiting and hiring policies and procedures;
- Proactively recruiting and hiring from a diverse applicant pool;
- Treating all candidates in an equitable and unbiased manner;
- Successfully completing EOCR's University Staff recruiting and hiring training;
- Providing input to UHR in determining types of background checks to be conducted;
- Contacting other applicants not selected for the position (including the finalists);
- Completing the I-9 forms according to federal guidelines as detailed in Section 4.b of this policy; and
- Complying with this policy.

The *Office for Equal Opportunity and Civil Rights* is responsible for:

- Providing oversight for the compliance of equal employment and affirmative action laws, regulations, and executive orders applicable to recruiting and hiring;
- Identifying any under-representation or under-utilization associated with a position;
- Facilitating and monitoring E&SA University Staff employee recruiting and hiring;
- Providing training regarding applicable laws and best practices for hiring officials and others involved in the recruiting and hiring process;
- Providing training regarding applicable laws and best practices for search processes to staff search committees for E&SA positions; and
- Developing and monitoring the University's Affirmative Action Plan.

*University Human Resources and Departmental Human Resources Professionals* with delegated hiring authority are responsible for:

- Advising hiring managers on best practices for recruitment and interview techniques, tools and resources;
- Designing and participating in recruitment outreach activities;
- Assisting hiring managers and search committees in the development of evaluation criteria for O&A and M&P staff positions;
- Serving as primary contact to applicants and hiring officials throughout the recruiting and hiring process;
- Determining appropriateness of posting requirements;
- Validating test instruments;
- Requesting background checks be conducted;
- Approving the terms and conditions of employment for University Staff hires and extending the official job offer;

Carmack 000304

- Overseeing the I-9 process and reviewing all I-9s;
- Completing the I-9s according to federal guidelines and as detailed in Section 4.b of this policy;
- Administering alternate staffing options (e.g., UVA Temps, etc.); and
- Overseeing the recruiting and hiring process to assist with compliance of the provisions contained in this policy.

Procedures:

**Final Written Offer of Employment:** A final written offer of employment will be extended when the (1) applicant recommended for hire provides authorization for the University to conduct the background check, and (2) results of the background check are complete and satisfactory. In certain compelling circumstances (such as if the duration of obtaining the results of a particular background check will significantly exceed the desired timeline for filling the vacancy), a final written offer may be extended prior to the completion of all background checks if, and only if, the Dean/VP of the school or department which will employ the new hire provides a written request to the appropriate UHR official (a) stating the circumstances for the accelerated action, (b) agreeing to assume the risk of the consequences of an unsatisfactory background check (e.g., that an offer may need to be rescinded), and (c) authorizing the extension of a final offer letter.

Hiring Procedures at U.Va.

- Criminal Convictions and Other Background Checks
- Delegated Hiring Authority (Procedure to Request)
- Dual Employment (Hiring of Current University Staff and Wage Employees into a Second University Job)
- Hiring and Employment of Students
- Hiring of Temporary Workers
- Jobs@UVa
- Pre-Employment Skills Testing
- Selective Service Compliance
- Veterans' Preference and Reemployment Rights
- Virginia Licensure or Certification Compliance

Related Information:

HRM-021, Terms and Conditions of University Staff Employment
HRM-022, Employment Eligibility Verification (Completing Form I-9)
HRM-024, Compensation Program for University Staff Employees
HRM-029, Managing Staff Wage Employment
PROV-003, Part-time Employment of Retired Members of the Faculty

Major Category: Human Resource Management
Next Scheduled Review: 07/30/2018
Approved by, Date: Executive Vice President and Chief Operating Officer, 12/12/2009
Revision History: Updated 8/19/16, 8/18/16, 7/30/15, 7/13/15, 5/28/13, 7/7/11, 3/30/11.

**Source URL:** http://uvapolicy.virginia.edu/policy/HRM-030

Carmack 000305

- Compensation
  - Compensation Structure
  - Merit Increases
  - Temporary Pay
  - Accessing Employee Salary Info
  - Rewards & Recognition Program
- Classification/Job Structure
- Job Families – Career Ladders
- Managing Employees
  - Coaching & Discipline
  - Claims of Harassment, Discrm. or Retaliation
  - Conflict Resolution & Mediation
  - Disability Accomodations
  - Employee Assistance Referrals
  - Employee Development
  - Faculty Reappointments
  - Flexible Work Arrangements
  - Employee Overtime
  - Remote Employees
  - Maintaining Supervisory Files
  - Managing Timecards
  - Motivating Employees
  - Retaining Employees
  - Side-by-side – 3 employee types
  - Telecommuting
  - Temp Employee Parking
- Separating Employees
- Training for Managers
- Forms
- Emergency Preparedness
- Procedures – How To
- FAQs
- Home

# Posting Positions in Jobs@UVa

This page concentrates primarily on the steps in Jobs@UVA to post and fill a position. For additional information on the University Advancement process, please review the process for posting/filling jobs page.

1. The supervisor has a vacancy and logs into Jobs@UVA to post. If changes need to be made on the position description (duties, work title, hours, etc.), this must be requested and approved prior to posting.
2. If the position description is complete and accurate, the supervisor follows the path "Create Posting" – "From Position". Enter position number and hit "search." Complete relevant tabs to design the ad to target the ideal candidate. Pay close attention to the knowledge, skills and competencies listed on the advertisement. If a candidate winds up not meeting these qualifications, **they cannot be hired**.

Carmack 000306

Policy: 2.05  EEO
Effective Date: 9/25/00
Revised: 5/16/06
Revised: 2/5/10

# EQUAL EMPLOYMENT OPPORTUNITY

*Application:   Full-time and part-time classified, probationary, "at will," and wage employees, and applicants for employment.*

# PURPOSE

Provides that all aspects of human resource management be conducted without regard to race, sex, color, national origin, religion, *sexual orientation, gender identity*, age, veteran status, political affiliation, genetics, or disability in accordance with the Governor's Executive Order on Equal Opportunity and state and federal laws. *(For the purpose of this policy, "disability" is defined in accordance with the "Americans with Disabilities Amendments Act" and "genetics" in accordance with Title II of the Genetic Information Non-Discrimination Act."*

*Policy amended January, 11, 2014 per Executive Order Number 1 (2014) Equal Opportunity.*

# AUTHORITY

The Department of Human Resource Management issues this policy pursuant to the authority provided in Chapter 12, Title 2.2 of the Code of Virginia.

The Director of the Department of Human Resource Management is responsible for official interpretation of this policy, in accordance with Chapter 12, Title 2.2 of the Code of Virginia. Questions regarding the application of this policy should be directed to the Department of Human Resource Management's Office of Agency Human Resource Services

The Department of Human Resource Management reserves the right to revise or eliminate this policy.

# PROVISIONS OF THE GOVERNOR'S EXECUTIVE ORDER

**Prohibits Discrimination**
- Prohibits employment discrimination on the basis of race, sex, color, national origin, religion, age, veteran status, political affiliation, genetics, or against

1

Carmack 000307

Policy: 2.05  EEO
Effective Date:  9/25/00
Revised:  5/16/06
Revised:  2/5/10

otherwise qualified persons with disabilities.
- Does not permit the lowering of *bona fide* job requirements, performance criteria, or qualifications in order to give preference to any state employee or applicant for state employment on the basis of the above prohibitions.
- Prohibits all employees, including agency heads, managers, and supervisors, from taking retaliatory action against any person making allegations of violations of the Executive Order.

### Emphasizes Recruitment Efforts
Directs agency heads and managers to take measures, as determined by the Director of the Department of Human Resource Management (DHRM), to emphasize the recruitment of qualified minorities, women, persons with disabilities, and older persons to serve at all levels of state government.

### Provides Procedures for Alleging Violations of Executive Order
Any state employee or applicant for state employment may file an allegation of violation of the Executive Order with the Office of Equal Employment Services (OEES) in the Department of Human Resource Management.

## EMPLOYMENT PRACTICES COVERED

The prohibition against employment discrimination applies to all aspects of the hiring process and employment practices, including:
- hiring, demotion, promotion, role change, in-band adjustment, layoff, and transfer;
- performance management and employee development;
- corrective actions, including disciplinary actions; and compensation, pay practices, benefits, and other terms, conditions, and privileges of employment.

## EXECUTIVE ORDER COMPLIANCE

All Cabinet secretaries, agencies and their employees are responsible for complying with the prohibition against workplace discrimination.

### Develop Policy Statement and Inform Employees
Each agency is required to develop an equal employment opportunity compliance policy statement, and to inform employees of the Executive Order and the agency's commitment to equal employment opportunity.

### Individual Responsibility/Job Performance
Agency heads, managers, and supervisors are responsible for their agencies' compliance with this policy, and for the consistent application of this policy. Support of equal employment opportunity initiatives shall be considered in the evaluation of each

2

Carmack 000308

Policy: 2.05 EEO
Effective Date: 9/25/00
Revised: 5/16/06
Revised: 2/5/10

manager's job performance. All employees are responsible for conducting themselves in a manner consistent with the Governor's Executive Order.

## Management/ Supervisory Training

Agencies are responsible for providing appropriate training opportunities covering all aspects of human resource management to ensure that policies, guidelines and pay practices are applied without regard to race, sex, color, national origin, religion, age, veteran status, political affiliation, genetics, or disability.

## EEO Compliance Review

In accordance with guidelines issued by DHRM, agencies shall provide complete and accurate data via the State's automated information system by August 1st of each year for the prior fiscal year to generate a statistical analysis report of employment related practices.

# DHRM RESPONSIBILITIES

The Office of Equal Employment Services (OEES) of DHRM is responsible for ensuring compliance with the Executive Order as outlined below.

## Distributes Executive Order

Distributes the Executive Order to state agencies along with explanation of its provisions and the state employment discrimination prohibition.

## Investigates Charges

- Investigates and resolves charges of unlawful discrimination or other violations of the Executive Order.
- Resolutions will be within the scope of established federal and state law and have the concurrence of the Office of the Attorney General.
- Resolutions shall be in writing and may include recommendations for monetary awards as well as recommendations for corrective and disciplinary actions.

## Conducts Compliance Reviews

- Conducts EEO compliance reviews and mandates appropriate corrective action to ensure fairness and equity in all employment practices.
- Reviews will be within the scope of established federal and state law.
- Corrective action shall be in writing and approved by the Director of the DHRM.

## Provides Assistance to Agencies

Assists agencies in their compliance with the equal employment opportunity provisions of the Executive Order by:

3

Carmack 000309

Policy: 2.05  EEO
Effective Date: 9/25/00
Revised: 5/16/06
Revised: 2/5/10

- Issuing guidelines, in accordance with Title 29, Part 1608 of the Code of Federal Regulations, and other applicable federal and state laws, for agencies required to maintain affirmative actions plans.
- Investigating complaints of unlawful discrimination and conducting compliance reviews upon the request of the Governor's Office or agency head.
- Conducting/coordinating training on equal employment laws and policies for state employees.
- Maintaining current lists of agency EEO officers and of groups representing women, minorities, and others who may be affirmatively recruited and making such lists available to interested persons.
- Acting as a reference source regarding information on equal employment opportunity for state government.
- Ensuring that agencies maintain appropriate human resource data for EEO reporting purposes in the statewide automated data system.

**Serves As Liaison with Federal Agencies**
Serves as liaison between the Commonwealth and federal agencies concerned with equal employment opportunity by:

- Assisting agencies in responding to federal inquiries regarding equal employment opportunity practices.
- Reporting for the Commonwealth as required by any federal agency concerned with equal employment opportunity enforcement.

## GLOSSARY

**BFOQ**
(*Bona fide* occupational qualification)-An exception to the restrictions of Title VII of the Civil Rights Act (1964) regarding discrimination on the basis of sex, religion, and national origin that, under certain conditions,  legitimately may require an employer to require an individual of a specific sex, national origin or religious affiliation to staff a certain job.

**Disability**
An individual is considered to have a disability if that individual either (1) has a physical or mental impairment which substantially limits one or more of his or her major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment.

Carmack 000310



HR For You        HR Services        Forms        Calendars        Contact Us

Self Service    Benefits    Performance    Jobs

# Jobs@UVa Information

Jobs@UVa is the University's on-line position description and applicant tracking system. It is used by departments/units to create and modify job descriptions, post vacancies, and hire new employees. It is used by applicants to apply for jobs that are open at the University.

**Position Descriptions**

Jobs@UVa is the official system that houses position descriptions at the University. Departments/units must use Jobs@UVa to create and update/modify job descriptions for University Staff and wage/hourly jobs.

**Posting a Job**

All job openings at the University are posted through the administrative login to Jobs@UVa. Postings for University Staff positions that are Managerial and Professional and Operational and Administrative are reviewed by HR Consulting Services prior to final posting as are wage jobs. University Executive Staff positions are reviewed by Equal Opportunity Programs (EOP) prior to posting.

**Applying for an Opening**

Applicants applying for employment opportunities at the University must complete an on-line application or candidate profile in Jobs@UVa. Applicants applying for University Staff positions that are Managerial and Administrative or Operational and Administrative complete a staff application. A staff application is also completed for wage/hourly openings. Applicants applying for temporary pool positions complete a Temp application. Applicants applying for a University Executive Staff position complete a Candidate Profile. Applicants may view and search job openings at the University at Jobs@UVa.

**Hiring an Applicant (Salary Determination and Employment Offer)**

Departments/units select their final candidate through Jobs@UVa. In the case of Managerial and Professional and Operational and Administrative University Staff positions as well as wage jobs, the departments/units recommend a salary through Jobs@UVa that is reviewed by University Human Resources (HR Consulting Services). HR Consulting Services works with the department/unit representative to establish a salary that is competitive with the market and consistent with the Pay Practices Program for University Staff Employees policy (HRM – 024). Salaries are determined by the applicant's educational background, experience, and job-related salary history; the type of

Carmack 000311

position; the competitive market range for the job, the impact to current employees' salaries in the department/unit and University; and the availability of funding. Once the salary has been determined, HR Consulting Services will officially extend an offer of employment to the final candidate on behalf of the University. Only HR Consulting Services is authorized to make offers of employment for Managerial and Professional and Operational and Administrative University Staff positions as well as wage jobs unless the department/unit has obtained a delegated hiring agreement with HR Consulting Services.

Departments/units select the final candidate and determine the salary directly in Jobs@Uva for University Executive Staff. HR Consulting Services is available to provide salary market information and assistance in arriving at a final salary. The employment offer is made directly by the hiring

**Text Version** | **Print Version** | **Problems Viewing Our Site**

Maintained by: **Human Resources**     Last Modified: 10-May-2010

**Notice of Non-Discrimination**

© Copyright 2010 by the Rector and Visitors of the University of Virginia

**Human Resources Phone:**
434.982.0123
**askhr@virginia.edu**

914 Emmet Street
P.O. Box 400127
Charlottesville, VA 22904

Carmack 000312

3. The supervisor ensures all persons who should have access to this action are appropriately "in the box". (This information may auto populate). Manager submits to Approver 1.
4. The Approver 1 reviews the action for completeness and accuracy. By approving and submitting to Approver 2 – Advancement HR, the Approver 1 is certifying that funding is available for the request.
5. The Advancement HR representative reviews the action for completeness and accuracy. The action will be routed back to the supervisor if additional edits are necessary. It may also be routed to additional approvers as necessary.
6. After the Advancement HR review, the action is submitted to University Human Resources (UHR). UHR reviews action and communicates any questions/comments. They may reroute the action back to the supervisor if significant updates are necessary.
7. The supervisor will receive an email when the job is posted and then can begin reviewing applications through Jobs@UVA immediately and has access 24 hours a day/7 days a week.
8. There is a five business day minimum posting time for internal postings before you can interview candidates. If the posting goes external, there is an additional ten business days before you can interview candidates.
9. The supervisor narrows down the applicant pool to 2-5 highest qualifying candidates. Three candidates must be interviewed and two reference checks must be completed on the finalist.
10. Throughout the recruitment, the supervisor must maintain the statuses of the applicants within the system. These statuses are essential for allowing Advancement HR and UHR to know what happened with each candidate and for legal reporting on applicant demographics.
11. Once a finalist has been identified and the status changed to "Interviewed, selected for hire", a link will be created for a Hiring Proposal.
12. The supervisor fills out the Hiring Proposal and the request is submitted to the appropriate Approver 1 who then submits to Advancement HR.
13. Advancement HR reviews request and obtains approval for salary and completes the background check.
14. **Advancement HR makes the job offer.**
15. Upon acceptance of a job offer, candidates that interviewed but were not selected will be personally contacted by the hiring manager or by Advancement HR.  All other candidates not selected are notified via email of the status of the position. Additionally, candidates may review the status of their application at any time via Jobs@UVA.

***University Advancement – HR reserves the right to update this procedure at any time.***

## Contact Info:

Advancement HR
Phone:
434-924-6102
Fax:
434-924-0556

- P.O. Box 400807
- Charlottesville, VA
- 22904

Text Version | Print Version

Carmack 000313

Maintained by: Advancement Human Resources
Last Modified: February 9, 2017
© Copyright 2017 by the Rector and Visitors of the University of Virginia

Carmack 000314

# Create a Temp Request

It is important to save your work frequently by clicking on "Preview Action" at the bottom of the page, then "Save" and "Confirm".  The system does not save automatically and will time you out after 10 minutes of inactivity!

**Login to Jobs@UVA:** https://jobs.virginia.edu/hr
**Use your Computing ID and your Jobs@ password.** If you do not remember your password, contact Kelley (4-6102) or UHR (2-0123).

Select "**Begin New Action**" on the left navigation

Select "**Temporary Staff Order Request**" (last option)



Chose the "Temp Application" option from the Type of Application drop down – click "**Search**"



Select the most relevant UVA Job Title for your temp request. If an administrative role, chose the "Temp Administrative Specialist (Advanced)" option. If more communications/PR/etc., use the "Temp Public Relations & Marketing Specialist" option. Click "**Select Title and Continue**" link.



Click "**Temp Order Request Form**" on top of page.

Fill out ALL sections



Remember to include all members in the chain of command for the position, and UA-HR in the organizational user box.

**Supervisor** = supervisor on record (who will also approve time card for temp).

**Contact** = Kelley Tobler / 434-924-6102

"Office/Facility Worker" (usually)

"Employee's Alternate Work Schedule Option" is usually:
**Not working An Alternate Schedule** – hours are 8-5
**Flextime** – anything outside 8-5 hours

All temps must get U-9 parking permit. Include this information.

Include the (salary) PTAO information

Background check PTAO – University Advancement HR pays for the background checks for temps. Since this is a required field, simply put in a character and HR will add the PTAO.

VERY IMPORTANT:
Put the specific experience/skills you need in this box. This is what Temp Services uses to find your candidate. Also, include an overview of the dutjes/responsibilities of the position. Consider this a direct conversation with the person who is hiring your temp. Also, I have found they usually share this information with the candidate.

Carmack 000317



**Washington County Chamber of Commerce**
Suite D
1 Government Center Place
Abingdon, VA  24210

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/28/2017 | 1262 |



*Received by CFO*
*5-17*

Stop by and pick up our
Livability Magazine
featuring Washington
County, Virginia.

| Bill To |
|---------|

Southwest VA Higher Education Center
**Attn: David Matlock**
**P. O. Box 1987**
**Abingdon, VA  24212-1987**

| Item | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| Annual Awards L... | Table Promotion for Chamber Annual Awards Luncheon Held on Thursday, January 12, 2017 at SWVHEC | | 600.00 | 600.00 |

## We appreciate your continued support!

| | **Total** | |
|---|-----------|---|
| | | $600.00 |

Carmack 000318

Exhibit E

**Southwest Virginia Alliance for Manufacturing, Inc.**

**851 French Moore Jr. Blvd, Suite 109**

**Abingdon, VA 24210**                                **INVOICE**

| Date | Invoice # |
|------|-----------|
| 7/20/2016 | 16720 |

| Bill To: |
|----------|
| Southwest Virginia Higher Education Center |
| One Partnership Circle |
| Po Box 1987 |
| Abingdon, VA 24212 |

| Phone # | 276-619-4305 |
|---------|--------------|
| Fax # | 276-619-4309 |

| Description | Amount |
|-------------|--------|
| | $250.00 |
| Per Article IV. Membership Fees. | |
| Associate Membership is for one (1) calendar year. | |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL** | **$250.00** |

*OKAY TO PAY FROM MARKETING*



Southwest Virginia Alliance for Manufacturing, Inc.

Carmack 000319

Exhibit E

**Southwest Virginia Alliance for Manufacturing, Inc.**
**851 French Moore Jr. Blvd**
**Suite 109**
**Abingdon, VA**
**24210-4747**

**INVOICE**

| Date | Invoice # |
|---|---|
| 8/17/2016 | 16817 |

| Bill To: |
|---|
| Southwest Virginia Higher Education Center<br>One Partnership Circle<br>Po Box 1987<br>Abingdon, VA 24212 |

| Description | Quantity | Price | Amount |
|---|---|---|---|
| Sponsorship of Southwest Virginia Manufacturers Expo<br>Breakfast Items: | | | |
| Coffee, Regular (serves 10) | 3 | $12.50 | $37.50 |
| Danish, Assorted | 20 | $1.25 | $25.00 |
| Muffins (assorted) | 20 | $1.25 | $25.00 |
| Scones (serves 1) | 20 | $1.25 | $25.00 |
| Fruit Tray (serves 10) | 2 | $25.00 | $50.00 |
| **TOTAL** | | | $162.50 |

**SVAM**
Southwest Virginia Alliance for Manufacturing, Inc.

OKAY TO PAY
FROM MARKETING

SPONSERSHIP THEIR
BREAKFAST EXPO

Carmack/000320

Exhibit E

**Southwest Virginia Alliance for Manufacturing, Inc.**
**851 French Moore Jr. Blvd**
**Suite 109**
**Abingdon, VA**
**24210-4747**

## INVOICE

| Date | Invoice # |
|------|-----------|
| 10/6/2016 | 16106 |

| Bill To: |
|----------|
| Southwest Virginia Higher Education Center |
| One Partnership Circle |
| Po Box 1987 |
| Abingdon, VA 24212 |

| Description | Amount |
|-------------|--------|
| Sponsorship of Southwest Virginia Manufacturers Appreciation and Awards Dinner held on October 6, 2016 | $600.00 |
| | |
| **TOTAL** | $600.00 |

RECEIVED
JAN 23 2017
SW VA Higher ED Center
Business Office

OKAY TO PAY
"MARKETING BUDGET"





**Bristol Chamber of Commerce**
P.O. Box 519, Bristol, VA 24203-0519
20 Volunteer Parkway
Bristol, TN 37620
423.989.4850 | fax: 423.989.4867
ashuttle@bristolchamber.org

# Invoice

Invoice Date: 8/16/16

Invoice Number: 50758

Southwest Virginia Higher Education Center
David Matlock
1 Partnership Circle VHCC Campus
P.O. Box 1987
Abingdon, VA 24212-1987

| | Terms | Due Date |
|---|---|---|
| | Due upon receipt | 8/16/16 |

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| 2016 State of the Cities (David Matlock) | 1 | $35.00 | $35.00 |

| | | |
|---|---|---|
| **Total:** | | $35.00 |
| **Payment/Credit Applied:** | | $0.00 |
| **Balance:** | | $35.00 |

**Login to your Member Center to pay online.**

1.  Go to http://bristolchambertn.chambermaster.com/login to login or retrieve forgotten login credentials.
    Or create your login account for the first time at this registration page:
    https://bristolchambertn.chambermaster.com/CreateAccount?ccid=2564&email=dmatlock@swcenter.edu&repID=804400.

2.  Pay online, check out your additional Member Benefits, update your member page and contact information.

*OKAY TO PAY*

*Keep this portion for your records*

*Please return this portion with your payment*

**FROM:**
Southwest Virginia Higher Education Center
David Matlock
1 Partnership Circle VHCC Campus
P.O. Box 1987
Abingdon, VA 24212-1987

**Invoice #**  50758

**Amount Due**  $35.00

**Please remit payment to:**
**Bristol Chamber of Commerce**
P.O. Box 519, Bristol, VA 24203-0519
20 Volunteer Parkway
Bristol, TN 37620

Amount Paid $ _____

RECEIVED
SEP 18 2017
SW VA Higher ED Center
Business Office

Carmack 000322



**Bristol Chamber of Commerce**
P.O. Box 519, Bristol, VA 24203-0519
20 Volunteer Parkway
Bristol, TN 37620
423.989.4850 | fax: 423.989.4867
ashuttle@bristolchamber.org

# Invoice

Invoice Date: 9/1/16

Invoice Number: 50775

Southwest Virginia Higher Education Center
David Matlock
1 Partnership Circle VHCC Campus
P.O. Box 1987
Abingdon, VA 24212-1987

The Bristol Chamber of Commerce appreciates your continued investment in the business community.  Your annual membership renewal is enclosed.  Should you have any questions, please contact Amy Shuttle, 423.989.4850.  Thank you.  We value your partnership!

| | | | Terms | Due Date |
|---|---|---|---|---|
| | | | Due upon receipt | 9/1/16 |

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| 2016 Membership Investment | 1 | $250.00 | $250.00 |

| | |
|---|---|
| Total: | $250.00 |
| Payment/Credit Applied: | $0.00 |
| Balance: | $250.00 |

**Login to your Member Center to pay online.**
1.  Go to http://bristolchambertn.chambermaster.com/login to login or retrieve forgotten login credentials.
    Or create your login account for the first time at this registration page:
    https://bristolchambertn.chambermaster.com/CreateAccount?ccid=2564&email=dmatlock@swcenter.edu&repID=804400.

2.  Pay online, check out your additional Member Benefits, update your member page and contact information.

*OKAY TO PAY* ~ *Please let us know if our records need updating. Thank you!*

*Keep this portion for your records*

*Please return this portion with your payment*

**FROM:**
Southwest Virginia Higher Education Center
David Matlock
1 Partnership Circle VHCC Campus
P.O. Box 1987
Abingdon, VA 24212-1987

Invoice #  50775

Amount Due  $250.00

**Please remit payment to:**
**Bristol Chamber of Commerce**
P.O. Box 519, Bristol, VA 24203-0519
20 Volunteer Parkway
Bristol, TN 37620

Amount Paid $ _____

RECEIVED

SEP 1 8 2017

SW VA Higher ED Center
Business Office

Carmack 000323

Print Report

*Exhibit J "*

Award: SR00096 - SW-GF Appropriation
Grant/Contract #: Internal
Sponsor: UVA - INTERNAL - GM USE ONLY
Award PI:
Status: ACTIVE
Project Period: Mar - 2017

Project: 102203 - SW-Facilities
Project Carrying Out Org: 20370 SW-SW VA H Ed Ctr
Principal Investigator:
Fiscal Contact: Deborah Hensley (djh4v)

Project Manager: Deborah Hensley (djh4v)
Budget Type: YTD

| | Budget Category | *Budget | Current Month Expenditures | *Expenses To-Date | *Budget Balance Before Commitments | Commitments | *Budget Balance Available | Year-to-Date Expenses |
|---|---|---|---|---|---|---|---|---|
| | Classified Salaries | 0.00 | 9,300.12 | 92,072.19 | -92,072.19 | 32,238.99 | -124,311.18 | 92,072.19 |
| | University Staff Wages | 0.00 | 1,753.92 | 17,001.54 | -17,001.54 | 5,846.33 | -22,847.87 | 17,001.54 |
| | FB, Classified Staff | 0.00 | 5,170.59 | 34,036.61 | -34,036.61 | 0.00 | -34,036.61 | 34,036.61 |
| | FB, University Staff | 0.00 | 3,546.50 | 35,435.42 | -35,435.42 | 12,412.01 | -47,847.43 | 35,435.42 |
| | FB, University Staff Wage | 0.00 | 643.10 | 6,434.34 | -6,434.34 | 2,250.84 | -8,685.18 | 6,434.34 |
| | FB, Wage Employee | 0.00 | 4.43 | 121.78 | -121.78 | 0.00 | -121.78 | 121.78 |
| | FB, Part-time | 0.00 | 278.73 | 1,702.64 | -1,702.64 | 0.00 | -1,702.64 | 1,702.64 |
| | UVa, Fringe Benefits, Employer | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Prsnl Svcs | | 0.00 | 20,697.39 | 186,804.52 | -186,804.52 | 52,748.17 | -239,552.69 | 186,804.52 |
| | Other Than Personal Svcs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | OTPS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | Travel | 0.00 | 0.00 | 431.88 | -431.88 | 0.00 | -431.88 | 431.88 |
| | Contractual Services | 0.00 | 5,177.30 | 80,043.18 | -80,043.18 | 35,840.66 | -115,883.84 | 80,043.18 |
| | Health Care Services | 0.00 | 0.00 | 0.07 | 0.07 | 0.00 | 0.00 | 0.00 |
| | Supplies & Materials | 0.00 | 5,273.06 | 57,789.33 | -57,789.33 | 9,156.29 | -66,945.62 | 57,789.33 |
| | Equipment | 0.00 | 14.40 | 42,644.61 | -42,644.61 | 0.00 | -42,644.61 | 42,644.61 |
| | Plant and Improvement | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | Continuous Charges | 0.00 | 4,593.56 | 150,986.46 | -150,986.46 | 816.09 | -151,802.55 | 150,986.46 |
| | Property and Improvement | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | Other | 0.00 | 81.61 | -26,309.62 | 26,309.62 | 0.00 | 26,309.62 | -26,309.62 |
| Total OTPS | | 0.00 | 15,139.93 | 305,585.84 | -305,585.84 | 45,813.04 | -351,398.88 | 305,585.84 |
| Grand Total | | 0.00 | 35,837.32 | 492,390.36 | -492,390.36 | 98,561.21 | -590,951.57 | 492,390.36 |

I have reviewed current month expenditures for accuracy and sufficient source
documentation in accordance with University Financial Procedure 1-4.

Actual Preparer: Deborah Hensley          Date: 04-03-2017

Examined By: _____          Date: _____

Preparer of Record: Deborah Hensley

After review of the period expenditure detail report and this summary report, to the
best of my knowledge all costs charged to this project are appropriate and wages
charged are in relation to work performed on this project. Where required, corrections
have been or will be requested to be made in the Integrated System.

Actual Approver: David Matlock          Date: 04-17-2017

Approver of Record: David Matlock

## Comments

| Budget Category | Comment | Created On | Created By | Modified On | Modified By |
|---|---|---|---|---|---|
| No Comments... | | | | | |

## Reconciling Items

| Budget Category | Comment | Amount | Created On | Created By | Modified On | Modified By |
|---|---|---|---|---|---|---|
| No Reconciling Items... | | | | | | |

## Issues

| Budget Category | Comment | Created On | Created By | Modified On | Modified By |
|---|---|---|---|---|---|

Carmack 000324
4/24/2017 10:07 AM

Print Report

Award: SS00030 - SW-NGF:Partner Revenue
Grant/Contract #: Internal
Sponsor: UVA - INTERNAL - GM USE ONLY
Award PI:
Status: ACTIVE
Project Period: May - 2017

Project: 102203 - SW-Facilities
Project Carrying Out Org: 20370 SW-SW VA H Ed Ctr
Principal Investigator:
Fiscal Contact: Deborah Hensley (djh4v)

Project Manager: Deborah Hensley (djh4v)
Budget Type: YTD

| | Budget Category | *Budget | Current Month Expenditures | *Expenses To-Date | *Budget Balance Before Commitments | Commitments | *Budget Balance Available | Year Da Exper |
|---|---|---|---|---|---|---|---|---|
| | Other Than Personal Svcs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Travel | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Contractual Services | 0.00 | 1,464.21 | 5,869.35 | -5,869.35 | 166.12 | -6,035.47 | |
| | Supplies & Materials | 0.00 | 1,677.77 | 6,855.35 | -6,855.35 | 0.00 | -6,855.35 | |
| | Equipment | 0.00 | 955.47 | 2,187.27 | -2,187.27 | 0.00 | -2,187.27 | |
| | Plant and Improvement | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Continuous Charges | 0.00 | 11,874.51 | 33,499.82 | -33,499.82 | 0.00 | -33,499.82 | |
| | Property and Improvement | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Other | 0.00 | 25.56 | 111.25 | -111.25 | 0.00 | -111.25 | |
| Total OTPS | | 0.00 | 15,997.52 | 48,523.04 | -48,523.04 | 166.12 | -48,689.16 | |
| Grand Total | | 0.00 | 15,997.52 | 48,523.04 | -48,523.04 | 166.12 | -48,689.16 | |

I have reviewed current month expenditures for accuracy and sufficient source documentation in accordance with University Financial Procedure 1-4.

**Actual Preparer:** Deborah Hensley          **Date:** 06-01-2017

**Examined By:** _____          **Date:** _____

**Preparer of Record:** Deborah Hensley

After review of the period expenditure detail report and this summary report, to the best of my knowledge all costs charged to this project are appropriate and wages charged are in relation to work performed on this project. Where required, corrections have been or will be requested to be made in the Integrated System.

**Actual Approver:** David Matlock          **Date:** 06-19-2017   Due 6-15-17

**Approver of Record:** David Matlock

## Comments

| Budget Category | Comment | Created On | Created By | Modified On | Modified By |
|---|---|---|---|---|---|
| No Comments... | | | | | |

## Reconciling Items

| Budget Category | Comment | Amount | Created On | Created By | Modified On | Modified By |
|---|---|---|---|---|---|---|
| No Reconciling Items... | | | | | | |

## Issues

| Budget Category | Comment | Created On | Created By | Modified On | Modified By |
|---|---|---|---|---|---|
| No Issues... | | | | | |

Carmack 000325

<u>Print Report</u>

Award: SR00096 - SW-GF Appropriation
Grant/Contract #: Internal
Sponsor: UVA - INTERNAL - GM USE ONLY
Award PI:
Status: ACTIVE
Project Period: May - 2017

Project: 102203 - SW-Facilities
Project Carrying Out Org: 20370 SW-SW VA H Ed Ctr
Principal Investigator:
Fiscal Contact: Deborah Hensley (djh4v)

Project Manager: Deborah Hensley (djh4v)
Budget Type: YTD

| | Budget Category | *Budget | Current Month Expenditures | *Expenses To-Date | *Budget Balance Before Commitments | Commitments | *Budget Balance Available | Year Da Expe |
|---|---|---|---|---|---|---|---|---|
| | Classified Salaries | 0.00 | 9,211.82 | 110,495.87 | -110,495.87 | 13,816.71 | -124,312.58 | 1 |
| | University Staff | 0.00 | 1,670.40 | 20,342.34 | -20,342.34 | 2,505.57 | -22,847.91 | |
| | Wages | 0.00 | 4,391.18 | 42,739.16 | -42,739.16 | 0.00 | -42,739.16 | |
| | FB, Classified Staff | 0.00 | 3,546.55 | 42,528.54 | -42,528.54 | 5,319.43 | -47,847.97 | |
| | FB, University Staff | 0.00 | 643.10 | 7,720.54 | -7,720.54 | 964.64 | -8,685.18 | |
| | FB, University Staff Wage | 0.00 | 0.00 | 121.78 | -121.78 | 0.00 | -121.78 | |
| | FB, Wage Employee | 0.00 | 232.74 | 2,163.89 | -2,163.89 | 0.00 | -2,163.89 | |
| | FB, Part-time | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | UVa, Fringe Benefits, Employer | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| Prsnl Svcs | | **0.00** | **19,695.79** | **226,112.12** | **-226,112.12** | **22,606.35** | **-248,718.47** | 2 |
| | Other Than Personal Svcs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | OTPS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Travel | 0.00 | 20.87 | 461.93 | -461.93 | 0.00 | -461.93 | |
| | Contractual Services | 0.00 | 7,362.53 | 88,535.35 | -88,535.35 | 28,783.08 | -117,318.43 | |
| | Health Care Services | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Supplies & Materials | 0.00 | 2,381.94 | 64,225.37 | -64,225.37 | 12,851.54 | -77,076.91 | |
| | Equipment | 0.00 | 0.00 | 42,644.61 | -42,644.61 | 1,350.00 | -43,994.61 | |
| | Plant and Improvement | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Continuous Charges | 0.00 | 492.86 | 156,322.43 | -156,322.43 | 674.00 | -156,996.43 | 1 |
| | Property and Improvement | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Other | 0.00 | -240.87 | -41,648.78 | 41,648.78 | 0.00 | 41,648.78 | |
| Total OTPS | | **0.00** | **10,017.33** | **310,540.91** | **-310,540.91** | **43,658.62** | **-354,199.53** | 3 |
| Grand Total | | **0.00** | **29,713.12** | **536,653.03** | **-536,653.03** | **66,264.97** | **-602,918.00** | 5 |

I have reviewed current month expenditures for accuracy and sufficient source documentation in accordance with University Financial Procedure 1-4.

**Actual Preparer:** <u>Deborah Hensley</u>   **Date:** <u>06-01-2017</u>

**Examined By:** _____   **Date:** _____

**Preparer of Record:** <u>Deborah Hensley</u>

After review of the period expenditure detail report and this summary report, to the best of my knowledge all costs charged to this project are appropriate and wages charged are in relation to work performed on this project. Where required, corrections have been or will be requested to be made in the Integrated System.

**Actual Approver:** <u>David Matlock</u>   **Date:** <u>06-19-2017</u>   Due 6-15-17

**Approver of Record:** <u>David Matlock</u>

**Comments**

| Budget Category | Comment | Created On | Created By | Modified On | Modified By |
|---|---|---|---|---|---|
| No Comments... | | | | | |

**Reconciling Items**

Carmack 000326
9/18/2017, 3:25 PM

Print Report

Award: SR00096 - SW-GF Appropriation
Grant/Contract #: Internal
Sponsor: UVA - INTERNAL - GM USE ONLY
Award PI:
Status: ACTIVE
Project Period: Mar - 2017

Project: 102203 - SW-Facilities
Project Carrying Out Org: 20370 SW-SW VA H Ed Ctr
Principal Investigator:
Fiscal Contact: Deborah Hensley (djh4v)

Project Manager: Deborah Hensley (djh4v)
Budget Type: YTD

| | Budget Category | *Budget | Current Month Expenditures | *Expenses To-Date | *Budget Balance Before Commitments | Commitments | *Budget Balance Available | Year Da Expe |
|---|---|---|---|---|---|---|---|---|
| | Classified Salaries | 0.00 | 9,300.12 | 92,072.19 | -92,072.19 | 32,238.99 | -124,311.18 | |
| | University Staff | 0.00 | 1,753.92 | 17,001.54 | -17,001.54 | 5,846.33 | -22,847.87 | |
| | Wages | 0.00 | 5,170.59 | 34,036.61 | -34,036.61 | 0.00 | -34,036.61 | |
| | FB, Classified Staff | 0.00 | 3,546.50 | 35,435.42 | -35,435.42 | 12,412.01 | -47,847.43 | |
| | FB, University Staff | 0.00 | 643.10 | 6,434.34 | -6,434.34 | 2,250.84 | -8,685.18 | |
| | FB, University Staff Wage | 0.00 | 4.43 | 121.78 | -121.78 | 0.00 | -121.78 | |
| | FB, Wage Employee | 0.00 | 278.73 | 1,702.64 | -1,702.64 | 0.00 | -1,702.64 | |
| | FB, Part-time | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | UVas, Fringe Benefits, Employer | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| Prsnl Svcs | | 0.00 | 20,697.39 | 186,804.52 | -186,804.52 | 52,748.17 | -239,552.69 | |
| | Other Than Personal Svcs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | OTPS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Travel | 0.00 | 0.00 | 431.88 | -431.88 | 0.00 | -431.88 | |
| | Contractual Services | 0.00 | 5,177.30 | 80,043.18 | -80,043.18 | 35,840.66 | -115,883.84 | |
| | Health Care Services | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Supplies & Materials | 0.00 | 5,273.06 | 57,789.33 | -57,789.33 | 9,156.29 | -66,945.62 | |
| | Equipment | 0.00 | 14.40 | 42,644.61 | -42,644.61 | 0.00 | -42,644.61 | |
| | Plant and Improvement | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Continuous Charges | 0.00 | 4,593.56 | 150,986.46 | -150,986.46 | 816.09 | -151,802.55 | |
| | Property and Improvement | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Other | 0.00 | 81.61 | -26,309.62 | 26,309.62 | 0.00 | 26,309.62 | |
| Total OTPS | | 0.00 | 15,139.93 | 305,585.84 | -305,585.84 | 45,813.04 | -351,398.88 | 3 |
| Grand Total | | 0.00 | 35,837.32 | 492,390.36 | -492,390.36 | 98,561.21 | -590,951.57 | 4 |

I have reviewed current month expenditures for accuracy and sufficient source documentation in accordance with University Financial Procedure 1-4.

Actual Preparer: _Deborah Hensley_      Date: _04-03-2017_

Examined By: _____      Date: _____

Preparer of Record: _Deborah Hensley_

After review of the period expenditure detail report and this summary report, to the best of my knowledge all costs charged to this project are appropriate and wages charged are in relation to work performed on this project. Where required, corrections have been or will be requested to be made in the Integrated System.

Actual Approver: _David Matlock_      Date: _04-17-2017_    Due 4-15-17

Approver of Record: _David Matlock_

**Comments**

| Budget Category | Comment | Created On | Created By | Modified On | Modified By |
|---|---|---|---|---|---|
| No Comments... | | | | | |

**Reconciling Items**

Carmack 000327

9/18/2017, 3:26 PM

RECON

Exhibit D

| Welcome | Summary | Reconciling Items | Issues | Alternates | Reports |

## Welcome

Data successfully loaded on: 7/6/2017 6:08:48 AM
Month end occurred on: 6/30/2017 12:26:00 PM

Welcome to Recon@UVA!

| Period | Not Prepared | Not Examined | Not Approved | Issues | % Complete | % Complete on time |
|---|---|---|---|---|---|---|
| July 2017 | 4 | 0 | 0 | 0 | 0.00% | 0.00% |
| June 2017 | 0 | 4 | 4 | 0 | 0.00% | 0.00% |
| May 2017 | 0 | 1 | 1 | 0 | 83.33% | 83.33% |
| April 2017 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| March 2017 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| February 2017 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| January 2017 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| December 2016 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| November 2016 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| October 2016 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| September 2016 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| August 2016 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| July 2016 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| June 2016 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| May 2016 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| April 2016 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| March 2016 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| February 2016 | 0 | 0 | 0 | 0 | 100.00% | 77.78% |
| January 2016 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| December 2015 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| November 2015 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| October 2015 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| September 2015 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| August 2015 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| July 2015 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| June 2015 | 0 | 0 | 0 | 0 | 100.00% | 45.45% |
| May 2015 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| April 2015 | 0 | 0 | 0 | 0 | 100.00% | 100.00% |
| March 2015 | 0 | 0 | 0 | 0 | 100.00% | 30.77% |
| February 2015 | 0 | 0 | 0 | 0 | 100.00% | 90.91% |
| January 2015 | 0 | 0 | 0 | 0 | 100.00% | 93.33% |
| December 2014 | 0 | 0 | 0 | 0 | 100.00% | 30.00% |
| November 2014 | 0 | 0 | 0 | 0 | 100.00% | 27.27% |
| October 2014 | 0 | 0 | 0 | 0 | 100.00% | 28.57% |
| September 2014 | 0 | 0 | 0 | 0 | 100.00% | 11.76% |

*Exhibit I*

## Duffy Carmack

| | |
|---|---|
| **From:** | Duffy Carmack |
| **Sent:** | Tuesday, June 13, 2017 10:44 AM |
| **To:** | David Matlock |
| **Subject:** | Duffy  Cisco Meeting |

David,

A few weeks ago, when you and I met with ODU representatives in your office you stated that you, Jeff and I needed to travel to a Community College in North Carolina to look at their Cisco Lab as a model for the one here.  At our managers meeting last Monday, June 12th, you asked Kathy to schedule a time that Joe, Jeff, you and I could travel to N.C. to look at the lab. I understand that you are touring the Cisco facility today.  Why was I not included in this trip?  The Foundation is the recipient and administrator of the Tobacco Commission Grant that will support this Cisco Training Program at the Higher Education Center.   As Director of the HEC Foundation and CFO of the Higher Education Center it would have been appropriate for me to have been a part of this trip.  This is another example of the exclusion of the CFO from business that is important to the financial success of the Center.  Please respond.

Thanks

Duffy

William D. Carmack, CFO
Southwest Virginia Higher Education Center
PO Box 1987
Abingdon, VA  24212
276-619-4302

1

Carmack 000329

*Policy amended 10-1-14 to eliminate Re-employment Opportunities (Re-Op) Pool.*

## Recall

The placement of an employee demoted in lieu of layoff, placed with a lower salary or placed on leave without pay-layoff into a position that is in the employee's pre-layoff Role, salary, and agency.  Recall is intended to make the employee whole.

- ✓ Employees have recall rights for up to 12 consecutive months from the effective date of layoff, demotion in lieu of layoff, or salary reduction due to layoff.
- ✓ Employees are recalled to positions in order of seniority.
- ✓ Recall rights cease if an employee
  - o accepts a position that is in the same or a higher Pay Band as the former position and the employee's salary meets or exceeds the pre-layoff salary;
  - o the employee resigns or is terminated under Standards of Conduct; or
  - o the employee retires.
- ✓ Employees may decline recall if it results in relocation or results in a salary lower than the salary of his or her former position.
- ✓ Recall rights and severance benefits, if applicable, cease if an employee declines recall to a position in the same Role as his or her former position that does not require relocation or a salary reduction.
- ✓ Recall is managed by agency Human Resource staff.

10-1-14

Carmack 000361